**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

SEDRIC WARD,

       Plaintiffs,

v.                                       Case No.

SHELBY COUNTY, SHELBY COUNTY
SHERIFF'S OFFICE,

       Defendants.

**COMPLAINT FOR DECLARATORY JUDGMENT, DAMAGES, INJUNCTIVE
RELIEF, AND DEMAND FOR TRIAL BY JURY FOR VIOLATIONS OF THE
UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT**

**EXEMPT FROM FILING FEES UNDER 38 U.S.C. § 4323(H)(1)**

Sedric Ward (hereinafter "Mr. Ward" or "Plaintiff"), by and through his undersigned counsel, hereby files this Complaint for Declaratory Judgment against Shelby County and Shelby County Sheriff's Office, pursuant to Federal Rule of Civil Procedure 57, 28 U.S.C. § 1331, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

This civil action is brought pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 - 4335 (USERRA), and is exempt from filing fees under 38 U.S.C. § 4323(h)(1).

**<u>NATURE OF ACTION</u>**

Mr. Ward brings this action pursuant to Federal Rule of Civil Procedure 57, 38 U.S.C.§ 4323(e), 28 U.S.C. §§ 2201 and 2202, for a declaration regarding the parties' rights and obligations in connection with a purported waiver of USERRA rights held by Defendants, and the lawfulness of Defendants' Military Leave

Policies.   Mr. Ward denies that he waived his USERRA rights, or that such an agreement is valid where it is preempted by USERRA.   Mr. Ward further asserts that the Defendants' Military Leave Policy is unlawful under USERRA.   Mr. Ward, therefore, seeks a declaratory judgment that he is not bound by the purported waiver, and the Defendants' Military Leave Policy violates USERRA.

Mr. Ward also brings underlying claims for discrimination and retaliation.   In support, Mr. Ward alleges as follows:

## I.      BACKGROUND

1.1    Shelby County audited the Shelby County Jail's Human Resources Department and learned that there were significant problems with record keeping. Numerous employees were abusing sick leave, FMLA leave, and going AWOL for long periods of time.  Supervisors and managers were either not punishing the offenders, or not following the standard progressive discipline matrix when meting out punishment. Shelby County was losing millions of dollars each year to leave abuses, the majority of which involved FMLA leave.  (A copy of the confidential Audit Report which was produced subject to the Protective Order Re: Personnel Records and Contents (ECF No. 27), was also submitted to the Court for *in camera* review contemporaneously with the filing of (ECF No. 54) in W.D. Tennessee Civil Cause No. 2:18-cv-02531-JPM-cgc).

1.2    The Shelby County Sheriff could not place the blame on the Jail's Human Resources Manager because she had informed her supervisors about these problems repeatedly over the years leading up to the audit.  She repeatedly informed her superiors that she was too understaffed to correct the problems.  She repeatedly asked

for assistance and more employees to correct the problems. Her superiors ignored her requests and the County lost millions of dollars as a result.

1.3    The Sheriff also could not place the blame for these losses on his jail supervisors because that would be a reflection of his poor oversight. The Sheriff and his auditors also determined that medical record privacy protections would make sick leave or FMLA leave investigations too onerous. As a result, the Sheriff ordered his staff to use the Human Resource Department's records discrepancies to target servicemembers who took leave to serve in the military during periods of war.

1.4    Thereafter, the Shelby County Sheriff's Office conducted employment investigations and criminal investigations of *all* of its servicemember employees, at least one of whom was in a military hospital recovering from wounds he suffered while serving in combat. The investigations were slipshod and misleading, and intentionally designed to place the blame for the Jail's defective management at the feet of honorable servicemembers.

1.5    Shelby County used Detectives, Prosecutors, Administrators, a Grand Jury, criminal charges, terminations, suspensions, reprimands, statements to the media, and other adverse employment actions to intimidate servicemembers into abandoning their military service, and to retaliate against servicemembers who defied the Sheriff's command to take less military leave. Shelby County discriminated against, and retaliated against members of the armed services for doing nothing more than taking time away from their civilian employment at the Shelby County Jail to fulfill their military commitments during periods of war.

1.6     In this case, Shelby County investigated Mr. Ward's military service. Shelby County's slipshod investigators only contacted the *Tennessee National Guard* to confirm that the dates of Mr. Ward's military drill matched the dates he requested military leave.  However, Mr. Ward served in the *U.S. Army Reserves.*  Therefore, it was not possible to verify his dates of service by contacting the *Tennessee National Guard.*

1.7     Mr. Ward provided irrefutable evidence that his military leave dates matched his military service.  Nevertheless, Defendant issued formal punishment against Mr. Ward and ultimately terminated his employment.  Mr. Ward's military service was a motivating factor for these adverse employment decisions and his termination.

1.8     When the Tennessee Prosecutor realized what Shelby County had done, he quickly dismissed *all* criminal charges against all servicemembers.  Thereafter, two of the detectives involved lost their detective status and were reassigned to out-of-the way positions.  The Sheriff was not reelected.

1.9     However, Shelby County lost several honorable servicemember employees, irreparably injured their lives, and caused untold damage to the readiness of the Tennessee and other State's National Guard and Reserve Components.  This Court should issue an injunction designed to prohibit Shelby County from ever again taking any adverse employment action against any servicemember if the employment action is in any way related to military service.

## II.     PARTIES

2.1     Mr. Ward was, at all times pertinent to this lawsuit, a resident of the State of Tennessee, an employee of the Defendants, and a member of the Army Reserve, with honorable service.

2.2    Defendants, Shelby County and Shelby County Sheriff's Office are employers as defined by 38 U.S.C. § 4323(i).

### III.    JURISDICTION AND VENUE

3.1    This Court has jurisdiction over the subject matter of this action pursuant to 38 U.S.C. § 4323(b)(1)-(3) and 28 U.S.C. § 1331.

3.2     Jurisdiction is further appropriate because this is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, and an actual case or controversy of a justiciable nature  exists between the parties.

3.3    Venue is proper in this district under 38 U.S.C. §§ 4323(c)(2), 4323(c)(1)-(2) and 28 U.S.C. § 1391(b) because Defendant maintains a place of business in this judicial district.

### IV.    FACTS

4.1    Plaintiff re-alleges Sections I. – III. above, inclusive, as though fully set forth herein.

4.2    Plaintiff also re-alleges all facts set forth in Document 1, U.S. Dist. Court for the W.D. Tennessee, Civil Cause No. 2:18-cv-02531-JPM-cgc.

4.3    Shelby County audited the Shelby County Jail's Human Resources Department.

4.4    The Audit illustrated that <u>many</u> employees were abusing FMLA and sick leave.

4.5    The Audit labeled some of these employees "pattern" leave abusers.

4.6    The Audit also illustrated that many employees were absent without leave (AWOL) for long periods of time; sometimes more than a year.

4.7     The Audit also suggested (although falsely) that some servicemember employees' military leave requests did not match their unit's exercise schedules.

4.8     This portion of the audit was factually and legally flawed and eventually proven false.

4.9     Nevertheless, Shelby County audited the military leave of each and every servicemember employee who took leave from the Shelby County Jail to perform military service.

4.10    Shelby County then conducted criminal investigations of each and every servicemember employee who took leave from the Shelby County Jail to perform military service.

4.11    One of those servicemembers was in a military hospital recovering from wounds suffered in combat.

4.12    The same audit showed that many Shelby County Jail employees committed gross violations of Shelby County's sick leave and FMLA policies.

4.13    Shelby County did not criminally investigate FMLA or sick leave abusers, even those labeled "pattern" leave abusers.

4.14    Shelby County did not criminally investigate AWOL abusers.

4.15    Shelby County launched criminal investigations and employment investigations of servicemember employees who took leave from the Shelby County Jail to perform military service.

4.16    Shelby County did not conduct similar employment or criminal investigations of FMLA, sick leave, or AWOL abusers.

4.17    Shelby County arrested servicemember employees for taking leave to perform military service.

4.18    Shelby County did not arrest a single FMLA, sick leave, or AWOL abuser.

4.19    Shelby County criminally charged servicemember employees for taking leave to perform military service.

4.20    Shelby County did not criminally charge a single FMLA, sick leave, or AWOL abuser.

4.21    Shelby County terminated servicemember employees accused of abusing military leave.

4.22    Shelby County did not issue similar terminations of FMLA, sick leave, or AWOL abusers.

4.23    Shelby County issued other adverse employment actions against servicemember employees accused of abusing military leave.

4.24    Shelby County did not similarly punish FMLA, sick leave, or AWOL abusers.

**Adverse Employment Actions against Mr. Ward**

4.25    Mr. Ward began working for the Shelby County Jail in 1998.

4.26    Mr. Ward also served in the U.S. Army Reserve, while employed by Shelby County.

4.27    Shelby County conducted a criminal investigation into Mr. Ward's military service.

4.28    Shelby County conducted an employment investigation into Mr. Ward's military service.

4.29    During the course of its investigation, Shelby County contacted the Tennessee National Guard, to verify Mr. Ward's dates of military service.

4.30    Mr. Ward did not serve in the Tennessee National Guard.

4.31    Mr. Ward served in the U.S. Army Reserve.

4.32    Mr. Ward took leave to attend military drills while employed at Shelby County.

4.33    Mr. Ward was scheduled for military drill every day he took military leave from Shelby County.

4.34    As a result, the first Audit of Shelby County Jail Employee Time Review, dated <u>August 13, 2013</u>, did *not* include Mr. Ward's name.

4.35    The Audit included 18 servicemembers.

4.36    Mr. Ward's name was not among those listed.

4.37    When that Audit was passed along to Detective Valentine for criminal investigation, Detective Valentine added Mr. Ward's name to the list of servicemember suspects.

4.38    Detective Valentine erroneously alleged that he compared the military leave Mr. Ward took from Shelby County with Mr. Ward's military service dates with the U.S. Army Reserve.

4.39    That statement was patently false.

4.40    Neither Detective Valentine nor any other Shelby County employee ever obtained records from the U.S. Army Reserve.

4.41    Shelby County only contacted the Tennessee National Guard.

4.42   In his report dated <u>September 2, 2014</u>, despite having no evidence upon which to base the charges, Detective Valentine alleged that Mr. Ward obtained pay for 36 days of Shelby County military leave "that no military activity was attended."

4.43   This allegation was patently false and Detective Valentine either knew or should have known that this allegation was patently false when he made the allegation.

4.44   In <u>January of 2015</u>, Mr. Ward attended a meeting with the following Command Staff: Fields, Moore, Atkins, and a representative from the Bureau of Professional Standards and Integrity (hereinafter "BOPSI").

4.45   During the meeting, Mr. Ward presented *all* of his leave paperwork and military orders.

4.46   Mr. Ward accounted for each and every day of military leave.

4.47   Those present at the meeting agreed that Mr. Ward's name should be removed from the list of suspects.

4.48   Nevertheless, on <u>April 7, 2015</u>, Shelby County terminated Mr. Ward's employment.

4.49   Shelby County also criminally charged Mr. Ward.

4.50   At the time of his termination, Mr. Ward's rate of pay was $43,800.00 per year.

4.51   At the time of his termination, Mr. Ward had worked for Shelby County for 18 years.

4.52   At the time of his termination, Mr. Ward was positioned for promotion to Sergeant, which would have amounted to a significant increase in pay and benefits.

4.53    At the time of his termination, Mr. Ward was approximately 7 years shy of being able to retire from Shelby County.

4.54    At the time of his termination, Mr. Ward was planning on securing a Sergeant promotion and ultimately retiring with Shelby County.

4.55    Instead, Mr. Ward suffered the following:

A.  Mr. Ward was terminated from his employment.

B.  Mr. Ward was arrested and jailed.

C.  Mr. Ward was denied unemployment because Shelby County filed false criminal charges.

D.  Mr. Ward was forced to withdraw $38,000.00 from his 401k to survive because he could not secure gainful employment as a direct result of Shelby County actively pursuing false criminal charges against Mr. Ward.

E.  Mr. Ward, as a grown man, was forced to move back home with his elderly mother who had a lung removed.

F.  Mr. Ward's military file was flagged as a direct result of Shelby County's false criminal charges.

G.  Mr. Ward fell behind on child support because he was destitute and could not secure gainful employment.

H.  Mr. Ward was arrested and jailed for falling behind on his child support.

I.  Mr. Ward's reputation and his life were permanently destroyed as a direct and proximate result of Shelby County's false charges and termination.

4.56   When Mr. Ward was finally able to secure gainful employment, he was reduced to a $14.00 per hour wage.

4.57   Mr. Ward was forced to return to school to obtain an Occupational Therapy Assistant certification.

4.58   Even when he is certified and fully employed as an OTA, he will not earn nearly as much as he could have earned at Shelby County.

4.59   Additionally, he has forever lost his entitlement to a Shelby County retirement pension.

4.60   The criminal charges were ultimately dismissed when the Prosecutor realized that many of Detective Jason Valentine's allegations against servicemembers were patently false.

4.61   On December 4, 2015, after the Tennessee Prosecutor realized what Shelby County had done, he dismissed all criminal charges against all servicemember employees ("nolle prosequi") due to: "…**a pattern that the investigation failed to discover many instances of military service**…"

4.62   After dismissing all charges against all servicemembers, Shelby County turned right back around and re-arrested one of Mr. Ward's colleagues, Stephen Vaughn.

4.63   Once again, Detective Valentine, who was no longer a detective at this point, levied false criminal charges against Stephen Vaughn.

4.64   Detective Valentine even went so far as to travel to Mississippi, with his Shelby County badge and gun, to intimidate honorable military officers with threats of

federal prosecution if they failed or refused to make false statements against Stephen Vaughn.

4.65   Detective Valentine made the threats, then turned on his recording device, and then asked the loaded and misleading questions to these honorable servicemembers.

4.66   Detective Valentine engaged in this activity with Shelby County's blessing, despite the fact that Detective Valentine had lost his detective position, and was supervising a midnight DUI patrol at the time.

**Purported Waiver of USERRA Rights**

4.67   On August 3, 2016, Shelby County attempted to offer Mr. Ward reinstatement in exchange for a waiver of rights.   Mr. Ward did not perfect that agreement.

4.68   Shelby County now claims that Mr. Ward is bound by that agreement.

4.69   However, the purported agreement failed to provide Mr. Ward with back pay, his accumulated seniority, status, pension benefits and rights and benefits of employment that he would have enjoyed had Shelby County not violated his rights.

4.70   The purported agreement failed to provide notice of rights as required under USERRA, 38 U.S.C. §§ 4302(b) and 4332.

4.71   The purported agreement does not mention USERRA or military service rights.

4.72   The purported agreement would require a forfeiture or USERRA reemployment rights, which is prohibited by 38 U.S.C. § 4302(b).

4.73   The purported agreement failed to explicitly state what USERRA rights Mr. Ward may be waiving, as required by USERRA.

4.74   Further, the agreement would have placed Mr. Ward (an 18-year employee) on probation, in an unprotected status, an easy target for continued discrimination and retaliation, adverse employment actions, and subject to dismissal without cause.

4.75   Having witnessed, first-hand, Shelby County's penchant for pursuing baseless employment discipline and criminal charges at all costs, Mr. Ward rightfully feared for his future employment prospects, safety, and liberty.

4.76   As a direct result of Detective Valentine and Shelby County's actions, Mr. Ward was terrified about the prospects of returning to work at Shelby County, and he rationally feared that if he returned to work, he would again be jailed, charged with false criminal charges, and terminated all over again.

**Shelby County Military Leave Policies Violate USERRA**

4.77   Despite his botched investigations, the Shelby County Sheriff chose former Detective Jason Valentine to draft the Shelby County Sheriff Department's Military Leave request and processing policies and procedures.

4.78   Not surprisingly, those new policies and procedures are vastly more punitive and restrictive than the previous policies, and they place significant new obstacles in the way of servicemembers performing their military duties.

4.79   Shelby County Sheriff's old policy required servicemembers to provide copies of military orders when applying for military leave, complete a **Secondary**

**Employment Form** listing the military as a secondary employer, and provide proof of military service after attending drill; usually in the form of a DD Form 214.

4.80    Based on the previous policy, Shelby County asserted that it has the right to deny military leave and/or military pay and other benefits if a Secondary Employment Form is missing from an employee's file.

4.81    Shelby County admits that it denied at least one of Mr. Ward's military leave requests, based on a lack of Secondary Employment Form.

4.82    Shelby County also admits that one reason Shelby County took adverse employment action against Mr. Ward was because he attended military drill without a Secondary Employment Form in his personnel file.

4.83    The Shelby County Jail's new military leave policy, which Shelby County instituted after terminating Mr. Ward, adds even more restrictions on attending military drill, and may be the strictest and most punitive military leave policy of any Sheriff's Office in the nation.  *See* Shelby County Sheriff's Office (hereinafter "SCSO") Military Leave Policy No. 255, *et seq.*

4.84    The Shelby County Sheriff's new USERRA policy created yet another form that servicemembers must complete to qualify for their statutorily guaranteed military benefits: the "**Military Service Verification Form**."  *See* SCSO Military Leave Policy No. 255.05.

4.85    The "Military Service Verification Form" is in addition to the "Secondary Employment Form," which the Shelby County Sheriff's Office also requires servicemembers to complete to qualify for their statutorily guaranteed military benefits. *See* SCSO Military Leave Policy No. 255.05.

14

4.86    The Shelby County Sheriff's new USERRA policy states in pertinent part:

> The Military Service Verification Form will be completed by the employee by October 1st of each year.  If the employee's Military status changes at any other time of the year, the employee is required to submit a form immediately for reviews.   The Military Service Verification Form must be completed fully, signed by a Unit Commander or above, who is a full time Military Officer assigned to some command over the military unit that the employee is assigned to.   The employee must also include a copy of the CURRENT military ID, as well as any drill schedule or other supporting documentation.   The form and supporting documents will then be forwarded to the Military Liaison Office, who will verify that the employee is assigned to the unit.   **Failure to submit the completed form in a timely fashion will result in the employee being ineligible to receive any type of military pay and/or leave**…[1]

4.87    The Shelby County Sheriff's Office is aware that the majority of servicemember employees will be unable to comply with this requirement because the vast majority of Reserve Component Officers are not "full time Military Officers;" they are part-time Reserve Officers.

4.88    Because it is impossible for the majority of servicemembers to obtain a "full time Military Officer" signature on the required Military Service Verification Form, the majority of Shelby County's servicemember employees will be: "…**ineligible to receive any type of military pay and/or leave**…" for conducting their required military training.  *See* SCSO Military Leave Policy No. 255.05.

4.89    This provision was intentionally designed to deprive servicemember employees of their USERRA rights and limit their use of military leave.

4.90    In addition to the Secondary Employment Form, and the **Military Service Verification Form**, the Shelby County Sheriff's new USERRA policy created yet

---

[1] *See* SCSO Military Leave Policy No. 255.05.

another form that servicemembers must complete to qualify for their statutorily guaranteed military benefits: the "**Military Request for Leave Form**."   *See* SCSO Military Leave Policy No. 255.06.

4.91   In addition to the **Secondary Employment Form**, the **Military Service Verification Form**, and the **Military Request for Leave Form**, the Shelby County Sheriff's new USERRA policy created yet another form that servicemembers must complete to qualify for their statutorily guaranteed military benefits: the "**Military Event Attendance Verification Form**."   *See* SCSO Military Leave Policy No. 255.07.

4.92   To qualify for their statutorily guaranteed military benefits, the Shelby County Sheriff's new USERRA policy also requires servicemembers to obtain their Commanding Officer's signature on yet another form ("The Military Event Attendance Verification Form") to verify their attendance at military drill:

> The Military Event Attendance Verification Form is a universal form used to verify that the employee attended the drill or event that paid military time was requested under Tennessee Code Ann. 8-33-109.   This form will be completed by the Commanding Officer at the conclusion of the event or drill that the employee requested paid time off to attend.   The form will then be forwarded to the Military Liaison Officer who will file the form accordingly.   This form serves 2 purposes; not only does it verify that the employee attended the event or drill and is eligible for military leave, it also ensures that military leave is not taken from the employee in the event of illness, cancellation of the event or drill, or other events that could occur.   The Military Liaison Officer can, at his discretion, verify the attendance with the individual who completed and signed the form.   In the event that the Commanding Officer is not present at the event, and no one else is available or willing to sign the form, the employee will notate this on the form.   The Military Liaison Officer can verify the attendance at a later time, if necessary…[2]

---

[2] *See* SCSO Military Leave Policy No. 255.07.

4.93   Again, the Shelby County Sheriff's Office is aware that the majority of servicemember employees will be unable to comply with this requirement because the vast majority of Reserve Component Officers are not "full time Military Officers;" they are part-time Reserve Officers.

4.94   And again, because it is impossible for the majority of servicemembers to obtain a "full time Military Officer" signature on the required Military Service Verification Form, the majority of Shelby County's servicemember employees will violate Shelby County Policy by attending mandatory military drills.

4.95   This provision was also intentionally designed to deprive servicemembers employees of their USERRA rights and limit their use of military leave.

4.96   In addition to the **Secondary Employment Form**, the **Military Service Verification Form**, the **Military Request for Leave Form**, and the **Military Event Attendance Verification Form**, the Shelby County Sheriff's new USERRA policy also created an extra layer of bureaucracy ("**Military Liaison Officer**") to enforce the above-referenced hurdles to servicemembers qualifying for their statutorily guaranteed military benefits.  *See* SCSO Military Leave Policy No. 255.04.

4.97   The Shelby County Sheriff's new USERRA policy also fails to provide servicemembers with the appropriate amount of days to return to work after a military deployment that lasts longer than 30 days.  *See* SCSO Policy No. 255.11, stating in pertinent part: "Twenty-one (21) Calendar days or more Employees shall advise the Military Liaison as soon as possible of their date of return to schedule a Military Return Interview…"[3]

---

[3] "as soon as possible" undermines and conflicts with the timeframes guaranteed by Federal, State, and Local law.

4.98   Mr. Ward's military service was a motivating factor for all of Defendant's adverse employment decisions.

4.99   Mr. Ward has suffered significant economic and non-economic injures as a result of Defendants' actions.

4.100  Two of the detectives involved in this fiasco lost their detective status and were reassigned to out-of-the way positions.

4.101  The Sheriff was not reelected.

4.102  However, Mr. Ward has never been compensated for the damage he suffered as a direct and proximate result of Shelby County's adverse employment actions.

4.103  At all times relevant hereto, Defendant had a duty to conduct itself in compliance with the law, including USERRA, and ensure its managers and agents followed the Act.

4.104   The above-referenced actions by Defendant breached those duties.

4.105  To the extent that Defendant alleges application of any agreement that constitutes any limitation on Plaintiff's rights under USERRA, it is illegal, null and void, inapplicable, and of no force or effect, pursuant to 38 U.S.C. § 4302.

4.106  At all times relevant to this litigation, Defendant was aware of its duty to conduct itself in compliance with the law, including USERRA.

4.107  Defendant failed to post workplace posters that set out employer responsibilities under USERRA, as required by 38 U.S.C. § 4334.

4.108  As a result of Defendant's unlawful conduct in violation of USERRA and the necessity of this action to seek a remedy, Mr. Ward fears further retaliation against

his employment rights by Defendant or its managers, directors or employees.  As such, any employment relationship that Mr. Ward may have enjoyed with Defendants prior to the filing of this action is irreparably damaged through no fault of Mr. Ward.

4.109  Defendants' actions complained of herein were willful because Defendants either knew or showed reckless disregard for whether their conduct was prohibited under the provisions of USERRA, as defined by 38 U.S.C. § 4323(d), 20 C.F.R. § 1002.312(c).

## V.  CAUSES OF ACTION

### (Count One - Declaratory Judgment, validity of USERRA Waiver)

5.1     Plaintiff re-alleges paragraphs I. through IV., inclusive, as though set forth and incorporated herein.

5.2     Mr. Ward requests a Declaratory Judgment as to the validity of the August 3, 2016 agreement (attached here to as **Exhibit A**).

5.3     28 U.S. C. § 2201(a) authorizes actions for declaratory relief and provides that "[i]n a case of actual controversy within its jurisdiction, * * * any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

5.4     An actual case or controversy exists as to whether Mr. Ward is subject to the 2016 purported waiver of his USERRA rights, which will, in part, determine Mr. Ward's underlying claims of discrimination and retaliation.

5.5     No parallel litigation exists between the parties with regard to any of the above-referenced claims.

5.6     This Court has jurisdiction over the parties and claims, pursuant to 38 U.S.C. § 4323(b)(1)-(3) and 28 U.S.C. § 1331.

5.7     The Sixth Circuit Court of Appeals applies two criteria when deciding whether declaratory relief is appropriate:

> The two principal criteria guiding the policy in favor of rendering declaratory judgment are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed. *Allstate Ins. Co. v. Mercier*, 913 F. 2d 273, 277 (6th Cir. 1990).

5.8     Both criteria are satisfied here because a judgment will settle the legal rights associated with the uncertainty of agreement, and, further, resolution will save significant judicial resources for the court and the parties.

5.9     The 2016 agreement espoused by Defendants is invalid because USERRA's strict requirements for notice and waivers of rights are not satisfied.

5.10    The notice and waiver requirements of USERRA are wide-ranging. Section 4334 of USERRA requires an employer to "provide to persons entitled to rights and benefits under [USERRA] a notice of rights, benefits and obligations of such persons and such employers under [USERRA]."  Congress added § 4334 to the Act in 2004 in response to an increase in USERRA claims and testimony stating that "many problems emerge because employers and employees do not know the legal rights and duties associated with USERRA."  H.R. Rep. No. 108-683, at 17 (2004) *available at* 2004 WL 3044785 (Leg. Hist.).

5.11   Likewise, waivers of USERRA rights must be clear, unequivocal, and in writing. *See* 38 U.S.C. § 4316(b)(2)(A)(ii).  It is the burden of the employer to prove a knowing and clearly written notice *and* to show that the employee was aware of the specific rights or benefits to be lost.  38 U.S.C. § 4316 (b)(2)(B).  Even in the case where an employee clearly does waive a right or benefit under USERRA in writing (certainly not the case at bar), such a waiver does not extend to or waive any other right under the Act.  *See* 20 C.F.R. § 1002.152, *c.f.* 20 C.F.R. §1002.88.

5.12   In *Breletic v. CACI, Inc.*, 413 F. Supp. 2d. 1329 (N.D. Ga. 2006)[4], a remarkably similar case, the court held that an arbitration agreement was not enforceable because it did not constitute a clear waiver of the employee's right to bring his claims in a judicial forum under the USERRA.   The court relied upon the clear mandate of Section 4302, *see supra,* as well as USERRA's legislative history.   The House Report on Section 4302(a) of the USERRA states:

> Section 4302(b) would reaffirm a general preemption as to
> State and local laws and ordinances, as well as to employer
> practices and agreements, which provide fewer rights or
> otherwise limit rights provided under amended chapter 43 or
> put additional conditions on those rights. Moreover, this
> section would reaffirm that additional resort to mechanisms
> such as grievance procedures or arbitration or similar
> administrative appeals is not required. It is the Committee's
> intent that, even if a person protected under the Act resorts
> to arbitration, any arbitration decision shall not be binding as
> a matter of law. The Committee wishes to stress that rights
> under chapter 43 belong to the claimant, and he or she may
> waive those rights, either explicitly or impliedly, through
> conduct. Because of the remedial purposes of chapter 43,
> **any waiver must, however, be clear, convincing,**

---

[4] The court also stated: "given the language of Section 4302(b) and the legislative history of the USERRA, the court holds that the USERRA grants those covered by it the right to pursue their claims in a judicial forum and that the USERRA preempts arbitration agreements purportedly covering claims arising under the USERRA." *Id.* at 1337.

**specific, unequivocal, and not under duress**. Moreover, only known rights which are already in existence may be waived.  *An express waiver of future statutory rights, such as one that an employer might wish to require as a condition of employment, would be contrary to the public policy embodied in the Committee bill and would be void.*

*Breletic v. CACI, Inc.*, 413 F. Supp. 2d at 1336-1337 (*citing* H.R. Rep. No. 103-65 (1994), as reprinted in U.S.C.C.A.N. 2453 (emphasis in italics original, added in bold)).

5.13   In this controversy, Defendants' purported agreement fails to mention anything about USERRA rights.  Further, the duress imposed on Mr. Ward by which Defendant's obtained the agreement belie any chance for a clear or unequivocal waiver of rights as Congress mandated.

**(Count Two - Declaratory Judgment, Military Leave Policy Violates USERRA)**

5.14   Mr. Ward further requests Declaratory Judgment that Shelby County's Military Leave Policy (attached here to as **Exhibit B**) violates USERRA.

5.15   An actual case or controversy exists as to whether Defendants' Military Leave Policy violates USERRA, which will, in part, determine Mr. Ward's underlying claims of discrimination and retaliation.

5.16   No parallel litigation exists between the parties with regard to any of the above-referenced claims.

5.17   This Court has jurisdiction over the parties and claims, pursuant to 38 U.S.C. § 4323(b)(1)-(3) and 28 U.S.C. § 1331.

5.18   Both criteria under *Allstate Ins. Co. v. Mercier*, 913 F. 2d at 277, are satisfied here because a judgment will settle the lawfulness of Defendants' Military Leave Policy and, further, resolution of that question will save significant judicial resources for the court and the parties.

5.19    By its own terms, USERRA's requirements "supersede[] any . . . policy, plan, [or] practice, . . . that reduces, limits, or eliminates in any manner any right or benefit provided by [USERRA], including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit." 38 U.S.C. § 4302(b); 20 C.F.R.§ 1002.7.

5.20    Although an employee may be required to give notice to his employer of pending service in the uniformed services: (1) the employee is not required to request or obtain permission from his employer to leave to perform service in the uniformed services, 20 C.F.R. § 1002.87; (2)  nor is an employee required to accommodate his employer's interests or concerns regarding the timing, frequency, or duration of uniformed service, 20 C.F.R. § 1002.104.

5.21    Notice under USERRA may be verbal or written. 38 U.S.C. § 4303(8); 20 C.F.R. § 1002.85(c) ("The notice may be informal and does not need to follow any particular format.").

5.22    Employer imposed notice requirements that exceed those under USERRA are preempted.    38 U.S.C. § 4302(b); 20 C.F.R.§ 1002.7.

5.23    USERRA forbids imposing documentation requirements on a returning servicemember beyond those listed in 38 U.S.C. § 4312(f)(1). 38 U.S.C. § 4302(b); 20 C.F.R.§ 1002.7; *Brown v. Prairie Farms Dairy, Inc.,* 872 F. Supp. 2d 637, 644 (M.D. Tenn. 2012).

5.24    A servicemember is not required to provide documentation to an employer for periods of service under 30 days.  38 U.S.C. § 4312(F)(1); 20 C.F.R. § 1002.121.

5.25    No employer may deny a servicemember's notice to attend military duty or request to use paid leave for that period of military duty.  38 U.S.C. § 4316(d), 20 C.F.R. § 1002.87.

5.26    Tennessee state law provides servicemembers the right to take paid military leave in conjunction with military duty.  Tennessee Code §§ 8-33-101, 8-33-109.

5.27    Tennessee paid military leave is a benefit of employment under USERRA. 38 U.S.C. § 4303(2); 20 C.F.R. § 1002.5(b).20 C.F.R. § 1002.193.

5.28    Defendants' Military Leave Policy conditions the payment of Tennessee paid military leave on adherence to its onerous pre and post military service notice and documentation and requirements.

5.29    Defendants denied Mr. Ward's notice of military leave, and request for paid military leave under Tennessee law.

5.30    Shelby County's Military Leave Policy violates USERRA because the Military Leave Policy imposes prerequisites and limits to the exercise of a servicemembers USERRA rights, among other ways, (a) allows Defendant to deny a servicemember military leave; (b) imposes pre-service notice and documentation requirements beyond those required under USERRA; (c) requires the employee to request and obtain permission from the Defendants to go on military leave; (d) imposes limits upon the timing, frequency, or duration of a servicemember's uniformed service; (e) imposes an employer accommodation requirement on the servicemember to take military leave; (f)  imposes documentation requirements on a returning servicemember beyond those listed in 38 U.S.C. § 4312(f)(1); (g) imposes service documentation

requirements for periods of military service under 30 days; (h) allows Defendant to deny the servicemember adequate travel time and rest time to and from military leave under USERRA and Tennessee statutes; (i) conditions the payment of Tennessee statutory military leave pay on adherence to the unlawful policies listed above; and (j) conditions the terms of continued employment, including adverse actions, discipline and termination on adherence to the unlawful policies listed above.

**(Count Three - 38 U.S.C. § 4311(a) - (c) Discrimination & Retaliation)**

5.31    Plaintiff re-alleges paragraphs I. through IV., inclusive, as though set forth and incorporated herein.

5.32    USERRA, Section 4311 provides in pertinent part:

> (a)      A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service, or obligation.
> (b)      An employer may not discriminate in employment against or take any adverse employment action against any person because such person
> (1) has taken an action to enforce a protection afforded any person under this chapter, […]
> (4) has exercised a right provided for in this chapter. The prohibition in this subsection shall apply with respect to a person regardless of whether that person has performed service in the uniformed services.
> (c)      An employer shall be considered to have engaged in actions prohibited-
> (1)      under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor[5] in the employer's action[…] *Ibid.*

---

[5] "Motivating factor" means "that if the employer was asked at the moment of the decision what its reasons were and if it gave a truthful response, *one* of those reasons would be the employee's military position or related obligations." *Leisek v. Brightwood*

5.33    The terms "benefit", "benefit of employment", or "rights and benefits" are

defined in USERRA and mean:

> [T]he terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.[6]

The sources of "rights" or "benefits of employment" include:

> [T]hose established (or changed) by a collective bargaining agreement, employer policy, or employment practice. The sources of seniority rights, status, and pay include agreements, policies, and practices in effect at the beginning of the employee's service, and any changes that may have occurred during the period of service.   In particular, the employee's status in the reemployment position could include opportunities for advancement, general working conditions, job location, shift assignment, rank, responsibility, and geographical location.[7]

5.34    USERRA provides servicemembers with the right to take time off before

military service "to travel safely to the uniformed service site and arrive fit to perform the

---

*Corp.,* 278 F.3d 895, 898 (9th Cir. 2002); *Robinson v. Morris Moore Chevrolet-Buick, Inc.,* 974 F. Supp. 571, 576 (E.D.Tx.1997); *Grosjean v. First Energy*, 481 F.Supp.2d 878, 883 (N.D. Ohio 2007).   An employee's "military position and related obligations [are] a motivating factor in [th employer's] decision if it relied upon, took into account, considered, or conditioned its decision on [the employee's] military-related absence." *Id.*
[6] 38 U.S.C. § 4303(2); 20 C.F.R. § 1002.5(b).
[7] 20 C.F.R. § 1002.193; *see also* 38 U.S.C. § 4302(a) which provides: "Nothing in this chapter [38 USCS §§ 4301 et seq.] shall supersede, nullify or diminish any Federal or State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter [38 USCS §§ 4301 et seq.]."

service."[8]

5.35    Prior to reporting back to their civilian employer USERRA provides servicemembers with the right to take time off "following the completion of the period of service, and the expiration of eight hours after a period allowing for safe transportation from the place of that service to the employee's residence."[9]

5.36    Under Tennessee law, "Military duty" means:

> (i)  Training and service performed by an inductee, enlistee, or reservist or any entrant into a temporary component of the armed forces of the United States; and
> (ii)  **Time spent in reporting for and returning from such training and service**, or if a rejection occurs, from the place of reporting for such training and service; […]

*Id.*  (Emphasis added).

5.37    Mr. Ward's military service obligation was a motivating factor in Defendants' denial of various benefits of employment.

5.38    Defendants violated 38 U.S.C. § 4311 of USERRA, among other ways, by discriminating against Mr. Ward and harassing Mr. Ward (a) when Defendants conducted criminal and employment investigations of Mr. Ward's military service; (b) when Defendants investigated Mr. Ward's secondary employment (military service) as a prerequisite to receiving the benefits of employment; (c) when defendants denied Mr. Ward adequate travel time and rest for his military leave under USERRA and Tennessee statutes; (d) when Defendants took adverse employment action against Mr. Ward based on his "secondary employment" (military service); (e) when Defendants criminally charged Mr. Ward with a felony; (f) when Defendants terminated Mr. Ward's employment because of his membership, service, or obligation to perform service in the

---

[8] 20 C.F.R. 1002.74
[9] 20 C.F.R. 1002.115.

uniformed service; and, (g) when Defendants retaliated against Mr. Ward after he took action to enforce protections afforded to him under USERRA.

5.39    Defendants' denial of said benefits of employment and subsequent acts constitute adverse employment actions that caused Mr. Ward damages in an amount to be proven at trial.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment to be entered against the Defendants as follows:

A.      For a Declaration that the August 3, 2016, agreement does not apply to this controversy because it constitutes an invalid waiver of USERRA rights;

B.      For a Declaration that the Shelby County Sheriff's Military Leave Policy violates USERRA;

C.      For an injunction preventing Defendants from ever again refusing to grant military leave to any servicemember seeking leave to travel safely and arrive fit for military service, pursuant to 38 U.S.C. § 4323(e);

D.      For an injunction preventing Defendants from ever again refusing to grant military leave to a servicemember following military service, with time for safe travel and eight hours rest for military duty occurring at a distant location, pursuant to 38 U.S.C. § 4323(e);

E.      For an injunction preventing Defendants from ever again retaliating against any servicemember for taking military leave in conjunction with military duty, pursuant to 38 U.S.C. § 4323(e);

F.     For an injunction preventing Defendants from ever again taking any adverse employment action against any Servicemember for failing to complete a secondary employment form listing the servicemembers' military service as a secondary employer, pursuant to 38 U.S.C. § 4323(e);

G.     For an Order requiring Defendants to comply with every aspect of USERRA, pursuant to 38 U.S.C. § 4323(e);

H.     For reinstatement of Plaintiff and recoupment of any loss of wages or benefits, pursuant to 38 U.S.C. § 4323(d)(1)(A) - (B);

I.     For an Order requiring Defendants to reinstate Plaintiff into a position at the level of seniority, status and pay that he would have enjoyed had Defendants not discriminated and retaliated against him, pursuant to 38 U.S.C. § 4311, 38 U.S.C. § 4323(d), 38 U.S.C. § 4323(e), and 20 C.F.R. § 1002.312(c);

J.     For an Order requiring Defendants to pay Plaintiff all lost wages incurred, value of lost bonuses, lost value of stock options, and value of benefits lost, including lost retirement contributions as a result of Defendants violations of USERRA, pursuant to 38 U.S.C. § 4311, 38 U.S.C. § 4323(d),  38 U.S.C. § 4323(e), and 20 C.F.R. § 1002.312(c);

K.     For an Order requiring Defendants to pay Plaintiff front pay as a result of Defendants' violations of USERRA, pursuant to 38 U.S.C. § 4311, 38 U.S.C. § 4323(d), 38 U.S.C. § 4323(e), and 20 C.F.R. § 1002.312(c);

L.     For an Order requiring Defendants to pay Plaintiff liquidated damages for their willful violations of USERRA, pursuant to 38 U.S.C. § 4311, 38 U.S.C. § 4323(d), 38 U.S.C. § 4323(e), and 20 C.F.R. § 1002.312(c);

M.    For an Order requiring Defendants to pay Plaintiff's attorneys' fees and costs, pursuant to 38 U.S.C. § 4311, et seq.;

N.    For pre and post judgment interest on the above amounts as authorized by law;

O.    For other relief the Court deems just and equitable;

P.    For an Order declaring as a matter of law that Defendants' violations of USERRA were willful, pursuant to 38 U.S.C. § 4323(d)(1)(C); and

Q.    For Leave to Amend this Complaint, including leave to amend this complaint to include class claims under Fed. R. Civ. P. 23 if discovery proves numerocity and commonality of claims.

## VII.    REQUEST FOR TRIAL BY JURY

Plaintiff hereby requests a trial by jury.

DATED this 9th day of June, 2020.

Respectfully submitted,

*/s/ Robert Mitchell*
Robert W. Mitchell (WSBA # 37444)
Attorney at Law, PLLC
1020 N. Washington
Spokane, WA  99201
Telephone:   509-327-2224
Facsimile:    888-840-6003
Email: bobmitchellaw@gmail.com

*/s/ Thomas G. Jarrard*
Law Office of Thomas G. Jarrard, PLLC
1020 N Washington Street
Spokane, WA 99201
Telephone:   (425) 239-7290
TJarrard@att.net

*Attorneys for Plaintiff*