IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| SEDRIC WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 2:20-cv-02407-JPM-cgc |
| | ) | |
| SHELBY COUNTY, SHELBY COUNTY SHERIFF'S OFFICE, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT
SHELBY COUNTY, TENNESSEE'S MOTION TO DISMISS**

COME NOW the Defendants, Shelby County, Tennessee and the Shelby County Sheriff's Office (collectively, "the County") and move the Court to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because Plaintiff has failed to state a claim upon which relief can be granted in his Complaint. A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" in order to survive a motion to dismiss under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, it is not possible, much less plausible, for Plaintiff to obtain relief from his Complaint.

**I.     Plaintiff Has Waived the Claims Set Out in His Complaint**

Plaintiff waived the right to seek relief for any of the issues raised in the Complaint by executing the Settlement Agreement. "Once concluded, a settlement agreement is as binding, conclusive, and final as if it had been incorporated into a judgment." *Bostick Foundry Co. v. Lindberg, a Div. of Sola Basic Industries, Inc.*, 797 F.2d 280, 283 (6th Cir. 1986). Ward waived

the right to "any and all claims whatsoever . . . arising out of his termination from employment" with the County by executing the agreement. (ECF No. 1-1, ¶3, PageID 31).

This Court has recognized that a party may relinquish its right to litigate a claim through various means, "including by release, waiver, or covenant." *AngelFix Tech, LLC. V. Technology*, 2016 WL 6770671 at *1 (W.D. Tenn. November 15, 2016); *see Bostick*, 797 F.2d at 283 (stating that the Sixth Circuit has long recognized a district court's power to enforce settlement agreements precluding future litigation). The agreement at issue here plainly states the unambiguous terms of the parties' contract for waiver. Plaintiff attached the agreement to his Complaint. (ECF No. 1-1).

The crux of the dispute resolved by the "Agreement and General Release" (ECF No. 1-1, PageID 31) ("Settlement Agreement") was Plaintiff's "termination from employment from the Shelby County Sheriff's Office on April 7, 2015." The County offered Plaintiff consideration in the form of reinstatement to his Corrections Deputy position and three (3) weeks' worth of back pay. *Id.* In return, Plaintiff agreed to release the County from "**any and all claims whatsoever, both known and unknown**, both before the [Civil Service Merit] Board and before any local, state, **or federal agency or court**, arising out of his termination from employment." *Id.* (emphasis added). Plaintiff unambiguously indicated his acceptance of these terms by placing his signature, witnessed by a Notary Public, on the Settlement Agreement. *Id.*

Since Plaintiff has admitted to the existence of a contract relinquishing his litigation rights, the only question before the Court is whether the Settlement Agreement precludes the instant suit. *See AngelFix Tech*, 2016 WL 6770671 at *3. Plaintiff seeks a declaratory judgment that the Settlement Agreement is not enforceable. Plaintiff states that the Settlement Agreement is unenforceable either because he did not "perfect" the agreement, (ECF No. 1, ¶4.67, PageID 12),

2

or because USERRA prohibits the "forfeiture [of] USERRA reemployment rights" (*Id.* at ¶4.72). Neither of these assertions is correct.

Plaintiff's statement that the Settlement Agreement is not enforceable because he did not "perfect" the agreement is merely conclusory. Plaintiff does not allege a single fact that would show which element of contract formation—offer, acceptance, or consideration—is missing from the Settlement Agreement. Plaintiff's statement that he did not "perfect" the Settlement Agreement is nothing more than a "naked assertion devoid of further factual enhancement." *Ashcroft*, 556 U.S. at 678 (internal quotation marks and citations omitted). Such statements are insufficient to support a claim for relief. *Id.* ("A pleading that offers labels and conclusions . . . will not do") (internal quotation marks omitted).

Further, the plain language of the Settlement Agreement (the meaning of which Plaintiff does not contest) states that the terms of the Settlement Agreement will be deemed to be jointly drafted by the parties. (ECF No. 1-1, ¶7, PageID 32). Plaintiff's incorporation of the Settlement Agreement into his Complaint, without any allegation that he did not understand the terms of the agreement or willingly execute it, contradicts any claim that he did not "perfect" the Settlement Agreement. Plaintiff's claim for a declaratory judgment that the Settlement agreement is unperfected should fail.

Plaintiff's claim that USERAA prohibits enforcement of the Settlement agreement also fails as a matter of law. There is nothing in USERRA that prohibits a service member from entering into an enforceable agreement to settle a potential USERRA claim. Indeed, 38 U.S.C. §§ 4302(a) specifically states that nothing in the statute shall "nullify or diminish any . . . contract [or] agreement, . . . that establishes a right or benefit that is more beneficial" than the potential relief under USERRA. Thus, when parties such as Plaintiff decide the consideration offered in a

settlement agreement is more beneficial than potential USERRA relief, the statute will not bar that party from waiving their USERRA rights in favor of the settlement agreement. 38 U.S.C. §§ 4302(a); *see also Wysocki v. International Business Machine Corp.*, 607 F.3d 1102 (6th Cir. 2010) (holding that a release of USERRA liability was enforceable where the releasing party received consideration for the release in the form of a severance payment).

Similarly, Plaintiff's claim that the Settlement Agreement is defective for lack of notice of USERRA rights fails. USERRA does not contain any notice requirements as to *settlement agreements*. Plaintiff states that "[t]he notice and waiver requirements of USERRA are wide-ranging." (ECF No. No. 1, ¶5.10, PageID 20). This is a mischaracterization of the law. USERRA speaks to an employer's obligation to provide notice of rights to employees precisely one (1) time in the statute. 38 U.S.C. § 4334 states:

> Each employer shall provide to persons entitled to rights and benefits under this chapter a notice of the rights, benefits, and obligations of such persons and such employers under this chapter. ***The requirement for the provision of notice under this section may be met by the posting of the notice where employers customarily place notices for employees***.

(emphasis added).

The plain language of the statute allows employers to meet all of their notice requirements by posting a single poster in their workplace. There is absolutely no requirement in the statute that employees receive individualized notice of their USERRA rights, much less enhanced notice in the execution of a settlement agreement.

Similarly, Plaintiff cannot obtain a declaratory judgment invalidating the Settlement Agreement by claiming the language of the agreement is insufficiently specific to waive USERRA rights. Plaintiff states at Paragraph 5.11 of the Complaint that § 4316(b)(2)(A)(ii) requires waivers of the USERRA rights such as the Settlement Agreement to be "clear, unequivocal, and in writing."

(ECF No. 1, ¶5.11, PageID 20). Plaintiff goes on to state that, pursuant to § 4316 (b)(2)(B), "[i]t is the burden of the employer to prove a knowing and clearly written notice and to show that the employee was aware of the specific rights or benefits to be lost." *Id.* This is not what USERRA requires.

The plain language of 38 U.S.C.A. § 4316(b) only speaks to an employee's right to reemployment after returning from a tour of duty with the armed services. It does not apply here. Under this section, an employer is required to treat a service-member employee's tour with the military as being on furlough or leave of absence. 38 U.S.C.A. § 4316(b)(1)(A). The statute states the service member is entitled to all benefits that any other employee on leave might receive, and that the employer must return the service member to work upon completion of their tour of duty. 38 U.S.C.A. § 4316(b)(1)(B). The only way for an employer to avoid their obligation to reinstate the employee is for the employee to knowingly provide written notice of their intent to not return to work. 38 U.S.C.A. § 4316(b)(2)(A)(ii). In this extremely limited context, the employer does have the burden of proving the employer waived their right to return to work in writing. 38 U.S.C.A. § 4316(b)(2)(B). The provision is irrelevant to Plaintiff's claims here.

There is absolutely nothing in the language of § 4316(b) that makes that part of the statute relevant to the enforceability of the Settlement Agreement, or any other allegation in the Complaint. The Settlement Agreement did not resolve any dispute relating to Plaintiff's right to return to work after service because no such dispute exists. There has been no allegation, at all, that Plaintiff was not properly returned to work after completing military training or service. Indeed, Count Three of the Complaint only cites the County for alleged discrimination and retaliation under § 4311(a)-(c), ***not*** § 4316. (ECF No. 1, ¶5.31-39, PageID 20-29).

The Sixth Circuit's ruling in *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102 (6th Cir. 2010) supports a finding that Plaintiff's entire case is barred by the Settlement Agreement. Like this case, *Wysocki* dealt with the enforceability of a release of liability after a service-member employee was terminated from his civilian employment. In *Wysocki*, the employee alleged that his termination was motivated by the fact that he had previously taken military leave. *Wysocki*, 607 F.3d 1103-04. The *Wysocki* employee also entered into a written agreement whereby he would receive a severance payment in exchange for releasing his former employer from all potential liability. *Id*. at 1104. Despite accepting this agreement, the employee later attempted to bring a USERRA claim. *Id*. The district court found that plaintiff had waived his right to bring a USERRA claim by entering into the agreement and dismissed the action. *Id*.

The Sixth Circuit in *Wysocki* explicitly stated that § 4302(a) affords veterans "the ability to waive their USERRA rights without unnecessary court interference." *Id*. at 1108. Thus, when a potential USERRA plaintiff decides to accept valuable consideration in exchange for waiving their right to bring a USERRA claim, that agreement will be enforceable to bar such a claim in the future. *Id*. at 1109 (affirming the district court's decision to dismiss the case based upon the valid waiver of USERRA rights).

Here, as in *Wysocki*, the release "used clear and unambiguous language and involved a valuable amount of consideration."[1] *Id*. at 1108. There is no reasonable argument that Plaintiff did

---

[1] The Sixth Circuit in *Wysocki* reasoned that referencing claims relating to "veteran status" alone was enough to put the employee on notice that he was specifically waiving USERRA rights. *Wysocki*, 607 F.3d at 1108. Here, the Settlement Agreement speaks to any claims "arising out of [Plaintiff's] termination." (ECF No. 1-1, ¶3, PageID 31). And Plaintiff's own recitation of the facts shows that he believes his military service was what precipitated his termination. Plaintiff has made it exhaustively clear in his Complaint that he as always felt his termination was based upon his military service or "veteran status". Taking all of Plaintiff's factual statements in the Complaint as true, there is no reasonable argument that Plaintiff did not know he, like the plaintiff in *Wysocki*, was waiving USERRA rights by releasing his employer from any liability arising from his termination.

6

not understand the language of the Settlement Agreement because he was represented by his own attorney during the negotiation process. (ECF No. 1-1, ¶8, PageID 32). Plaintiff certified that he had "carefully read the Agreement and fully understands all of its provisions and effects." Defendants request that the Court enforce the Settlement Agreement and dismiss the entire cause of action.

## II.     Plaintiff's Claims Are Barred by the Doctrines of Laches and Equitable Estoppel.

Plaintiff makes allegations regarding a termination that occurred in 2015, (ECF No. 1, ¶4.48, PageID 9), and identical to the lawsuit his counsel brought in 2018 and dismissed with prejudice last year.[2] Rather than bring his lawsuit at that time, Plaintiff waited five years from the date of his termination, allowing his now-sought-after front pay award to multiply. Plaintiff is barred by laches from attempting to bring this lawsuit now.

Laches is an equitable defense barring plaintiffs "from proceeding if they unreasonably delayed in filing their suit and that delay harmed the Defendant." *E.E.O.C. v. Autozone, Inc.*, 258 F. Supp. 2d 822, 826 (W.D. Tenn. 2003). Laches "requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (citation omitted). Prejudice may be either evidentiary or economic. "When the consequences of an untimely filed or delayed complaint cause a defendant to suffer monetary loss, e.g., incurring damages which likely would have been prevented by earlier suit, a finding of economic prejudice may be warranted." *Nartron Corp. v. Borg Indak, Inc.*, 848 F. Supp. 2d 725, 748 (E.D. Mich. 2012) (citation, internal quotation marks and brackets omitted).

---

[2] As addressed below, Plaintiff attempts to incorporate that now-dismissed lawsuit into his own. (*See* ECF 1).

Here, the Plaintiff unreasonably delayed in filing his suit. His alleged termination occurred in 2015, but he waited five years to bring suit. And Shelby County will be prejudiced by the delay. Since Plaintiff's 2015 termination, the front pay he now seeks, (*see* ECF No. 1, PageID 29), has grown much larger than it would have been had he brought his suit earlier. And since his counsel brought this same lawsuit on behalf of plaintiffs Williams and Vaughn in 2018 and Plaintiff did not join at that time, both the County's defense expenses and the attorney's fees and costs Plaintiff now seeks, (*see id.* at PageID 30), are unnecessarily duplicated. Laches bars Plaintiff's unreasonable delay.

Further, even if the Plaintiff's undue delay in filing suit does not bar his claim under laches, he is nonetheless barred from bringing suit under the related doctrine of equitable estoppel. Plaintiff brought this lawsuit despite entering into an agreement with Shelby County Government releasing the Defendants from all claims. His lawsuit is inconsistent with his representations in the Settlement Agreement and is inequitable.

The doctrine of equitable estoppel "is designed to prevent undue hardship to one who has relied to his detriment on an earlier inconsistent position of his opponent." *Reynolds v. Comm'r*, 861 F.2d 469, 474 (6th Cir. 1988). It is "a judicial doctrine of equity which operates apart from any underlying statutory scheme." *Mutchler v. Dunlap Memorial Hosp.*, 485 F.3d 854, 861 (6th Cir. 2007) (citation omitted). Equitable estoppel requires "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Mich. Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir.2004); *see Yeda Research & Dev. Co. v. Imclone Sys., Inc.*, No. 03 CIV. 8484 (NRB), 2005 WL 2923545, at *8 (S.D.N.Y. Nov. 3, 2005) ("[L]aches is founded

8

upon a plaintiff's unreasonable and inexcusable delay in raising a claim, whereas equitable estoppel requires some sort of misleading conduct detrimentally relied upon by another party.").

Here, Plaintiff represented to Shelby County that he would "release the SCSO and its officers, directors, and employees, from ***any and all claims whatsoever***, both known and unknown, both before the [Civil Service Merit] Board and before any local, state, ***or federal agency or court***, arising out of his termination from employment on April 7, 2015 . . . ." (ECF No. 1-1, ¶3, PageID 31) (emphasis added). Shelby County relied on that representation by agreeing to reinstate Plaintiff. Additionally, the County changed their legal position in the Civil Service Merit Board appeal by not proceeding with its defense of Plaintiff's termination. (*See id.*). Now, despite that agreement, Plaintiff seeks to bring a claim for monetary damages against Shelby County and the SCSO. He should be equitably estopped from doing so.

Finally, the instant action is untimely and inequitable in that the Complaint is, in fact, Plaintiff's attempt to intervene in a lawsuit that has already been dismissed. As Plaintiff states in his Complaint, Alvin Williams and Steven Vaughn have already brought this lawsuit, making the same allegations regarding the same 2015 event. The Plaintiff's Complaint even seeks to ***incorporate*** "all facts set forth in Document 1, U.S. Dist. Court for the W.D. Tennessee, Civil Cause No. 2:18-02531-JPM-cgc." (ECF No. 1, ¶4.2, PageID 5). That lawsuit (brought by Plaintiff's counsel in this case) was dismissed with prejudice pursuant to a Joint Stipulation of Dismissal on December 12, 2019. (*See* 2:18-cv-02531, D.E. Nos. 90-91). The final deadline to amend in the Williams/Vaughn lawsuit has long-since run. Thus, any attempt to amend that lawsuit is untimely. Similarly, if it is an attempt to intervene in that lawsuit, it is also untimely. *See* Fed. R. Civ. P. 24; *Clarke v. Baptist Mem'l Healthcare Corp.*, No. 06-2377, 2014 WL 12626322, at *3 (W.D. Tenn. July 9, 2014) ("Whether intervention is sought as of right or by permission of the

court, a motion under Rule 24 must be timely."). Whether Plaintiff seeks to amend the dismissed lawsuit or intervene in it, such action is not timely and should not be allowed.

### III. Plaintiff's Complaint Should Be Dismissed to the Extent that He Has Failed to State a Claim Upon Which Relief Can Be Granted.

The County requests that the Complaint be dismissed because Plaintiff has failed to adequately plead any claim for relief under Rule 8(a) of the Federal Rules of Civil Procedure. F.R.C.P 8(a)(2) states that complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678. Courts are not required to accept "legal conclusion couched as a factual allegation" when determining whether a claim is plausible. *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The instant Complaint is devoid of facts necessary to plausibly state a claim for relief.

i. Plaintiff lacks standing to bring an action for declaratory relief regarding current leave policies.

Plaintiff lacks standing to bring any suit related to the County's current military leave policy because that policy is not currently, and has never been, applicable to him. A party's standing to sue in federal court is rooted in in the U.S. Constitution. *See Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016) (stating that a federal court's power only extends to cases and controversies as set out in Article III, Section II of the U.S. Constitution). The standing doctrine "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id*. "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing" that they have standing to bring their suit. *Id*.

There are three (3) necessary elements a plaintiff must plead in their complaint to adequately establish standing: "(1) [the plaintiff] suffered an injury in fact, (2) that is fairly

traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision" *Id*. "Where, as here, a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element." *Id*. (internal quotation marks and citations omitted).

Plaintiff fails to establish standing in his Complaint to sue for any relief related to the County's current military leave policy. It is the County's ***current*** policy, enacted in 2017, that Plaintiff believes entitles him to relief. (See ECF No. 1, ¶5.14, PageID 22 ("Mr. Ward further requests Declaratory Judgment that Shelby County's Military Leave Policy (attached here to as Exhibit B) violates USERRA"); and ECF No. 1-2, PageID 34 ("Effective Date 8-10-17")). Plaintiff has admitted that he has not worked for the County, or been subject to any of its policies, since 2015. (ECF No. 1, ¶4.48, PageID 9).

It is, therefore, impossible for Plaintiff to show: 1) that the 2017 policy has harmed him in any way since his exit from employment with the County in 2015; 2) that the County was responsible for any harm resulting from a policy that has never been applied to Plaintiff; or, 3) that a favorable judicial decision would address the harm he has not, and likely never will, suffer. In other words, Plaintiff's own Complaint shows he does not have standing to sue over the County's current military leave policy.

ii. Plaintiff has not adequately pled a case discrimination and retaliation under 38 U.S.C. § 4311(a) - (c)

Plaintiff only brings USERRA-specific claims pursuant to § 4311 of the statute. (*See* ECF No. 1, ¶5.38, PageID 27). That section, 38 U.S.C. § 4311(a) - (c), makes it impermissible for an employer to deny employment benefits to a service-member employee, take any adverse action against any employee because of their service membership, or retaliate against an employee for asserting USERRA rights. Plaintiff states his conclusion that the County harmed him in variety of

different ways. (*See, e.g.*, ECF No. 1, ¶5.38, PageID 27-28). But none of these allegations rises above "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," and each is insufficient to state a plausible claim for relief. *Ashcroft*, 556 U.S. at 678.

The alleged criminal investigation of Plaintiff was not an employment action and does not implicate USERRA protection. Only employers can take an employment action that triggers USERRA liability. 38 U.S.C. § 4311(a) - (c); *see also, Kassel v. City of Middleton*, 272 F.Supp.3d 516, 531 (S.D. New York, 2017) (individuals who were not "employers" for USERRA purposes were not subject to suit under the statute). Under USERRA, an "employer" is "any person . . . that pays salary or wages for work performed or that has control over employment opportunities." 38 U.S.C § 4303(4)(A). This can include a manager to whom "the employer has delegated the performance of employment-related responsibilities." 38 U.S.C § 4303(4)(A)(i). No one involved in initiating or carrying out the criminal investigation fits this definition.

Specifically, Plaintiff never alleges that Detective Jason Valentine acted in the role of an "employer" for the purposes of a USERRA claim. Plaintiff states that, after the criminal investigation had already begun, Detective Valentine added Plaintiff's name to the criminal inquiry. (ECF No. 1, ¶4.37, PageID 8). Plaintiff never alleges that Detective Valentine or any other participant in the criminal investigation paid his salary or controlled his employment opportunities. Plaintiff has stated no facts that support the proposition that the criminal investigation, itself, was carried out by an employer. Therefore, Plaintiff cannot maintain a claim for relief under USERRA for any harm that allegedly occurred because of the criminal investigation. *See Kassel*, 272 F.Supp.3d at 530 (defendants who had not taken any employment actions relative to the plaintiff were not proper parties to a USERRA suit and should be dismissed from the action).[3]

---

[3] Indeed, in the previous case brought by the same counsel (the facts of which Plaintiff has incorporated into this Complaint), based on the agreement of the parties at the pre-trial conference the Court noted "I

12

Further, despite Plaintiff's claims to the contrary, the County did not charge Plaintiff with any crime, ever. The County, as a municipality, does not have the power to charge anyone with a felony in the state of Tennessee. The power to charge Tennessee citizens with crimes in the state's courts is statutorily designated to the district attorneys general. Tenn. Code. Ann. § 8-7-103(1). Bringing criminal charges against Plaintiff was not an action, employment or otherwise, undertaken by the County. The fact that the local district attorney decided to charge Plaintiff with a felony for allegedly defrauding his employer does not support Plaintiff's claim for USERRA relief.

Similarly, the internal audit in this case cannot be deemed to be an ***adverse*** employment action. An adverse employment action must cause the denial of "initial employment, reemployment, retention in employment, promotion, or any benefit of employment" to a service member in order to be actionable under USERRA's anti-discrimination provisions. 38 U.S.C. § 4311(a). Plaintiff never alleges any facts that show the audit caused any change whatsoever to his employment status and benefits. The mere existence of the audit, in and of itself, does not support USERRA liability.

Finally, Plaintiff has not stated any facts, whatsoever, that would support a claim specifically for retaliation under USERRA. Retaliation is a specific and separate cause of action under the statute. *Compare* 38 U.S.C. § 4311(a); 38 U.S.C. § 4311(b). An employer can only be liable for retaliation if they take adverse action against an employ after said employee "(1) has

---

think everybody's agreeing that . . . the arrest itself is not an adverse employment action…it's negative, but in this case … I don't think - - any different than if you were a - - an employee at St. Jude and you were arrested but then later terminated. It would be the termination that was the adverse employment action." (Case 2:18-cv-02531-JPM-cgc, ECF No. 93, Page ID 1276).  To the extent that the Court deems citation to this or any other filing in the previous lawsuit to be outside the pleadings for purpose of a Rule 12 motion, Defendants request that the Court disregard said documents. This will not impact Defendants' arguments in this matter.

taken an action to enforce a protection afforded any person under this chapter, (2) has testified or otherwise made a statement in or in connection with any proceeding under this chapter, (3) has assisted or otherwise participated in an investigation under this chapter, or (4) has exercised a right provided for in this chapter." 38 U.S.C. § 4311(b). Plaintiff makes the unsupported statement that the County retaliated against him "after he took action to enforce protections afforded to him under USERRA." (ECF No.1, ¶5.38, PageID 27). Plaintiff never identifies what acts he took to "enforce" his USERRA protections. He cannot, therefore, obtain relief for retaliation.

iii. <u>Any claim for damages beyond September 16, 2016 should be dismissed and barred due to Plaintiff's failure to mitigate his damages.</u>

Plaintiff voluntarily chose not to return to his job, despite affirming in the Settlement Agreement that he would do so. Plaintiff alleges his employment with Defendant was terminated on April 7, 2015. (ECF No. 1, ¶4.48, PageID 9). On August 3, 2016, Plaintiff entered into a Settlement Agreement under which his "reinstatement date shall be September 16, 2016." (ECF No. 1-1, ¶1, PageID 31). Plaintiff executed this document, with a Notary Public present, having acknowledged that "I, SEDRIC WARD, HAVE READ THE FOREGOING COMPROMISE AND SETTLEMENT AGREEMENT, BY AFFIXING MY SIGNATURE HEREUNDER, I FULLY UNDERSTAND AND VOLUNTARILY AGREE TO BE LEGALLY BOUND BY THIS AGREEMENT." (*Id*. at PageID 33).

Despite having entered into this agreement, Plaintiff claims he had fears of things he thought may happen in the future, and did not return to work. (*See* ECF No. 1, ¶¶4.74-4.76, PageID 13). Plaintiff makes no allegations that anything that happened between the time he executed the document on August 3, 2016, and the reinstatement date of September 16, 2016 created these speculative and vague fears.

The Complaint, and notarized Settlement Agreement executed by Plaintiff that is attached to it, show that Plaintiff was offered reinstatement to his position effective September 16, 2016. Plaintiff agreed to that reinstatement. After entering into that agreement, Plaintiff then voluntarily chose to not return to his job, thereby failing to mitigate the damages he now seeks.

Courts have applied the general employment discrimination litigation principle that an employee has a duty to mitigate his damages to USERRA cases. *See Johnson v. Guerrieri Mgt. Inc.*, 437 Fed. Appx. 853, 856 (11th Cir. 2011) (citing *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 231 (1982)); *accord Campbell v. Catholic Community Servs of W. Washington*, 2012 WL 600725, at *3 (W.D. Wash. Feb. 22, 2012).

In this case, Plaintiff accepted an offer of reinstatement, and then, after doing so, changed his mind and did not return to his position. Unlike some cases where an individual is offered a position and declines, Plaintiff here actually accepted the offer and after the fact chose not to return to work. Plaintiff points to nothing that happened after he entered into the agreement that would make returning to his position untenable or that would have caused him to be "terrified". (*See* ECF No. 1, ¶4.76, PageID 13). Plaintiff should not be able to seek damages for back or front pay for any period of time beginning on or after September 16, 2016, as he failed to mitigate his damages by returning to his job at that time, and Defendant requests that all such claims be dismissed with prejudice and/or barred.

iv. <u>Any claim for damages not allowed by USERRA should be dismissed.</u>

Although Plaintiff's Complaint does not specifically seek punitive damages or damages for emotional distress, allegations in the pleading appear to be an attempt to state a case for damages not permitted under USERRA.

"USERRA does not authorize damages for emotional distress. The remedies under USERRA are limited to (A) a court order requiring the employer to comply with USERRA; (B) compensation for 'any loss of wages or benefits'; and (C) liquidated damages for willful violations, equal to the amount of lost wages or benefits." *Norris v. Franciscan Physician Network / Specialty Physicians of Illinois*, 2018 WL 4205415, at *6 (N.D. Ill. Sept. 4, 2018) (citing 38 U.S.C. § 4323(d)).

The Complaint contains numerous allegations that are irrelevant to alleged lost wages and benefits, and which appear to demonstrate the emotional or financial impact of the alleged violations claimed by Plaintiff. (*See, e.g.*, ECF No. 1, ¶¶ 4.55(C)-I, PageID 10). Defendant requests that any claims for emotional distress or punitive damages be dismissed with prejudice from this case, as they are not permitted under USERRA.

v. The Shelby County Sheriff's Office is not a proper party.

Plaintiff fails to state a claim against the Shelby County Sheriff's Office, as it is not a separate entity subject to suit.[4] (*See, e.g.*, *Gauldin v, Dyersburg Police Dept.*, 2019 WL 3850540, at *2 (W.D. Tenn. August 15, 2019); *Grace v. City of Ripley, Tenn.*, 2017 WL 835206, at *5 (W.D. Tenn., March 2, 2017) (quoting *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("[T]he Police Department is not an entity which may be sued . . . [thus, the] County is the proper party to address the allegations of . . . [the] Complaint."); *see also Woodard v. Shelby Co. Div. of Corrections*, 2009 WL 10664200, at *4 (W.D. Tenn. Jan. 28, 2009).

A lawsuit against the Shelby County Sheriff's Office is properly directed towards Shelby County Government. In this case, Shelby County Government (sued as "Shelby County") is

---

[4] This issue was raised in the Prior Lawsuit, and the Shelby County Sheriff's Office was dismissed following the scheduling conference after discussion and agreement of the parties' counsel. *See* 2:18-cv-02531-JPM-cgc, ECF No. 24, Page ID 179 ("Order Dismissing Duplicative Defendants").

16

already a named defendant. For these reasons, the claims against Shelby County Sheriff's Office Defendant requests that the claims against Shelby County Sheriff's Office be dismissed with prejudice.

Respectfully submitted,

*/s/ Jasen M. Durrence*
JASEN M. DURRENCE (#33275)
R. JOESEPH LEIBOVICH (#17455)
*Attorneys for Shelby County*
SHELBY COUNTY ATTORNEY'S OFFICE
160 North Main Street, Suite 950
Memphis, TN  38103
(901) 222-2100
jasen.durrence@shelbycountytn.gov
joe.leibovich@shelbycountytn.gov

Certificate of Service

I certify that the foregoing is being filed via the Court's ECF system this 1st day of July, 2020, for service on all persons registered in connection with this case, including:

| | |
|---|---|
| Robert W. Mitchell | Thomas G. Jarrard |
| Robert Mitchell, Attorney at Law, PLLC | Law Office of Thomas G. Jarrard, PLLC |
| 1020 North Washington Street | 1020 North Washington Street |
| Spokane, WA 99201 | Spokane, WA 99201 |

*/s/ Jasen M. Durrence*

Case 2:20-cv-02407-JPM-cgc   Document 17-1   Filed 07/01/20   Page 18 of 18    PageID 99