IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

SEDRIC WARD,

      Plaintiffs,

v.

SHELBY COUNTY, and SHELBY COUNTY
SHERIFF'S OFFICE,

      Defendants.

Case No.
2:20-cv-02407-JPM-cgc

---

PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

---

## I.    INTRODUCTION

COMES NOW Plaintiff, SEDRIC WARD, by and through his undersigned counsel, Robert Mitchell and Thomas Jarrard, and respectfully submits this response in opposition to Defendants' Motion to Dismiss Plaintiff's claims.

## II.    LAW AND ARGUMENT

Federal Rule of Civil Procedure 12(b)(6) allows the court to dismiss the complaint for "failure to state a claim upon which relief can be granted." In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, the complaint must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Here, Mr. Ward's complaint states clear factual allegations in support of established causes of action under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C 4301 *et seq.* ("USERRA").

1

**A.    DEFENDANTS' RELEASE DOES NOT SATISFY ANY OF THE STRICT REQUIREMENTS FOR A VALID WAIVER OF MR. WARD'S USERRA RIGHTS.**

Shelby County alleges that Mr. Ward's claims in this case are barred because he singed a release that attempted to offer Mr. Ward reinstatement in exchange for a waiver of rights. *Id.* at § 4.67. But Mr. Ward rejected that agreement and never carried through with it, nor accepted any consideration. *Id.* Shelby County now claims that Mr. Ward is bound by the waiver of claims in the agreement. *Id.* at § 4.68.

However, waivers of USERRA rights are exceedingly rare because the employer has the burden of showing that the waiver is made in writing, and is clear, convincing, specific, unequivocal, and not made under duress.[1] In determining whether a waiver of USERRA rights is effective, "the critical inquiry is whether the Release is exempted from the operation of § 4302(b) by § 4302(a), because the rights it provided to [the servicemember] were more beneficial than the rights that he waived." *Wysocki v. IBM*, 607 F.3d 1102, 1107-08 (6th Cir. 2010). USERRA intentionally creates an especially high standard for employers. Its language permitting a waiver of rights only for a more beneficial agreement appears to be unique. *See Wysocki*, 607 F.3d at 1109 (Martin, J., concurring) (noting that USERRA's waiver provision under § 4302 is "an exceedingly strange statute" and that "I cannot recall having encountered anything remotely similar in . . . more than thirty years on the bench").

Likewise, legislative history of the Act further affirms that waivers of USERRA requires the employer to clear a high hurdle to be enforced.

> Section 4302(b) would reaffirm a general preemption as to State and local laws and ordinances, as well as to employer

---

[1] *See Infra.*, H. Rep. No. 103-65 (1994), as reprinted in U.S.C.C.A.N. 2453 (emphasis added).

2

> practices and agreements, which provide fewer rights or otherwise limit rights provided under amended chapter 43 or put additional conditions on those rights. Moreover, this section would reaffirm that additional resort to mechanisms such as grievance procedures or arbitration or similar administrative appeals is not required. It is the Committee's intent that, even if a person protected under the Act resorts to arbitration, any arbitration decision shall not be binding as a matter of law. **The Committee wishes to stress that rights under chapter 43 belong to the claimant, and he or she may waive those rights, either explicitly or impliedly, through conduct. Because of the remedial purposes of chapter 43, any waiver must, however, be clear, convincing, specific, unequivocal, and not under duress**. Moreover, only known rights which are already in existence may be waived. An express waiver of future statutory rights, such as one that an employer might wish to require as a condition of employment, would be contrary to the public policy embodied in the Committee bill and would be void.[2]

This provision against waivers has been interpreted expansively; for instance, it includes a prohibition against the waiver in an arbitration agreement of an employee's right to bring a USERRA suit in Federal court. *See, e.g.*, *Garrett* v. *Circuit City Stores, Inc.,* 338 F.Supp.2d 717, 721–22 (N.D.Tex. 2004). USERRA's legislative history underscores that this provision is intended to prohibit "employer practices and agreements, which provide fewer rights or otherwise limit rights provided under the Act, or put additional conditions on those rights * * *."[3]

Further, even a voluntary resignation does not waive a servicemembers USERRA rights. *Wrigglesworth v. Brumbaugh*, 121 F. Supp. 2d 1126, 1131-1132 (W.D. Mich. 2000) (USERRA rights not waived when employee signed resignation letter that was prepared by and insisted upon by the employer, and was silent as to any rights to

---

[2] H. Rep. No. 103-65 (1994), as reprinted in U.S.C.C.A.N. 2453 (emphasis added).
[3] H. Rep. No. 103–65, Pt. I, at 20 (1993).

3

reemployment). In short, the provision against waivers, coupled with the mandate to courts to liberally construe USERRA to the benefit of the service member, lead to only one conclusion --- USERRA rights are not easily waived.

In this case, there is no clear waiver of USERRA rights. The agreement comes nowhere close to satisfying USERRA's clear, convincing, specific, unequivocal, and not under duress standard, as it fails to even mention USERRA. ECF No. 1, § 4.71. The purported agreement failed to explicitly state what USERRA rights Mr. Ward may be waiving, as required by USERRA. *Id.* at § 4.73. The purported agreement also failed to provide Mr. Ward with back pay, his accumulated seniority, status, pension benefits and rights and benefits of employment that he would have enjoyed had Shelby County not violated his USERRA rights. *Id.* at § 4.69. The purported agreement would require a forfeiture or certain USERRA reemployment rights, which is prohibited by 38 U.S.C. § 4302(b). *Id.* at § 4.72. And, Defendant obtained the agreement through coercion. ECF No. 1, § 4.55(A – I). Given the above, Mr. Ward never waived his USERRA rights in any fashion.

Assuming, *arguendo,* that the court could find that the purported release satisfies the <u>clear</u>, <u>convincing</u>, <u>specific</u>, <u>unequivocal</u>, <u>and not under duress standard</u>, then as noted above, the inquiry would rest on whether the rights provided in the release were more beneficial than the rights that Mr. Ward waived. *Wysocki v. IBM*, 607 F.3d 1102. The rights provided in the release come nowhere close to satisfying Mr. Ward's loss of back pay, or loss of pension credit and accumulation following his termination from April 2015 through September 2016. *Compare* ECF No. 1 at ¶¶ 4.49 – 4.54, 4.69 – 4.74 *and* ECF 1 - 1. Further, the reemployment offered in the release is in no way comparable to

4

the position that Mr. Ward held when he was terminated based on his military service obligations. In fact, the agreement would have placed Mr. Ward (an 18-year employee) on probation in an unprotected status, an easy target for continued discrimination and retaliation, adverse employment actions, and subject to dismissal without cause. *Id*. at § 4.74. The high bar imposed on a USERRA waiver is not met under these facts.

### B. *DEFENDANTS' LACHES & EQUITABLE ESTOPPEL ARGUMENTS FAIL.*

Laches is no longer a defense to USERRA claims, and even if it were, this action was filed within four years[4] from the date of the release that Shelby County now proffers in its motion (August 3, 2016 to June 6, 2020 is 3 years 10 months).

In 2008, Congress responded to courts applying a four-year federal limitations period by amending USERRA to make clear there is *no time limit* to file suit. Pub. L. 110–389, § 311(f)(1), 122 Stat. 4163 (Oct. 10, 2008). Now, "*[i]f any person seeks to file a complaint* or claim with the Secretary, the Merit Systems Protection Board, or a Federal or State court under this chapter alleging a violation of [USERRA], *there shall be no limit on the period for filing the complaint* or claim." 38 U.S.C. § 4327(b) (emphasis added). The text means what it says: there is *no limit* on the time to file a USERRA complaint. Accordingly, as it relates to this case, to apply laches would be to allow exactly what § 4327(b) expressly bars, a "time limitation on a party's right to bring suit," *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002). Therefore, Defendants' latches argument fails as a matter of law.

Additionally, Defendants present no facts justifying a laches defense. ECF 17 - 1. Instead, Defendants argue that: (1) Defendants may suffer possible prejudice from

---

[4] At 3 years 10 months, Mr. Ward's Complaint would also satisfy the Federal catch all Statute of Limitations, 28 U.S.C. § 1658.

5

increased front pay than Defendants would have if Mr. Ward would have brought this suit earlier; and (2) Defendants may suffer monetary loss from duplicative litigation. ECF 17 - 1 at 8.  These arguments are untenable.

Defendants' front pay argument fails because: (a) Mr. Ward is seeking reinstatement; and (b) front pay is an amount paid *after* judgement on liability and only if reinstatement is denied.  Accordingly, any front pay award by this Court at the conclusion of the 2021 trial would be five years less front pay than what may have been awarded in 2015.

Defendants' litigation expense argument is flawed because Mr. Ward had no obligation to join in other Plaintiffs' litigation.  Mr. Ward is the master of his complaint[5] and he has no such obligation.  Defendants failed to provide any authority whatsoever that would require[6] Mr. Ward to bring his action along with others.  ECF 17-1 at 8.

Shelby County also failed to establish that Defendants suffered any "detriment". *Mich. Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir.2004).  It is also without dispute that Shelby County's reemployment offer failed to provide Mr. Ward with any back pay or lost benefits, but rather only offered him a job in a probationary status. Therefore, Shelby County incurred no costs, detriment, or prejudice whatsoever as a result of tendering the unaccepted offer.

---

[5] *See e.g. Marshal v. Wyeth, Inc.,* No. CV-04-TMP-179-S, 2004 U.S. Dist. LEXIS 26748, at *5 (N.D. Ala. Feb. 18, 2004) ("Courts must keep in mind that the plaintiff is the master of his complaint and has the right to choose how and where he will fight his battle.")

[6] Even under Fed. R. Civ. P. 19, a plaintiff's joinder is not required where damages and rights at issue relate only to the relationship between existing parties and there will be no prejudice to other parties or claims.  See *Southern Co. Energy Mktg., L. P. v. Virginia Elec. & Power Co.,* 190 F.R.D. 182, 185-86 (E.D. Va. 1999).

C.   M<small>R</small>. W<small>ARD</small>'<small>S</small> C<small>OMPLAINT PLAINLY</small> S<small>TATES THAT</small> D<small>EFENDANTS</small>' M<small>ILITARY</small> L<small>EAVE</small>
     P<small>OLICY</small> V<small>IOLATES</small> USERRA <small>AS A</small> M<small>ATTER OF</small> L<small>AW</small>.

Shelby County's military leave policy unlawfully requires military members to seek permission and satisfy onerous documentation requirements *before* they are "allowed" to take any military leave.  That policy was applied to Mr. Ward and he was denied military leave.  The policy is a clear violation of USERRA prerequisite prohibitions.  38 U.S.C. § 4302(b).

> Section 4302(b) expressly states that USERRA "supersedes any . . . contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit."[7]

"USERRA prohibits employers from placing "additional prerequisites" on returning veterans seeking to exercise their reemployment rights."  *Petty v. Metro. Gov't of Nashville*, 687 F.3d 710, 719 (6th Cir. 2012).  Congress contemplated this when it wrote USERRA, "to encourage non-career service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service."  38 U.S.C. § 4301.  Indeed, the Act would be meaningless if, as Defendants assert in this case, an employer is allowed any freedom to dictate to the service member the terms or requirements regarding the times and manner in which an employee may be absent for military service.

As further discussed in the Department of Labor Regulation:

> Is the employee required to accommodate his or her employer's needs as to the timing, frequency or duration of service?

---

[7] *In re Petty,* 538 F.3d 431, 441 (6th Cir. 2008).

7

> No. The employee is not required to accommodate his or her employer's interests or concerns regarding the timing, frequency, or duration of uniformed service….[8]

In *Petty* the plaintiff took time away from his civilian employment to serve in Iraq. *In re Petty,* 538 F.3d at 436. Upon Petty's return to work, Metro investigated the surroundings of his military service and discharge, specifically with reference to a formal military document Petty provided his employer to prove his military service; a DD 214. *Id.* Petty was denied certain benefits and sued Metro for, *inter alia*, discrimination under USERRA. Defendants prevailed on the issue in a bench trial and the Plaintiff appealed.

On appeal, the Sixth Circuit Court of Appeals decided that (like here) the employer's military leave procedures constitute "additional prerequisites" that are prohibited under 38 U.S.C.S. § 4302(b). The Court also noted that "[t]he focus of USERRA is on securing rights to returning veterans, not on ensuring that any particular documentation is produced." *Id.* at 441.

In this case, Shelby County has a military leave policy that requires military members to request permission and satisfy onerous documentation requirements, *before* they are "allowed" to take any military leave. ECF No. 1, §§ 4.79 – 4.80. That policy was applied to Mr. Ward and Shelby County denied Mr. Ward's military leave request because his personnel file lacked a secondary employment form. *Id.* at § 4.81 – 4.82. Like *Petty*, Shelby County's military leave policy is a clear violation of USERRA prerequisite prohibitions. 38 U.S.C. § 4302(b).

This case is actually worse than *Petty*, because Shelby County's policy applies to every servicemember it employs. This begs the question whether Shelby County's

---
[8] 20 C.F.R. § 1002.104.

policy hinders our National Guard or reserve components' readiness or national security. Here, as in *Petty*, the employer took adverse employment action against an honorable servicemember based on documents missing from his personnel file.

Further, Shelby County's military leave policy is in direct contravention of USERRA because it codifies Defendants' false belief that it has the right to deny military leave and/or military pay and other benefits if a Secondary Employment Form is missing from an employee's file. *Id.* at § 4.80. That is explicitly prohibited by USERRA. 20 C.F.R. § 1002.187. The military leave policy is also in direct contravention of USERRA where it imposes a multitude of notice forms when all that is required of a servicemember under USERRA is to give notice, either written or verbal, and nothing more. 20 C.F.R. 1002.85.

While USERRA does allow an employer to request records to establish the employee's timely application and eligibility for reemployment, that obligation only applies to servicemembers when they seek reemployment following at least 30-days absence. 20 C.F.R. 1002.121. Shelby County's Policy goes far beyond that and demands that servicemembers provide copies of military orders when applying for military leave, complete a **Secondary "Employment Form"** listing the military as a secondary employer, and provide proof of military service after attending drill, *Id.* at § 4.79, **for all periods of military leave, regardless of duration**. Defendants' policies eviscerate servicemembers USERRA protections by placing substantial prerequisites upon military service and it creates a significant disincentive and burden upon servicemembers.

Shelby County admits denying at least one of Mr. Ward's military leave requests, based on a lack of "Secondary Employment Form" which was required under Defendants' previous military leave policy. *See Supra.,* § 4.81. Shelby County also admits that one reason Shelby County took adverse employment action against Mr. Ward was because he attended military drill without a Secondary Employment Form in his personnel file. *Id.* at § 4.82. At the pleading stage these facts are accepted as true. Defendants' policy places substantial prerequisites on its servicemember employees' use of military leave. Therefore, the face of Mr. Ward's Complaint plainly states a plausible claim for relief under USERRA, 38 U.S.C. § 4302(b). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the above is sufficient to survive a FRCP 12(b) Motion to Dismiss, Defendants' current leave policy adds even more restrictions on attending military drill. *Id.* at § 4.83. The policy includes yet another form that servicemembers must complete to qualify for their statutorily guaranteed military benefits: the "**Military Service Verification Form**." *See* SCSO Military Leave Policy No. 255.05. *Id.* at § 4.84. The "Military Service Verification Form" is in addition to the "Secondary Employment Form," which the Shelby County Sheriff's Office also requires servicemembers to complete to qualify for their statutorily guaranteed military benefits. *See* SCSO Military Leave Policy No. 255.05. *Id.* at § 4.85. Defendants' policy states in pertinent part:

> Failure to submit the completed form in a timely fashion will result in the employee being ineligible to receive any type of military pay and/or leave…[9]

Defendants are aware that the majority of servicemember employees will be unable to comply with the policy requirements because the vast majority of Reserve

---

[9] *See Id.* at § 4.86; SCSO Military Leave Policy No. 255.05.

10

Component Officers are not "full time Military Officers;" they are part-time Reserve Officers. *Id.* at § 4.87. Because it is unlikely for the majority of servicemembers to obtain a "full time Military Officer" signature on the required Military Service Verification Form, the majority of Shelby County's servicemember employees will be: "…ineligible to receive any type of military pay and/or leave…" for conducting their required military training. *See* SCSO Military Leave Policy No. 255.05. *Id.* at § 4.88.

In addition to the above, Defendants' policy created another form that servicemembers must complete to qualify for their statutorily guaranteed military benefits: the "**Military Request for Leave Form**." *See* SCSO Military Leave Policy No. 255.06. *Id.* at § 4.90. Defendants' policy also requires another form to qualify for their statutorily guaranteed military benefits: the "**Military Event Attendance Verification Form**." *See* SCSO Military Leave Policy No. 255.07. *Id.* at § 4.91.

> The Military Event Attendance Verification Form is a universal form used to verify that the employee attended the drill or event that paid military time was requested under Tennessee Code Ann. 8-33-109. This form will be completed by the Commanding Officer at the conclusion of the event or drill that the employee requested paid time off to attend. [10]

In addition to the multitude of forms and procedures discussed above, the Defendants' current USERRA policy creates an extra layer of bureaucracy a "**Military Liaison Officer**," to enforce the above-referenced hurdles to servicemembers qualifying for their statutorily guaranteed military benefits. *See* SCSO Military Leave Policy No. 255.04. *Id.* at § 4.96.

Lastly, Shelby County's current USERRA policy also fails to provide servicemembers with the appropriate amount of days to report to work after a military

---

[10] *See Id.* at § 4.92; SCSO Military Leave Policy No. 255.07.

deployment that lasts longer than 30 days. *See* SCSO Policy No. 255.11, (stating in pertinent part: "Twenty-one (21) Calendar days or more Employees shall advise the Military Liaison as soon as possible of their date of return to schedule a Military Return Interview…")[11] For a period service of 31 to 180 days, USERRA only requires that the employee report back to work within 14 days. 38 U.S.C. § 4312(e)(1)(C). For service over 180 days, USERRA requires the employee to report back up to 90 days after completing service. 38 U.S.C. § 4312(e)(1)(D).

### D. DEFENDANTS' ARTICLE III STANDING ARGUMENT IS UNTENABLE BECAUSE THE COMPLAINT ALLEGES ALL REQUIRED ELEMENTS.

Article III of the Constitution limits the authority of the federal courts: they decide "Cases" and "Controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992). For a dispute to be within the power (the subject-matter jurisdiction) of a federal court, the plaintiff must have standing—that is, the plaintiff must have alleged a sufficient interest in the dispute. This "irreducible constitutional minimum" of standing has three elements: (1) the plaintiff has suffered a concrete injury; (2) that injury is fairly traceable to actions of the defendant; and (3) it must be likely—not merely speculative—that the injury will be redressed by a favorable decision. *Id.* at 560 – 61. The plaintiff bears the burden to establish standing with the appropriate degree of evidence at each successive stage of litigation. *Id.* at 561. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice. *Id.*

In the typical case (such as this one), where the plaintiff was the object of the defendant's alleged actionable conduct, standing is easy to establish—it is essentially a

---

[11] *Id*. at § 4.97; "as soon as possible" undermines and conflicts with the timeframes guaranteed by Federal, State, and Local law.

non-issue. In a federal-question case, a plaintiff might allege that a defendant's action directly harmed the plaintiff in violation of a federal right. In these straightforward contexts, there is no question that the plaintiff has alleged a concrete injury at the hands of the defendant, so there is no question that the plaintiff has standing (and that the court has the power to hear the matter). *See Lujan*, 504 U.S. at 561–62 (noting that if the "plaintiff is himself an object of the action (or forgone action) at issue" then "there is ordinarily little question that the action or inaction has caused him injury…").

This is especially true in the world of USERRA, because "standing" is written into the statute. *See* 38 U.S.C. § 4323(f) (stating in pertinent part: "An action under this chapter may be initiated only by a person claiming rights or benefits under this chapter under subsection (a) or by the United States under subsection (a)(1).").

Nevertheless, Defendants argue that Mr. Ward lacks standing "because that policy is not currently, and has never been, applicable to him." ECF 17-1 at 10 – 11. However, the factual allegations in the Complaint, which must be accepted as true, belie this argument.

First, Mr. Ward does allege that he has suffered from a concert injury (denial of leave), traceable to defendants' actions (application of the policy to him), and likely to be redressed by a favorable decision (a Judgement that the policy violates USERRA and reinstatement ordered by this Court pursuant to 38 U.S.C. § 4323 (e)[12]). The complaint chronicles the application of the unlawful policy directly to Mr. Ward, and through its

---

[12] Notably, and very different from any other employment statute, Congress mandates "**The court shall use**, in any case in which the court determines it is appropriate, **its full equity powers**, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits of persons under this chapter [38 USCS §§ 4301 et seq.]." *Id.*

13

ultimate codification to its current form.  ECF No. 1 at ¶¶ 4.77 – 4.97. ("Shelby County admits that it denied at least one of Mr. Ward's military leave requests, based on a lack of Secondary Employment Form." *Id.* at § 4.81; "Shelby County also admits that one reason Shelby County took adverse employment action against Mr. Ward was because he attended military drill without a Secondary Employment Form in his personnel file." *Id.* at § 4.82.).  There is no doubt that Shelby County's unlawful policy will be applied[13] to Mr. Ward when he prevails in this litigation and is reinstated.

Defendants suggest that Mr. Ward's victory in this case would be too attenuated to establish a likelihood that there is relief available that will redress Mr. Ward's future harms.  ECF 23 at 4 (stating, "At most, Plaintiff can allege a series of events whereby he *might* win his lawsuit, *might* return to work with the County at some unknown point in the future, and *might*, one day, request military leave from the County that *might* be impermissibly denied.")  Despite Shelby County's cobbling those events together, as shown here, there is a significant likelihood of success on the merits, and a significant likelihood of **future** harm for which Mr. Ward will be entitled to seek injunctive or declaratory relief.

Second, Shelby County alleges that the policy was never applied to Mr. Ward, but as alleged in ¶ 4.81 "Shelby County admits that it denied at least one of Mr. Ward's military leave requests, based on a lack of Secondary Employment Form."  As noted above, Mr. Ward's Complaint demands:  "For reinstatement of Plaintiff and recoupment of any loss of wages or benefits, pursuant to 38 U.S.C. § 4323(d)(1)(A) - (B)." ECF No. 1 at 29 ¶ H.  Accordingly, the offensive policy was applied to Mr. Ward when he was

---

[13] Notably, Shelby County has utterly failed to defend its monstrous military leave policy.

14

denied military leave, and since it's codification it will apply to Mr. Ward upon his reinstatement.  In other words, if Mr. Ward achieves a favorable decision, he will be reinstated, and the same offensive policy which gave rise to this litigation and his damages would still be in play.   That is, only if Mr. Ward is reinstated and this Court chooses to deny Mr. Ward's request for entry of judgement as a matter of law that the policy violates USERRA.[14]

Third, as noted above, Congress mandates "The court shall use, in any case in which the court determines it is appropriate, its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits of persons under this chapter." 38 U.S.C. § 4323(e). Defendants attempt to avoid that command and instead focus on Mr. Ward's "current" employment status, as somehow determinative of whether he will be entitled to injunctive relief when he prevails in the case.  Defendants assert that a district court decision from California is particularly helpful in analyzing how lack of current employment effects a party's standing to seek injunctive or declaratory relief under USERRA.  ECF No. 23 at. 5, *citing Munoz v. InGenesis STGi Partners, LLC,* 182 F. Supp. 3d 1097, 1103 (S.D. Cal. 2016).  Parroting from the *Munoz,* Defendants also cite a class certification decision from Idaho.   ECF 23 at 5, *citing Richards v. Canyon County*, 2014 WL 1270665 at *5 (D. Idaho March 26, 2014).  Unfortunately, the facts of those cases are far different from the case at bar, and Shelby County omits those facts from its analysis.  Nonetheless, current employment status is not one of the three determining factors in Article III standing.  *See e.g. Lujan*, 504 U.S. at 559.

---

[14] Mr. Ward is filing a 12(c), Motion for Judgement on the Pleadings which further details the injunctive and declaratory relief.

15

To begin, the clear distinction between this case and the *Munoz* and *Richards* decisions is that, procedurally, neither *Munoz* or *Richards* are Rule 12(b) decisions, and thus, those courts were not required to "assume that the complaint's factual allegations are true and should construe all inferences from them in the non-moving party's favor." *U.S. v. Ford Motor Co.*, 532 F.3d 496, 502 (6th Cir. 2008); *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). The *Munoz* decision followed discovery and summary judgement. Further, the *Munoz* case never addressed the equitable remedies under 38 U.S.C. § 4323(e). And, this Court's authority to impose injunctive relief arises from 4323(e), not 4323 (d) as discussed in *Munoz*. The *Richards* decision is even farther afield, as it was made following a decision on a motion for class certification.

Here, the court is being asked to decide the issue of standing, in a Rule 12(b) motion to dismiss. Accordingly, the factual allegations in the Complaint are assumed true and all inferences from them are construed in Mr. Ward's favor. As discussed above, the complaint chronicles the application of the unlawful (*secondary employment form*) policy directly to Mr. Ward, and how that same policy in its current form will further harm Mr. Ward when he returns to Shelby County employment. There can be no dispute that, as a member of the military reserve, when Mr. Ward prevails in this litigation and is reinstated, he will continue to be subject to Shelby County's unlawful policy. That is far from speculative. Accordingly, the facts in Mr. Ward's Complaint plainly satisfy the requirements that it is likely that his injury "will be redressed by a favorable decision." *Lujan,* 504 U.S. at 560–61.

Further, as to the facts of those cases, both Ms. Munoz and Mr. Richards were paid for their lost back wages due to the Defendants' offensive policies, so they had no

injury from which to recover. In contrast to Mr. Ward's case, future injury was speculative because reemployment was not a viable option for those plaintiffs. Here, Mr. Ward was denied military leave, was not paid, and he seeks reemployment.

The crux of Shelby County's argument is that Mr. Ward cannot recover damages or suffer future injury from their insidious policy because he is not currently employed with the county. That argument, however, topples like a house of cards when tested with the very high likelihood that when Mr. Ward prevails in this case he will be entitled to the equitable relief, including reinstatement, that he seeks in this action.

### E. DEFENDANTS' ARTICLE III STANDING ARGUMENT IS NOT WELL TAKEN WHERE IT SUGGESTS THAT MR. WARD IS NOT ELIGIBLE FOR REEMPLOYMENT BECAUSE HE REJECTED DEFENDANTS' PREVIOUS OFFER OF LESS THAN FULL REEMPLOYMENT.

Because reinstatement is the presumptively favorable equitable remedy, courts will generally decline to award front pay in lieu of reinstatement in the absence of evidence that reinstatement is infeasible. *See Hance v. Norfolk Southern Ry. Co.*, 2007 WL 7044986, *5-*6 (E.D. Tenn. 2007) (Reinstatement ordered even though neither party favored reinstatement). The employee's rejection of an employer's offer of reemployment that extended anything less than USERRA's full guarantees (including proper seniority, position, and pay) is not grounds for denying reinstatement. *See Stevens v. Tennessee Valley Authority*, 699 F.2d 314, 316, 112 L.R.R.M.. (BNA) 2849, 96 Lab. Cas. (CCH) ¶ 14120 (6th Cir. 1983). And again, "The court **shall** use, in any case in which the court determines it is appropriate, its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits of persons under this chapter." 38 U.S.C. § 4323(e). Emphasis added.

In this case, Defendants denied Mr. Ward military leave because his personnel file lacked a secondary employment form.  *See* ECF No. 1, §§ 4.80 – 4.82.  Defendants' later terminated Mr. Ward for issues related to military service.  *Id.* at § 4.48.  Defendants' offered to reemployment Mr. Ward.  *Id.* at § 4.67.  However, that offer did not fully restore Mr. Ward to his former position, benefits, etc.  *Id.*  Additionally, Mr. Ward learned that Shelby County reinitiated investigations and criminal proceedings against another servicemember who accepted Shelby County's reemployment offer.  *Id.* at §§ 4.75 – 4.76.  Therefore, Mr. Ward refused to accept Shelby County's offer of less than full reemployment, less than complete restoration of his employment rights, and he refused to return to a workplace environment where Defendants' had initiated another round of criminal charges against the single servicemember who accepted Defendants' reemployment offer.

These facts are well pled in Plaintiff's complaint, and there is never a circumstance where these allegations, when accepted as true, could result in a lack of USERRA standing.  *See* 38 U.S.C. § 4323(f) (stating in pertinent part: "An action under this chapter may be initiated only by a person claiming rights or benefits under this chapter under subsection (a) or by the United States under subsection (a)(1).").

//

//

//

//

//

//

### III. CONCLUSION

For each of the foregoing reasons, Mr. Ward respectfully requests that the Court deny Defendants' Motion to Dismiss and allow this matter to proceed forward to trial. Or, in the alternative, grant Mr. Ward leave to amend his Complaint to address any perceived deficiencies.

DATED this 17th day of July, 2020.

/s/ Robert Mitchell
ROBERT W. MITCHELL (WSBA # 37444)
Robert Mitchell, Attorney at Law, PLLC
1020 North Washington Street
Spokane, WA 99201

/s/ Thomas G. Jarrard
THOMAS G. JARRARD (BPR # 39774)
Law Office of Thomas G. Jarrard, PLLC
1020 North Washington Street
Spokane, WA 99201

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I certify that the foregoing is being filed via the Court's ECF system this day of July 17, 2020, for service on all persons registered in connection with this case.

*/s/ Robert Mitchell*
ROBERT W. MITCHELL (WSBA # 37444)
Robert Mitchell, Attorney at Law, PLLC
1020 North Washington Street
Spokane, WA 99201

*Attorney for Plaintiff*