IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

SEDRIC WARD,

            Plaintiffs,

v.

SHELBY COUNTY,

            Defendants.

Case No.
2:20-cv-02407-JPM-cgc

## MEMORANDUM IN SUPPORT OF DECLARATORY JUDGEMENT THAT SHELBY COUNTY'S MILITARY LEAVE POLICY VIOLATES USERRA AND MOTION FOR SUMMARY JUDGEMENT ON SHELBY COUNTY'S AFFIRMATIVE DEFENSES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

This Declaratory Judgement Action was brought pursuant to the Uniformed Services Employment and Reemployment Rights Act (hereinafter "USERRA"). The Complaint alleges that Shelby County Sheriff Office's (hereinafter "SCSO" or "Defendant") Military Leave Policy violates numerous USERRA provisions.

The employee responsible for drafting the SCSO's Military Leave Policy recently admitted that the policy needs to be changed. The policy requires service members to obtain the signature of "full time Military Officer" to verify weekend duty. When asked if SCSO should change the policy, the employee responded:

> A. That is what the policy says, but we have addressed that. I don't know why the policy is not updated. Now they get it signed by a commander within their unit. That is the way we operate right now.

> Q. So, if we were asking a federal judge right now to change that part of the policy, you would agree that that would probably be a good idea?

> A: I would think - - I would agree with changing taking full-time out and having it be a commander over their unit.

1

Unfortunately, when later asked: "Knowing everything that we know about this case right now, if you had anything to do over again what would you do differently," he responded: "Absolutely nothing."  However, when pressed on the issue, he admitted: "I think - - I think over the time that that policy has been written we have seen some things that need to be changed and needs to be reviewed.  I do think certain parts in there do need to be reviewed and changed up."  Tragically, when asked if he had changed the offending policy provisions, he responded: "I haven't.  I've been sitting here;" thereby insinuating that sitting for a deposition prevented him from amending a policy that has been in place since 2017.  Finally, when further pressed on the issue, he shifted the blame to others, stating:

> A. I'm not the policy - - that policy is not in my division anymore.  I'm not the military liaison officer.  I'm not in PPSI anymore.  I've been 2 different places since that policy was published.

> Q. So you noticed the problems, you knew that it needed to be changed but it was somebody else's job to do that?

> A. That's correct.  That is correct.

Notably, the primary drafter of USERRA, Attorney Samuel S. Wright, Captain, U.S. Navy retired, who has decades of first-hand experience addressing military leave issues, has examined the Shelby County policy at issue in this case, reviewed Lieutenant Valentine's deposition, and agrees with Detective Valentine that the policy needs to be changed.

This action seeks a declaratory judgment that Defendant's acts, policies and procedures violated Mr. Ward's rights as secured under 38 U.S.C. § 4301 *et. seq.*, and seeks to enjoin Defendant, its officers, agents, successors, etc., from continuing to enforce these unlawful policies and procedures.  Given the above admissions and the briefing that follows, these issues of law are clear cut, ripe for review, and urgent, because the Shelby County Sheriff's Office admits that its Military Leave policy runs afoul of USERRA, but refuses to amend the offending policy provisions.

Mr. Ward also seeks summary judgement as to each of Shelby County's affirmative defenses because Shelby County flatly refused to identify *any* facts whatsoever in support of any of its fourteen affirmative defenses.[1]   Additionally, Defendant identified two persons most knowledgeable to testify to the subjects listed in Plaintiff's Fed. R. Civ. P. 30(b)(6) deposition notice.[2]  Defendant sent an email stating in pertinent part: "Subject to the above, the appropriate individuals to depose on these matters would be Jason Valentine and Brad Selby." *Id*.  However, Defendant then flatly refused to present *any* witnesses to testify to any of the topics listed in the notice, appeared at the deposition with no deponent, and issued repeated objections.[3]  Discovery closed on <u>February 15, 2021</u>[4], but Defendant failed to supplement any of the discovery requests related to their affirmative defenses.

Defendant's discovery violations are beyond the pale, and accomplished the intended effect of causing Plaintiff irreparable prejudice by denying Mr. Ward the ability to discover any facts that Shelby County allegedly possessed that support its affirmative defenses.  Shelby County failed to identify *any* evidence in support of claims that it will have the burden of proving at trial.  Shelby County flatly refused to present a witness to testify to *any* Fed. R. Civ. P. 30(b)(6) topics. Therefore, this Court should strike these defenses that can only serve to bog down this case.

## II.    LAW AND ARGUMENT

### A.    MR. WARD IS ENTITLED TO A DECLARATORY JUDGEMENT THAT SHELBY COUNTY'S MILITARY LEAVE POLICY VIOLATES USERRA

#### 1. DECLARATORY JUDGMENT STANDARD

The Declaratory Judgment Act provides in pertinent part:

In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other

---

[1] *See* ECF No. 58-2, pp. 30 - 31, Defendant's Response to Plaintiff's Second Interrogatory.
[2] *See* ECF No. 58-2, p. 11.
[3] *See* ECF No. 58-3, Transcript of Fed. R. Civ. P. 30(b)(6) deposition.
[4] *See* Amended Scheduling Order, ECF No. 47.

legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.[5]

In the Sixth Circuit, "[t]he two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Savoie v. Martin*, 673 F.3d 488, 495-96 (6th Cir. 2012) (quoting *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)).  The issue before the court is purely a legal matter ---- whether Defendant's Military Leave Policy contravenes USERRA.  Plaintiff is entitled to judgement, as well as a permanent injunction and declaratory relief.

**B.   THE UNIFORMED SERVICES EMPLOYMENT AND REEMPLOYMENT RIGHTS ACT PROHIBITS EMPLOYERS FROM PLACING PREREQUISITES ON MILITARY SERVICE.**

The Uniformed Services Employment and Reemployment Rights Act (hereinafter "USERRA") is intended to ensure that servicemembers are not disadvantaged in their civilian careers because of their service; are promptly reemployed in their civilian jobs upon their return from duty; and are not discriminated against in employment because of their military status or obligations.  38 U.S.C. § 4301.

USERRA must be liberally construed to benefit those "who left private life to serve their country in its great hour of need." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946); *King v. St. Vincent's Hosp.*, 502 U.S. 215, 220-221 n.9 (1991).  Congress also stated that this is particularly true of the basic principle established by the Supreme Court that the Act is to be "liberally construed."  *See* House Rep. No. 103-65, 1994 *U.S.C.C.A.N.* 2449, 2452 (quotations in original).

---

[5] 28 U.S.C. § 2201(a).

USERRA preempts "any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter [38 USCS §§ 4301 et seq.], including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit." 38 U.S.C. § 4302(b).  "USERRA prohibits employers from placing "additional prerequisites" on returning veterans seeking to exercise their reemployment rights." *Petty v. Metro. Gov't of Nashville*, 687 F.3d 710, 719 (6th Cir. 2012).  A servicemember seeking to attend military service obligations is required to give notice, either written or verbal, and nothing more.  38 U.S.C. § 4312(a)(1); 20 C.F.R. §1002.85(a)-(c).

Here, Defendants' policies impose a litany of additional requirements on servicemembers taking military leave. *Infra*.  Plaintiff therefore respectfully requests that this Court enter judgement that the Defendant's acts, policies and procedures violated Mr. Ward's USERRA rights, and to enjoin Defendant, its officers, agents, successors, etc., from the continuation of all unlawful policies and procedures.

## C. DEFENDANT'S POLICY VIOLATES USERRA AS A MATTER OF LAW.

Shelby County has a military leave policy that requires military members to request permission and satisfy onerous documentation requirements, *before* they are "allowed" to take any military leave.  Shelby County applied that policy to Mr. Ward and actually *denied* him military leave.  ECF No. 1-2.  The policy applies only to members of the military.  The policy is a clear violation of both, USERRA discrimination prohibitions, and USERRA prerequisite prohibitions.  38 U.S.C. § 4302(b).

> Section 4302(b) expressly states that USERRA "supersedes any . . . contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit."

*In re Petty,* 538 F.3d 431, 441 (6th Cir. 2008). "USERRA prohibits employers from placing "additional prerequisites" on returning veterans seeking to exercise their reemployment rights." *Petty v. Metro. Gov't of Nashville*, 687 F.3d 710, 719 (6th Cir. 2012). The Sixth Circuit court also noted that "[t]he focus of USERRA is on securing rights to returning veterans, not on ensuring that any particular documentation is produced." *In re Petty*, 538 F.3d 431, 441 (6th Cir. 2008). As further discussed in the Department of Labor Regulation:

> Is the employee required to accommodate his or her employer's needs as to the timing, frequency or duration of service?
>
> No. The employee is not required to accommodate his or her employer's interests or concerns regarding the timing, frequency, or duration of uniformed service....

20 C.F.R. § 1002.104. Likewise, under 20 C.F.R. 1002.87[6] the servicemember is never required to seek his employer's permission to leave for military service. Congress contemplated this when it wrote USERRA, "to encourage non-career service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service." 38 U.S.C. § 4301. Indeed, the Act would be meaningless if, as Defendants assert in this case, an employer is allowed any freedom to dictate to the service member the terms or requirements regarding the times and manner in which an employee may be absent for military service.

In *Petty* the plaintiff took time away from his civilian employer to serve in Iraq. *Id.* Upon his return, Metro investigated the surroundings of Petty's military service and discharge, specifically with reference to a formal military document Petty provided his employer to prove his military service; a DD 214. *Id.* at 714. Petty was denied certain benefits and sued metro for, *inter*

---

[6] The Regulation states:
Is the employee required to get permission from his or her employer before leaving to perform service in the uniformed services? No**.** The employee is not required to ask for or get his or her employer's permission to leave to perform service in the uniformed services. **The employee is only required to give the employer notice of pending service.** *Ibid.* (emphasis added).

*alia*, discrimination under USERRA.  Defendants prevailed on that issue in a bench trial and the Plaintiff appealed.  As noted above, the Sixth Circuit Court of Appeals decided the case, (like here) that the employers return-to-work procedures constitute "additional prerequisites" that are prohibited under 38 U.S.C.S. § 4302(b).  This case is nearly identical to *Petty*, but actually worse because Shelby County's policy applies to every servicemember it employs.  Which begs the question whether it hinders our National Guard or Reserve readiness or national security.

Here, as in *Petty*, the employer investigated the service member's military service, demanded documentation, scrutinized and questioned official military documents, conducted an investigation targeted at the member's military service and the associated military documents, and took adverse employment action based on those military documents and improper investigation. Further, Shelby County's military leave policy is in direct contravention of USERRA because it codifies Defendant's false belief that Defendants have the right to deny military leave and/or military pay and other benefits if forms are missing from an employee's file. That is explicitly prohibited by USERRA.  20 C.F.R. § 1002.187.  The military leave policy is also in direct contravention of USERRA where it imposes a multitude of notice forms when all that is required of a servicemember under USERRA is to give notice, either written or verbal, and nothing more.  20 C.F.R. § 1002.85.

While USERRA does allow an employer to request records to establish the employee's timely application and eligibility for reemployment, after they return, that obligation only applies to servicemembers when they seek reemployment following at least 30-days absence.[7]  Shelby County's Policy goes far beyond that and demands that servicemembers complete various forms ("MILITARY SERVICE VERIFICATION FORM"[8] – "MILITARY REQUEST FOR LEAVE

---

[7]  20 C.F.R. § 1002.121.

[8]  *See* SOF ¶ 6, Mitchell decl. **EX. F**, MILITARY SERVICE VERIFICATION FORM, and Valentine Depo. **EX. 9**, SCSO Military Leave Policy § 255.05.

FORM"[9] – "MILITARY EVENT ATTENDANCE VERIFICATION FORM"[10]) signed by a "full time Military Officer"[11] or "Commanding Officer"[12], and provide copies of "drill schedule"[13], and a copy of their "CURRENT military ID", when applying for all periods of military leave, regardless of duration.  See SCSO Policy § 255.05, stating in pertinent part:

> Failure to submit the completed form in a timely fashion will result in the employee being ineligible to receive any type of military pay and/or leave…[14]

Defendant's policy also requires servicemembers to produce copies of DD 214's[15] for period of service of less than 30 days, a policy that is in direct conflict with USERRA.  20 C.F.R. § 1002.121.  These forms are not optional; they are <u>required</u> for all servicemembers and all periods of military leave.  *See* SCSO Policy § 255.05.

### 1.   MILITARY SERVICE VERIFICATION FORM.

Detective Valentine knows that it would be difficult for most servicemembers to obtain the signature of a "full time Military Officer" because most Reserve and National Guard Units do not have "full time Military Officers" at weekend drills.  *See* Valentine depo, pp. 143 – 144, lines 16:2, stating in pertinent part:

> Q.     Okay. This full-time military officer, you are aware that most Reserve and National Guard units, when they drill, don't have a full-time military officer there when they drill, correct?
>
> A.     Yes, sir.   Yes, sir, I'm aware of that.

---

[9]  *See* SOF ¶ 4, Mitchell decl. **EX. D**, MILITARY REQUEST FOR LEAVE FORM, and Valentine Depo. **EX. 9**, and SCSO Military Leave Policy § 255.06.
[10]  *See* SOF ¶ 5, Mitchell decl. **EX. E**, MILITARY EVENT ATTENDANCE VERIFICATION FORM, and SCSO Military Leave Policy § 255.07.
[11]  *See* SOF ¶ 6, Mitchell decl. **EX. F**, MILITARY SERVICE VERIFICATION FORM, and Valentine Depo. **EX. 9**, SCSO Military Leave Policy § 255.05.
[12]  *See* SOF ¶ 5, and SCSO Military Leave Policy § 255.07.
[13]  *See* SOF ¶ 6, Mitchell decl. **EX. F**, MILITARY SERVICE VERIFICATION FORM, and Valentine Depo. **EX. 9**, SCSO Military Leave Policy § 255.05.
[14]  *Id.*
[15]  *See* SOF ¶ 3, Mitchell Decl. **EX. B & C**, Valentine Depo. **EX. 9**, SCSO Military Leave Policy § 255.11.

Because it is unlikely for the majority of National Guard and Reserve Servicemembers to obtain a "full time Military Officer" signature on the required Military Service Verification Form, the majority of Shelby County's servicemember employees will be: "…ineligible to receive any type of military pay and/or leave…" for conducting required military training. *Ibid*. Defendant's own witness also confirms the policy must be changed with regard to requiring a signature from a full-time military officer, Valentine testified:

> A.      "That is what the policy says, but we have addressed that. **I don't know why the policy is not updated**. Now they get it signed by a commander within their unit. That is the way we operate right now."
>
> Q: "So, if we were asking a federal judge right now to change that part of the policy, you would agree that that would probably be a good idea?"
>
> A: "I would think - - I would agree with changing taking full-time out and having it be a commander over their unit."

*See* SOF ¶¶ 1 – 3, Mitchell Decl., **EX. A**, Deposition of Lieutenant Detective Jason Valentine, p. 145, lines 5 – 17.

Despite it being nearly impossible for a servicemember to satisfy this requirement, the form is required whenever military leave is requested. *See* **SOF 1**, Mitchell Decl. **EX. A**, Valentine depo., pp. 138 – 141, lines 20:1. And, without the form, the servicemember is not entitled to take military leave. *Id*. at pp. 140 – 141; lines 24:5.

### 2. DRILL ORDERS AND COPY OF CURRENT MILITARY ID.

Defendant's policy requires servicemembers to provide a copy of a "CURRENT military ID, as well as drill schedule…" *See* **SOF 3**, Mitchell Decl. and **EX. B & C**, Valentine depo. and **EX. 9**, Military Leave Policy § 255.05. It is unlawful to copy a military identification card. 18 U.S.C. § 701. However, without fulfilling this requirement, and providing drill orders, the servicemember will be "…ineligible to receive any type of military pay and/or leave." *See* **SOF 3**, Mitchell decl. and **EX. B & C**, Valentine depo. and **EX. 9**, and SCSO's Military Leave Policy § 255.05.

### 3. MILITARY REQUEST FOR LEAVE FORM.

In addition to the above, Defendant's policy created another form that servicemembers must complete to qualify for their statutorily guaranteed military benefits: the "Military Request for Leave Form." *See* **SOF 4**, Mitchell decl. and **EX. D**, SCSO's Military Leave Policy § 255.06.  This form is required to receive any military leave, pay, or benefits.  *See* **SOF ¶ 1**, Mitchell Decl. and **EX. A**, Valentine depo., pp. 161 – 162, lines 24:2, stating: "**They will not - - they will not take military if they don't fill out a request for leave**."  He later stated: "**You can attend the drill, you may not get paid for it.**"  *Id.* at p. 163, lines 13 – 14.  Despite Valentine's equivocation, the policy is clear, it is required to receive any military leave.

### 4. MILITARY EVENT ATTENDANCE VERIFICATION FORM.

Defendant's policy also requires another form to qualify for their statutorily guaranteed military benefits**: the "Military Event Attendance Verification Form."**  *See* **SOF 5**, Mitchell decl. and **EX. E**, and **SOF 3**, SCSO Policy at § 255.07, stating:

> The Military Event Attendance Verification Form is a universal form used to verify that the employee attended the drill or event that paid military time was requested under Tennessee Code Ann. 8-33-109.  This form will be completed by the **Commanding Officer** at the conclusion of the event or drill that the employee requested paid time off to attend.

Detective Valentine admitted that without this form, "**They don't receive the military day off to result in military pay**."  *See* **SOF ¶ 1**, Valentine depo., p. 164, lines 13 – 41.  Again, a majority of servicemember employees will be unable to comply with this requirement because the vast majority of Reserve Component Officers are part-time Reserve Officers.  And again, because it is unlikely for the majority of servicemembers to obtain a "Commanding Officer" signature on the required Military Event Attendance Verification Form, the majority of Defendant's servicemember employees will violate Shelby County Policy by attending <u>mandatory</u> military drills.

### 5.  DD 214 AND "AS SOON AS POSSIBLE" VIOLATES 30-DAY RULE.

To obtain reemployment, pay, and other benefits of employment, Defendant's policy requires servicemembers to produce a copy of their DD 214, for periods of military service lasting as little as 21 days.  *See* **SOF ¶ 3**, Mitchell decl., **EX. B & C**, Valentine decl., **EX. 9**, SCSO Policy § 255.11. This policy is in direct conflict with USERRA.  *See* 20 C.F.R. § 1002.121, requiring reemployment without documentation for periods of service of less than 30 days.

Lastly, Shelby County Sheriff's new USERRA policy also fails to provide servicemembers with the appropriate number of days to report to work after a military deployment that lasts longer than 30 days.  *See* **SOF ¶ 3**, Mitchell decl., **EX. B & C**. Valentine depo., **EX. 9**, SCSO Policy § 255.11, stating in pertinent part: "Twenty-one (21) Calendar days or more" - - "Employees shall advise the Military Liaison as soon as possible of their date of return to schedule a Military Return Interview…"[16]  For a period service of 31 to 180 days, USERRA only requires that the employee report back to work within 14 days.  38 U.S.C. § 4312(e)(1)(C).  For service over 180 days, USERRA requires the employee to report back up to 90 days after completing service.  38 U.S.C. § 4312(e)(1)(D).  Therefore, the "as soon as possible" requirement conflicts with servicemembers' guaranteed right to take 14 days prior to reporting back to work following periods of leave lasting up to 180 days.  *See* **SOF ¶ 7**, Mitchell decl., **EX. G**, Decl. of Samuel Wright, examining each of the provisions above, as compared to acceptable practices under USERRA.

### 6.  MILITARY LIAISON OFFICER.

In addition to the multitude of forms and unlawful procedures discussed above, Defendant's current USERRA policy creates an extra layer of bureaucracy, a "Military Liaison Officer", to enforce the above-referenced hurdles to servicemembers qualifying for their statutorily guaranteed

---

[16] "as soon as possible" undermines and conflicts with the timeframes guaranteed by Federal, State, and Local law.

military benefits.  *See* **SOF ¶ 3**, Mitchell decl. **EX. B & C**, Valentine depo., **EX. 9**, SCSO Policy § 255.04.

Stated simply, Defendant's policies eviscerate servicemembers' USERRA protections by placing substantial prerequisites upon military service and create a significant disincentive and burden upon servicemembers.  Therefore, because the facts are undisputed, and because Defendant's policies place substantial prerequisites upon Defendant's Servicemember employees' use of military leave, this Court should find as a matter of law that Defendant's policies violate USERRA.

### 7.  IMPOSSIBILITY.

Under USERRA, advance notice is not required if the giving of such notice is precluded by military necessity or is otherwise impossible or unreasonable.  38 U.S.C. § 4312(b).  Each of the above provisions are "onerous, and, in most cases, it is impossible for the employee to comply." *See* **SOF ¶ 7**, Mitchell Decl. **EX. G**, Wright Decl. at ¶¶ 43, 47 – 55, 57 – 59 and 68 – 69. Confounding the practical impossibility to comply with these provisions in their own right, on December 22, 2020, the United States Army Reserve, to which Mr. Ward belongs, issued an Order restricting all drill weekends, assemblies, and training to remote access only.  *Id.* at 68 citing the order.[17]  The current national Covid-19 pandemic significantly magnifies the impossibility for military reserve members to follow any of the restrictions that Shelby County's Military Leave Policy imposes.  Wright Decl. at ¶ 69.  As discussed by Mr. Wright, based on his decades of first-hand day-to-day experiences from his own reserve service, and decades of experience with other services guard reserve duty and assisting servicemembers with the same, the text of USERRA and its attendant DOL regulations, Mr. Wright states that: "It will be virtually impossible for a service member reservist to satisfy Shelby County's onerous procedures and documentation prerequisites,

---

[17] Available at:  *https://www.usar.army.mil/News/News-Display/Article/2121404/faqs-covid-19-impact-to-the-us-army-reserve/*  Last visited February 15, 2021.

simply because all military training for reservists is limited to remote access.  Certainly, this Court

is also aware of similar restrictions." *Id. citing* this Court's February 3, 2020.[18]

**D.    SUMMARY JUDGMENT STANDARD.**

Summary judgment is appropriate if the evidence shows that no genuine issues of material

fact remain in dispute, and the moving party is entitled to judgment as a matter of law.  *See* Fed. R.

Civ. P. 56(c).  Material facts are those that "might affect the outcome of the suit under the

governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To defeat summary

judgment that seeks dismissal of an affirmative defense, the defendant must make a showing

sufficient to establish the existence of an essential element to which it bears the burden of proof.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   Summary judgment is appropriate in this

case.

**E.    SHELBY COUNTY FAILED TO ASSERT PROPER AFFIRMATIVE DEFENSES, AND REFUSED
    TO RESPOND TO DISCOVERY RELATED TO THOSE DEFENSES.**

Affirmative defenses plead matters extraneous to the plaintiff's prima facie case, which deny

plaintiff's right to recover, even if the allegations of the complaint are true.  *Gomez v. Toledo*, 446

U.S. 635, 640-41 (1980).  "The fundamental concept of an affirmative defense is that it does not

negate an element of the adversary's case." *United States v. Allen*, 449 F.3d 1121, 1125 (10th Cir.

2006).  There is only one USERRA affirmative defenses that could possibly apply in this case, *i.e.,*

§ 4311(c) for discrimination and relations claims.  The following are either not an affirmative

---

[18] This Court's February 3, 2020, Order States: In light of the exigent circumstances due to the
COVID-19 outbreak, all civil and criminal jury trials are continued until after March 31,
2021.2021, and all in-person courtroom proceedings are continued until after February 26, 2021.
The presiding judge my authorize in-person proceedings on a case-by-case basis upon a
determination that it is necessary to serve the ends of justice. Please see Administrative Order 21-
06 for further details.

defense under USERRA, not an affirmative defense at all, or were previously disposed of by this court in its ruling on the Motion to Dismiss.

Further, as discussed above, even if such defenses were permissible, defendants have flatly refused to produce *any* factual support for these defenses.  Shelby County refused to identify *any* facts whatsoever in support of any of its fourteen affirmative defenses.  *See* ECF No. 58-2, pp. 30 - 31, Defendant's Response to Plaintiff's Second Interrogatory.  Additionally, Defendant identified two persons most knowledgeable to testify to the subjects listed in Plaintiff's Fed. R. Civ. P. 30(b)(6) deposition notice.  *See* ECF No. 58-2, p. 11, Defendant's email stating in pertinent part: "Subject to the above, the appropriate individuals to depose on these matters would be Jason Valentine and Brad Selby."  Emphasis added.  However, Defendant flatly refused to present *any* witnesses to testify to any of the topics listed in the notice.  *See* ECF No. 58-3, Transcript of Fed. R. Civ. P. 30(b)(6) deposition.  Defendants also refused to supplement any of their responses to discovery related to affirmative defenses before the close of discovery.

In other words, Shelby County has demonstrated "a complete failure of proof concerning an essential element of [defendant's affirmative defense which] necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  Therefore, the Court should dismiss Defendant's affirmative defenses on those grounds alone.

Moreover, independent of summary judgement and pursuant to Fed. R. Civ. P. 37(c), this court may also dismiss the defenses as sanctions, and exclude later offered evidence of the recalcitrant party.  *Ibid.*  Rule 37(c)'s sanction of exclusion is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless.  *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp*., 596 F.3d 357, 370 (6th Cir. 2010); *Numatics, Inc. v. Balluff, Inc*., 66 F. Supp. 3d 934, 943 (E.D. Mich. 2014) (When the disclosure requirements of Rule 26 are violated, Rule 37 mandates preclusion of the evidence "unless there is a reasonable

14

explanation of why Rule 26 was not complied with or the mistake was harmless.") (*quoting*

*Bessemer*, 596 F.3d at 370 (6th Cir. 2010) (quotation marks and further citation omitted)); *Callen*

*Mfg. Corp*., 2016 U.S. Dist. LEXIS 29968, 2016 WL 865733, at 5 ("A noncompliant party may

avoid sanction if there is a reasonable explanation of why Rule 26 was not complied with or the

mistake was harmless.") (*quoting Howe v. City of Akro*n, 801 F.3d 718, 747 (6th Cir. 2015)

(quotation marks and further citation omitted)).

Here, Shelby County flatly refused to supply any evidence in support of its affirmative

defenses.  And, Shelby County flatly refused to present witnesses for a Fed. R. Civ. P. 30(b)(6) for

those affirmative defenses, despite identifying two persons most knowledgeable to testify to the

subjects upon which examination was sought.  *See* ECF NO. 58-2, p. 11, Jasen Durrence's email

stating in pertinent part: "Subject to the above, the appropriate individuals to depose on these

matters would be Jason Valentin and Brad Selby."  The Court may dismiss the affirmative defenses

as a sanction for Defendant's egregious discovery violations.   Defendant's affirmative defenses

should also be dismissed for all the reasons that follow.

Defendant's **first** affirmative defense states:

Plaintiff's claims are barred to the extent that Plaintiff has waived and/or released them. Specifically, on or about August 3, 2016, Plaintiff entered into an Agreement and General Release with Shelby County Government under which he released all claims arising out of his termination from employment on April 7, 2015. Plaintiff's claims are, therefore, barred to the extent that he has released such claims.

Defendant's **second** affirmative defense states:

Plaintiff's claims are barred to the extent that he voluntarily resigned his employment with Shelby County Government.

ECF No. 48 at 26 - 27.  However, the Court has already decided this issue as a matter of law,

"Plaintiff Has Not Waived the Claims Set Out in his Complaint."  ECF No. 46 at 4.  These waiver

defenses were properly dismissed.

Defendant's **third** affirmative defense states:

Plaintiff's claims are barred to the extent that he fails to state a claim upon which relief can be granted, for reasons that include, but are not limited to, the fact that Plaintiff's membership, application for membership, service, application for service, or obligation for service in the uniformed services was not a motivating factor for any alleged action related to Plaintiff's employment; Plaintiff lacks standing to bring any or all of his claims; or, Plaintiff has failed to allege a necessary element of his claims.

Defendant's **fourth** affirmative defense states:

Plaintiff's Complaint fails to state a claim upon which relief can be granted to the extent that any alleged action taken against Plaintiffs would have been taken in the absence of Plaintiff's membership, application for membership, service, application for service, or obligation for service in the uniformed services.

ECF No. 48 at 27. These general denials are not affirmative defenses. Reciting the 12(b)(6) standards does not constitute an affirmative defense. *Villa v. Ally Fin., Inc.,* 2014 U.S. Dist. LEXIS 25624 (M.D.N.C. Feb. 28, 2014) (collecting cases).[19] Further, Defendants do not plead anything "extraneous to the plaintiff's *prima facia* case…which deny the…right to recover, even if the allegations of the complaint are true"[20] thus, Defendants have nothing to prove, and it is not an affirmative defense. By its nature, an affirmative defense "does not negate the elements of a plaintiff's claim, but instead precludes liability even if all of the elements of a plaintiff's claim are proven." *Lane v. Page*, 272 F.R.D. 581, 598 (D.N.M. 2011). Moreover, "any asserted defense that is nothing more than a denial of the plaintiff's allegations of legal responsibility is both 'unnecessary and inappropriate.'"[21] General denials such as these are properly dismissed.

---

[19] *See also Castillo v. Roche Labs., Inc.*, 2010 U.S. Dist. LEXIS 87681 (S.D. Fla. July 30, 2010) (ruling that a defense contending "Plaintiff's Complaint fails, in whole or in part, to state a claim upon which relief may be granted" is "insufficient as it is no more than the a recitation of the standard for dismissal under Rule 12(b)(6)); *c.f. Topline Solutions, Inc. v. Sandler Sys.*, 2010 U.S. Dist. LEXIS 76174, 3-4 (D. Md. July 27, 2010) (striking the affirmative defense "[t]he Complaint fails to state a claim upon which relief can be granted" because it contained no facts and was "too conclusory to provide fair notice of the grounds on which" it stood).

[20] *Gomez v. Toledo*, 446 U.S. at 640.

[21] *Yash Raj Films, Inc. v. Atlantic Video*, 2004 U.S. Dist. LEXIS 9739, 11 (N.D. Ill. 2004)).

Defendant's **fifth** affirmative defense states:

> Plaintiff's Complaint fails to state a claim upon which relief can be granted as to the Shelby County Sheriff's Office, as it is not a separate entity subject to suit. Such claims have been dismissed by the Court.

ECF No. 48 at 27.   This matter was resolved during the initial scheduling conference with the court.  Accordingly, the issue is moot, and it is not an affirmative defense.

Defendant's **Sixth** affirmative defense states:

> Plaintiff's claims for punitive damages are barred as USERRA does not provide for punitive damages. Further, such damages are barred as Defendants did not engage in any intentional, fraudulent, malicious, or reckless behavior and/or to the extent have not acted with an indifference towards their legal duties.

ECF No. 48 at 27.  This is a non-issue simply due to the fact that there is no demand for punitive damages in the Complaint.  ECF No. 1.

Defendant's **seventh** affirmative defense states:

> In order to preserve the defense, Plaintiff's claims are barred to the extent that any Defendants are entitled to qualified immunity.

ECF No. 48 at 28.   Qualified Immunity in not a defense to a USERRA discrimination claim because unlike public officials a political subdivision like Shelby County "(the only defendant here) does not enjoy a qualified immunity defense."  *Kane v. Town of Sandwich*, 123 F. Supp. 3d 147, 157 n.1 (D. Mass. 2015) *citing Haley v. City of Boston*, 657 F.3d 39, 51 (1st Cir. 2011).  Further, political subdivisions are private employers under USERRA.  38 U.S.C. § 4323(i).

Defendant's **eighth** affirmative defense states:

> Plaintiff fails to state a claim upon which relief can be granted as to any alleged claim other than those under USERRA, to the extent Plaintiff has failed to state facts in his Complaint that are plausible on its face to give rise to entitlement to relief.

ECF No. 48 at 28.   Again, no matter how one tries to dress it up, reciting the 12(b)(6) standards does not constitute an affirmative defense.  *Villa v. Ally Fin., Inc.,* 2014 U.S. Dist. LEXIS 25624 (M.D.N.C. Feb. 28, 2014).

17

Defendant's **ninth** affirmative defense state states:

> To the extent that Plaintiff would have been terminated based on after acquired evidence, his claims are barred or limited. This includes, but is not limited to, criminal actions.

ECF No. 48 at 28.   As, as held by the Sixth Circuit, the after-acquired evidence doctrine is not an affirmative defense to either of Plaintiff's discrimination claims and cannot be applied in a USERRA case.  38 U.S.C. §§ 4311(c)(1)-(2) and 4312(d)(1)-(2); *Petty v. Metro. Gov't of Nashville*, 687 F.3d 710, 720-721 (6th Cir. Tenn. 2012) (Holding the doctrines of unclean hands and after-acquired-evidence inapplicable to USERRA reemployment and discrimination claims).

Defendant's **tenth** affirmative defense states:

> To the extent that Plaintiff's alleged injuries were caused or contributed to by his own unlawful conduct, recovery for such alleged injuries is barred.

ECF No. 48 at 28.     This defense is simply a re-wording of *in pari delicto* doctrine --- which cannot apply here.  "One of the premises on which the *in pari delicto* doctrine is grounded is that `denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality.'" *Pinter v. Dahl*, 486 U.S. 622, 634, 108 S. Ct. 2063, 2072 (1988) (quoting *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 105 S. Ct. 2622, 86 L. Ed. 2d 215 (1985)).  "Plaintiffs who are truly *in pari delicto* are those who have themselves violated the law in cooperation with the defendant."  *Id.* at 636, 108 S. Ct. 2063.  "The plaintiff must be an active, voluntary participant in the unlawful activity that is the subject of the suit."  *Id.*  In this case, there are no facts or assertions that Plaintiff participated in violating USERRA, much less "violated the law in cooperation with the defendant[s]".

Defendant's **eleventh** affirmative defense state states:

> To the extent that Plaintiff failed to mitigate his damages, including but not limited, his refusal to return to work with the County as agreed to, or his declining subsequent offers of employment from any potential employer, Plaintiff's recovery should be barred or reduced.

18

ECF No. 48 at 28.   Like the first and second defense, above, this waiver defense has already been disposed of by this court.  ECF No. 46 at 4.  Therefore, this defense is properly dismissed.

Defendant's **eleventh** (sic) affirmative defense states:

Plaintiff's claims are barred to the extent that they are outside of any applicable statutes of limitations, including, but not limited to, 28 U.S.C. § 1658.

ECF No. 48 at 28.   As held by this court, "The USERRA does not impose a statute of limitations on the Plaintiff."  ECF No. 46 at 8, *citing* 38 U.S.C. § 4327(b).  The claim must be dismissed.

Defendant's **twelfth** affirmative defense states:

Plaintiff's claims are barred, in whole or in part, to the extent that the doctrine of waiver, unclean hands, laches, equitable estoppel, judicial estoppel or mistake apply. Specifically, Plaintiff's claims are barred to the extent that he sat on his rights from April 7, 2015 through the date he filed his Complaint.

ECF No. 48 at 28.   This extraordinary sentence contains seven legal doctrines, none of which apply in this case.  As to waiver, laches and equitable estoppel, this court disposed of these matters in its prior order.  ECF No. 46 at 4, 7.  As to unclean hands, the doctrine does not apply to USERRA discrimination claims.  *Petty v. Metro. Gov't of Nashville*, 687 F.3d at 720-721 (Holding the doctrines of unclean hands and after-acquired-evidence inapplicable to USERRA reemployment and discrimination claims).  As to judicial estoppel or mistake, simply stating the name of a legal doctrine, without more, is a mere legal conclusion, and therefore are not affirmative defenses at all. *See Topline Solutions, Inc. v. Sandler Sys.*, 2010 U.S. Dist. LEXIS 76174, 3-4 (striking both estoppel and waiver).

Defendant's **thirteenth** affirmative defense states:

Plaintiff's claims are barred to the extent that he does not have standing to pursue them.  Specifically, Plaintiff's claims regarding the revised USERRA policy are barred as it has never applied to him.

ECF No 48 at 29.  This court disposed of Defendant's standing argument in its prior order, ECF No. 46 at 10-12.  "Under the law-of-the-case doctrine, findings made at one point in the litigation

become the law of the case for subsequent stages of that same litigation." *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002) (*citing United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994)).  Accordingly, this defense must be dismissed.

> Defendant's **fourteenth** affirmative defense states:

> The County reserves the right to assert additional affirmative or other defenses that may be discovered during the course of discovery.

ECF No. 48 at 29.  This is not an affirmative defense.  Defendant's right to seek leave of the court to amend their pleadings is preserved by Rule 15 of the Federal Rules of Civil Procedure.[22]  But, that deadline to amend the answer is long past, and Defendants have not plead any further defenses.

> Defendant's **request for fees and costs** must be stricken.

> Defendant requests that the Court dismiss Plaintiff's claims, provide Defendant its costs in this matter, and provide Defendant all other relief to which it may be entitled.

ECF No. 48 at 29.  This request is not an affirmative defense, *supra,* and otherwise has no merit as it is directly contrary to the law of this case.  USERRA explicitly provides that only a prevailing plaintiff may be awarded fees or costs of litigation: "No fees or court costs may be charged or taxed against any person claiming rights under this chapter,"[23][24]  "Thus, USERRA explicitly prohibits an award of fees and costs for Defendants."[25] Therefore, Defendant's request must be dismissed.

In sum, the vast majority of Defendant's affirmative defenses are, as a matter of law, inapplicable to the USERRA claims in this case, or not defenses at all.  More importantly,

---

[22] *See Smith v. North Star Charter Sch., Inc.*, 2011 U.S. Dist. LEXIS 82966 (D. Idaho July 26, 2011); *see also Arroyo v. Milton Acad.*, 5:10-CV-117, 2011 U.S. Dist. LEXIS 2588  (D. Vt. Jan. 10, 2011) (noting that Rule 15(a) applies where a proposed amendment seeks to add affirmative defenses that might otherwise be waived) (citing *United States v. Continental Ill. Nat. Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1253 n. 4 (2d Cir. 1989) (noting that Rule 8, which requires all affirmative defenses to be pled in a responsive pleading, is modified by Rule 15 with respect to the amendment of pleadings).

[23] 38 U.S.C. § 4323(h).

[24] 20 C.F.R. § 1002.310

[25] *Crews v. City of Mt. Vernon*, 2007 WL 1521495 (S.D. Ill. 2007) (prevailing defendant is not entitled to a fees or costs under USERRA or the American Rule).

Defendant completely failed to produce any evidence or witnesses to support their affirmative defenses.  As such, Shelby County has demonstrated "a complete failure of proof concerning an essential element of [defendant's affirmative defense which] necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  Therefore, the defenses and affirmative defenses should be dismissed.

## III.    <u>CONCLUSION</u>

For the above reasons, this Court should GRANT and Order of Declaratory Judgment finding that Defendant's Military Leave Policy violates USERRA, and this Court should GRANT Plaintiff's Motion for Summary Judgment and dismiss all of Defendant's Affirmative Defenses.

DATED this February 19, 2021.

Respectfully submitted,

*S/Robert Mitchell*
Robert W. Mitchell, Attorney at Law, PLLC
1020 N. Washington
Spokane, WA  99201
Telephone:     509-327-2224
Email:            bobmitchellaw@gmail.com

*/s/ Thomas G. Jarrard*
Law Office of Thomas G. Jarrard, PLLC
1020 N Washington Street
Spokane, WA 99201
Telephone:     (425) 239-7290
Email:            TJarrard@att.net

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 19, 2021, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which sent notification of such filing to the following:

R. Joseph Leibovich
Assistant County Attorney/
Litigation Team Supervisor
Shelby County Attorney's Office
160 N. Main St., Suite 950
Memphis, TN 38103

And I hereby do certify that I have mailed by United States Postal Service the document to

the following non-CM/ECF participants:

None

*S/ Robert Mitchell*
Robert W. Mitchell, Attorney at Law, PLLC
1020 N. Washington
Spokane, WA  99201
Telephone:     509-327-2224
Email:             bobmitchellaw@gmail.com

*Attorney for Plaintiff*