**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

SEDRIC WARD,                    )
                               )
      Plaintiff,              )
                               )          Case No. 2:20-cv-02407
                               )
v.                             )
                               )
SHELBY COUNTY,                 )
                               )
      Defendant.              )
                               )

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Before the Court is Plaintiff Sedric Ward's Motion for Declaratory Judgment that Shelby County's Military Leave Policy Violates USERRA and Motion for Summary Judgment on Shelby County's Affirmative Defenses, filed February 19, 2021. ("Plaintiff's Motion for Summary Judgment," ECF No. 60.)  Also before the Court is Defendant Shelby County's Motion for Summary Judgment, filed March 9, 2021.  (ECF No. 64.)  For the reasons set forth below, Plaintiff's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**, and Defendant's Motion for Summary Judgment is **DENIED IN PART** and **GRANTED IN PART**.

## I.    BACKGROUND

### a.  Factual Background

Plaintiff Sedric Ward brings this action against his former employer, Defendant Shelby County, alleging violations of the Uniformed Services Employment and Reemployment Rights

Act ("USERRA"), 38 U.S.C. § 4323(e). ("Complaint", ECF No. 1.) Specifically, Plaintiff seeks a declaration regarding the parties' rights and obligations in connection with a purported waiver of USERRA rights, the lawfulness of Shelby County's Military Leave policies, recoupment of lost wages stemming from unlawful discrimination and retaliation by Shelby County, and an injunction preventing Shelby County from retaliating against service members in the future. (Id. at PageID 28–29.) Plaintiff alleges that Defendant conducted criminal and employment investigations into his military service, during which it contacted the Tennessee National Guard to verify dates of his military service. (Id. ¶¶ 4.25–4.29.) Plaintiff contends that Defendant was mistaken to contact the Tennessee National Guard, because Plaintiff served in the U.S. Army Reserves, and that any allegations that he did not properly account for military leave are false. (Id. ¶¶ 4.30–4.46.)

Plaintiff was employed by Shelby County at the Shelby County Jail (the "Jail"). (ECF No. 80-1 ¶ 1.) Plaintiff began working for the Shelby County Jail in 1998, and also served in the U.S. Army Reserve while employed by Shelby County. (ECF No. 72-2 ¶¶ 8–10.) In 2013, then-Shelby County Sheriff Bill Oldham ordered the Bureau of Internal Audit to perform an audit of the Shelby County Sheriff's Office ("SCSO") Jail Division — Jail Human Resources Unit due to performance issues within the Jail's Human Resources Office ("January 2014 Audit Report"). (ECF No. 80-1 ¶ 2.) The January 2014 Audit Report found instances of alleged misuse of sick leave, Family and Medical Leave Act ("FMLA") leave, and paid military leave, as well as instances of inconsistent discipline.[1] (Id. ¶ 4.) In January 2014, the SCSO's General Investigations Bureau ("GIB") had a detective, Jason Valentine ("Valentine"), review the audit report to determine if a criminal investigation into military leave was warranted. (Id. ¶ 5.) As of January 2014, Valentine was

---

[1] Plaintiff disputes the actual military leave violations in the audit, but does not dispute that this is what the audit purported to have found. Generally, Plaintiff failed to respond to Defendant's requests for admissions as required by Rule 36(a)(4) of the Federal Rules of Civil Procedure.

employed by Shelby County as a Sergeant with the GIB. (Id. ¶ 7.) Based on the January 2014 Audit Report, Valentine pursued a criminal investigation. (Id. ¶ 8.) Plaintiff was not listed in the January 2014 Audit Report as an individual who allegedly improperly took paid military leave. (ECF No. 80-1 ¶ 9.) Valentine consulted with the Shelby County District Attorney General's Office and determined the criminal investigation should focus only on receipt of military pay between January 10, 2010 through December 31, 2013. (Id. ¶ 12.) The January 2014 Audit Report was insufficient to support charges for any specific crime against any specific individual. (Id. ¶ 14.) Valentine then began his own investigation to determine if any specific individual had a committed a crime with respect to leave-time use, and began by running a payroll report of all Jail personnel during the relevant time period to determine who had received pay for military leave during that time.[2] ("Valentine Investigation," Id. ¶¶ 15–16.) Valentine created a spreadsheet for each Jail employee who received paid military leave, and marked each employee with an "M" for paid military leave and "ZM" for unpaid military leave.[3] (Id. ¶ 17.) Valentine reached out to the Defense Finance and Accounting Service ("DFAS") of the U.S. Department of Defense to gather documents to confirm each individual's service dates.[4] (Id. ¶ 18.) Valentine compared payroll

---

[2] Plaintiff disputes these facts with copy/paste paragraphs from depositions. See supra n.1. Almost none of the testimony cited by Plaintiff has any relevance to the fact being asserted, that is, the manner in which Valentine began a criminal investigation, not his purported motivations or communications in doing so. "Statements by a party with no citation to particular parts of the record in response to properly supported facts will not be considered." Sledge v. Indico Sys. Res., Inc., 2016 WL 815348 at *2 (W.D. Tenn. Feb. 29, 2016). To dispute a fact, a party can either cite to particular parts of materials in the record or show that materials cited do not establish the absence of a genuine dispute of material fact. Id. The Court does not have a "duty to 'scour the record' in search of facts, nor to speculate about potential genuine disputes." (Id.) (internal citations omitted). The Sixth Circuit has stated that the burden to identify and point out the evidence is with the party disputing facts, not with the Court. Wimbush v. Wyeth, 619 F.3d 632, 638 n.4 (6th Cir. 2010). Accordingly, this fact is not materially in dispute.

[3] Plaintiff disputes this fact because "Defendant refused to produce Detective Valentine's spreadsheets in discovery." (ECF No. 80-1 at PageID 1135.) The spreadsheets being discussed were in fact produced as an exhibit to Valentine's declaration on March 9, 2021, about one month before Plaintiff filed its response on April 5, 2021. (ECF No. 64-4 at PageID 870–879.) Furthermore, the spreadsheet is bates stamped and appears to have been produced as part of discovery. Accordingly, Plaintiff's objection to this statement of fact is not materially disputed.

[4] Plaintiff disputes this fact based on the production of spreadsheets. See supra n.3.

printouts for Jail service-member employees with their DFAS records.[5] (Id. ¶ 19.) Valentine noted each time an individual had received some pay from Shelby County for time off for military duties, but did not have a corresponding DFAS record for the same day of duty.[6] (Id. ¶ 20.) Valentine identified Plaintiff as an individual who had received over $1,000 in military leave pay for dates when there were no records that he had attended a military function.[7] (Id. ¶ 21.) On May 23, 2014, Valentine interviewed Plaintiff as part of the criminal investigation, reviewed discrepancies in Plaintiff's Jail payroll and DFAS records with him, and showed him a copy of the spreadsheet where Plaintiff had allegedly received military leave pay.[8] (ECF No. 80-1 ¶ 22.)

The charge of felony theft of property of over $1,000 was submitted to the grand jury by Tennessee District Attorney Amy Weirich in September 2014. ("Criminal Investigation," ECF No. 64-4 at PageID 883.) On November 4, 2014, the grand jury returned a true bill indicting Ward for felony theft of property valued at over $1,000. (ECF No. 80-1 ¶ 26.) The charges against Plaintiff were *nolle prosequi* on December 4, 2015. (Id. ¶ 28.)

On or about October 10, 2014, there was an administrative investigation into Plaintiff's alleged violation of SCSO employment policies ("Administrative Investigation") that was conducted by Eugenia Sumner ("Sumner"), a detective with the SCSO's Bureau of Professional Standards and Integrity ("BPSI"). (Id. ¶¶ 33–35.) The Administrative Investigation focused on Plaintiff's alleged violations of SCSO employment policies, including those relating to leave-time requests, personal conduct, and adherence to the law. (Id. ¶ 36.) On October 21, 2014, Sumner

---

[5] *Id.*

[6] *Id.*

[7] Plaintiff disputes this fact by copy/pasting five pages of deposition testimony. Plaintiff's dispute of Valentine's findings and his ability to locate to military records is noted, but the fact of Valentine's findings is not materially disputed.

[8] Plaintiff disputes this fact by stating that Defendant never produced the spreadsheet at issue. See supra n.3. Plaintiff further disputes this fact by stating that Shelby County chose to ignore records of Plaintiff's military duty, but has not cited to any such records or provided them. Thus, this statement is not materially in dispute.

conducted an in-person interview with Plaintiff, at which he was told that he would have until noon of Friday, October 24, 2014, to provide documentation to show that he had not improperly taken military leave pay. (Id. ¶¶ 37–38.) Plaintiff did not appear at Sumner's office by October 24, 2014. (Id. ¶ 39.) Sumner compiled a report of facts and evidence that she collected during her administrative investigation, and found that Plaintiff had violated SCSO policies. (Id. ¶ 40.)

On January 27, 2015, the Chief Inspector for SCSO Jail Administration, Kirk Fields ("Fields"), conducted an Administrative Pre-Disciplinary Hearing with Plaintiff regarding the allegations of SCSO policy violations. (ECF No. 80-1 ¶¶ 45–47.) Following the hearing, Plaintiff was sent a Notice of Termination and dismissed from employment with the SCSO on April 7, 2015. (ECF No. 64-5.) On August 3, 2016, Plaintiff executed the "Agreement and General Release" (the "Release"). (ECF No. 80-1 ¶ 65.) According to the Release, Plaintiff was to return to work at the SCSO effective September 16, 2016, and Plaintiff was to be paid the equivalent of three weeks of back-pay wages. (ECF Nos. 1-1 at PageID 31–33; 80-1 ¶ 66 ) Plaintiff obtained documents regarding his USERRA rights prior to his termination. (ECF No. 80-1 ¶ 70.) The USERRA documents describe the protections afforded to servicemember employees, and Plaintiff was aware of his USERRA rights at the time he provided the USERRA documents to Shelby County. (Id. ¶¶ 71–72.) On September 7, 2016, Plaintiff declined to return to work with the SCSO, stating in an email that "it's been almost two years since I was relieved of duty from the Sheriff's office," and that "things wouldn't feel right if [he] returned." (Id. ¶ 73.)

### b. Procedural Background

Plaintiff filed his Complaint against Shelby County for violations of USERRA, seeking: 1) declaratory judgment that the Release did not waive any USERRA rights; 2) declaratory judgment that Shelby County's Military Leave Policy violates USERRA; and 3) a finding that Shelby

County violated Plaintiff's USERRA rights by discriminating and retaliating against him for his military status. (ECF No. 1.) Defendant filed a Motion to Dismiss for Failure to State a Claim on July 1, 2020. (ECF No. 17.) The Court denied Defendant's motion by Order entered on November 19, 2020. (ECF No. 46.) Defendant filed its Answer on December 3, 2020. Defendant asserts in its Answer that Plaintiff's military status was not a motivating factor in the decision to terminate his employment and that Defendant would have fired Plaintiff irrespective of his protected military status. (ECF No. 48 at PageID 355.) Defendant's Answer also asserts affirmative defenses of unclean hands, waiver, laches, equitable estoppel, and mistake. (Id. at PageID 356.)

Plaintiff filed his Motion for Summary Judgment on February 19, 2021, seeking a declaratory judgment that Defendant violated Plaintiff's USERRA rights and that its military leave policy violates USERRA. (ECF No. 60 at PageID 541–42.) Plaintiff also seeks summary judgment as to each of Defendant's affirmative defenses. (Id. at PageID 542.) Defendant filed its Motion for Summary Judgment on March 9, 2021, arguing that Plaintiff has not created an issue of material fact that would entitle him to relief regarding USERRA violations, and that Plaintiff's claims are barred by waiver and lack of standing. (ECF No. 64 at PageID 792.)

## II.    LEGAL STANDARD

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense." Bruederle v. Louisville Metro Gov't, 687 F.3d 771, 776 (6th Cir. 2012).

"In considering a motion for summary judgment, [the] court construes all reasonable inferences in favor of the nonmoving party." Robertson v. Lucas, 753 F.3d 606, 614 (6th Cir.

2014) (citing <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)). "The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact." <u>Mosholder v. Barnhardt</u>, 679 F.3d 443, 448 (6th Cir. 2012) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." <u>Mosholder</u>, 679 F.3d at 448-49; <u>see also</u> Fed. R. Civ. P. 56(e); <u>Matsushita</u>, 475 U.S. at 587. "When the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." <u>Martinez v. Cracker Barrel Old Country Store, Inc.</u>, 703 F.3d 911, 914 (6th Cir. 2013) (quoting <u>Chapman v. UAW Local 1005</u>, 670 F.3d 677, 680 (6th Cir. 2012) (en banc)) (internal quotation marks omitted); <u>see also</u> <u>Kalich v. AT & T Mobility</u>, LLC, 679 F.3d 464, 469 (6th Cir. 2012).

In order to "show that a fact is, or is not, genuinely disputed," both parties must do so by "citing to particular parts of materials in the record," "showing that the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact." <u>Bruederle</u>, 687 F.3d at 776 (alterations in original) (quoting Fed. R. Civ. P. 56(c)(1)); <u>see also</u> <u>Mosholder</u>, 679 F.3d at 448 ("To support its motion, the moving party may show 'that there is an absence of evidence to support the nonmoving party's case'" (quoting <u>Celotex</u>, 477 U.S. at 325)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]" <u>Martinez</u>, 703 F.3d at 914 (alteration in original) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he district court has no

'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'" Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008), abrogation recognized by Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir. 2015)).

The decisive "question is whether 'the evidence presents a sufficient disagreement to require submission to a [fact finder] or whether it is so one-sided that one party must prevail as a matter of law.'" Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015) (quoting Liberty Lobby, 477 U.S. at 251-52). Summary judgment "'shall be entered' against the nonmoving party unless affidavits or other evidence 'set forth specific facts showing that there is a genuine issue for trial.'" Rachells v. Cingular Wireless Employee Services, LLC, No. 1:08CV02815, 2012 WL 3648835, at *2 (N.D. Ohio Aug. 23, 2012) (quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 884 (1990)). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 251). "[I]n order to withstand a motion for summary judgment, the party opposing the motion must present "affirmative evidence" to support his/her position." Mitchell v. Toledo Hosp., 964 F.2d 577, 584 (6th Cir. 1992) (citing Liberty Lobby, 477 U.S. at 247-254; Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)). "[C]onclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment." Rachells, 2012 WL 3648835, at *2 (quoting Thomas v. Christ Hosp. and Med. Ctr., 328 F.3d 890, 894 (7th Cir. 2003)). Statements contained in an affidavit that are

"nothing more than rumors, conclusory allegations and subjective beliefs" are insufficient.  See

Mitchell, 964 F.2d at 584-85.

## III.    ANALYSIS

Both Plaintiff and Defendant contend that each is entitled to summary judgment.  (ECF

Nos. 60-1, 64.)  Defendant's Motion argues that Shelby County is entitled to summary judgment

because: 1) Plaintiff waived his claims by signing the Release; 2) Plaintiff's claims are barred by

the doctrine of laches; 3) Plaintiff lacks standing to bring a claim for declaratory judgment that

Shelby County's military leave policy violates USERRA; and 4) Plaintiff has not made out a *prima*

*facie* case for a USERRA claim.  (ECF No. 64.)   Plaintiff's Motion for Summary Judgment

contends that: 1) Plaintiff is entitled to a declaratory judgment that Shelby County's military leave

policy violates USERRA; and 2) Plaintiff's affirmative defenses should be denied as a matter of

law.  (ECF No. 60-1 at PageID 546.)

### A)  Summary Judgment is GRANTED to Plaintiff on the Issue of USERRA Waiver

The Court first addresses whether Plaintiff has waived his USERRA rights.  As discussed

in the November 19, 2020 Order (ECF No. 46), the Court finds that Plaintiff has not waived his

USERRA rights.  Defendant asserts that "Plaintiff waived the right to seek relief for any of the

issues raised in the Complaint by executing the Release."  (ECF No. 64-1 at PageID 800.)  The

Court reiterates its November 19, 2020 analysis:

> USERRA "supersedes any … contract, agreement, policy, plan, practice, or other
> matter that reduces, limits, or eliminates in any manner any right or benefit provided
> by [USERRA]."  38 U.S.C. § 4302(b).  Section 4302(a) limits the application of §
> 4302(b), exempting from § 4302(b)'s restriction any similar contract, agreement,
> policy, plan or practice that is "more beneficial to, or is in addition to, a right or
> benefit provided for such person" by USERRA.  38 U.S.C. § 4302(a); Wysocki v.
> Int'l Bus. Machine Corp., 607 F.3d 1102, 1107 (6th Cir. 2010).  However, in
> constructing any such release, courts must be "cognizant of the fact that …

USERRA's provisions are to be liberally construed in favor of veterans.  Id. at 1107–08.  See also Gordon v. Wawa, Inc., 338 F.3d 78, 81 (3d Cir. 2004) ("[W]e construe USERRA's provision liberally, in favor of the service member.").  Although USERRA's legislative history makes clear that waivers may be made by "clear  and unambiguous action," the House Report on Section 4302(a) suggests that any such waiver be read narrowly:

> [A]ny waiver … must be clear, convincing, specific, unequivocal, and not under duress.  Moreover, only known rights which are already in existence may be waived.  An express waiver of future statutory rights, such as one that an employer might wish to require as a condition of employment, would be contrary to the public policy embodied in the Committee bill and would be void.

> H.R. Rep. No. 103–65 (1994), as reprinted in U.S.C.C.A.N. 2453; Wysocki, 607 F.3d at 1108.

(ECF No. 46 at PageID 317–18.)

Both parties rely on Wysocki to argue that the Release is or is not enforceable.  In Wysocki, the Sixth Circuit upheld a USERRA waiver based on "clear and unambiguous language," noting that:

> The Release stated that it covered claims based on 'veteran status.'  This ***clear and unambiguous language*** informed Wysocki that he was waiving his USERRA rights.…Under these circumstances, it appears from the record that Wysocki understood that the Release eliminated his USERRA rights, that he signed the Release because he believed that the rights provided in the Release were more beneficial than his USERRA rights, and therefore, that the Release is exempted from the operation of § 4302(b) by § 4302(a).

Wyoscki, 607 F.3d at 1108 (emphasis added).

Defendant argues that "[t]here is no genuine dispute that Plaintiff was aware of the USERRA rights attendant with his termination at the time he executed the Release,"  but   then points to deposition testimony about Plaintiff's awareness of USERRA rights at the time of his arrest, not at the time he signed the Release.  (ECF No. 64-1 at PageID 802 ("Plaintiff was specifically asked during his deposition, whether, prior to his arrest, '[y]ou knew you were

protected by USERRA, correct?'  Plaintiff responded with an unequivocal, '[y]es.'  Plaintiff went on to state that he had been given a two-page document entitled 'Employer Support of the Guard and Reserve' by the County's Human Resources department sometime before his arrest and termination.") (internal citations omitted).)

However, as contended by Plaintiff, the Release "makes no mention of claims based on USERRA, or anything similar to the 'veteran status' language that was crucial to the Sixth Circuit's holding."  (ECF No. 80 at PageID 1108.)  Here, the Court agrees with Plaintiff, and finds that the Release does not use "clear and unambiguous language" and "involve[] a valuable amount of consideration" such that Plaintiff was informed that "he was waiving his USERRA rights[.]" Wysocki, 607 F.3d at 1108.  The Release signed by Plaintiff does state that he will "withdraw his appeal of his April 7, 2015 termination before the Shelby County Civil Service Merit Board; and [] release the SCSO and its officers, directors, and employees, from any and all claims whatsoever, both known and unknown, both before the Board and before any local, state, or federal agency or court, arising out of his termination from employment on April 7, 2015[.]"  (ECF No. 1-1 at PageID 31.)

Unlike the agreement in Wysocki, however, the Release makes no mention of claims based on his "veteran status," language that was crucial to the Sixth Circuit's findings.  Wysocki, 607 F.3d at 1108.  Because USERRA must be liberally construed in favor of Plaintiffs and applying the law to the undisputed facts as to the Release in this case, the language in the Release entered into by Plaintiff with Defendant did not clearly and unambiguously inform Plaintiff at the time of signing that he was waiving his right to recover under USERRA or any other rights entitled to him by his veteran or military status.  Id.  Regardless of whether the Release was more beneficial to

Plaintiff than his rights afforded him by USERRA, the Release does not constitute a valid waiver of Plaintiff Vaughn's USERRA rights under § 4302(a).

Furthermore, Defendant does not adequately address the other aspects of a USERRA waiver inquiry. Specifically, the Sixth Circuit emphasized that "the fact that § 4302 applies to the Release, does not mean that the Release is automatically superceded by § 4302." Wysocki, 607 F.3d at 1107. "While § 4302(b) supercedes any law, plan or agreement that 'reduces, limits, or eliminates in any manner any right or benefit provided by this chapter,' its application is limited by § 4302(a), which exempts any law, plan or agreement that is 'more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter' from the operation of § 4302(b)." Id. "Therefore, the critical inquiry is whether the Release is exempted from the operation of § 4302(b) by § 4302(a), because the rights it provided to Wysocki were **more beneficial** than [*sic*] the rights that he waived." Id. (emphasis added). Here, there is no relevant factual dispute over whether Plaintiff's rights under the Release were more or less beneficial than the rights he purportedly waived under USERRA. Under the Release, Plaintiff would have received a lump-sum payment of three weeks of back-pay, along with a guaranteed reinstatement with probation. (ECF No. 1-1.) Conversely, Plaintiff asserts that the Release "comes nowhere close to satisfying Mr. Ward's 17 months of lost back pay, pension credits, and benefits following his April 7, 2015 termination to his purported reemployment offer of September 16, 2016." (ECF No. 80 at PageID 1104.) Plaintiff's USERRA rights are therefore indisputably more beneficial than the rights he received under the Release.

Whether Plaintiff "could waive his USERRA claim through the Release is a matter of statutory interpretation, and depends on the meaning of 38 U.S.C. § 4302." Wysocki, 607 F.3d at 1106. Accordingly, this is a matter for the Court to decide at this juncture. The Court finds that

no reasonable juror could find that Plaintiff waived his USERRA rights. There is no "clear and unambiguous" language in the Release, or even a mere reference to Plaintiff's veteran status. (See ECF No. 1-1.) Furthermore, even if the Court were to find that Plaintiff did waive his USERRA rights, that finding would still be contingent on whether or not those rights were more beneficial in the Release. Here, three weeks of back-pay and a reinstatement with probation is objectively less beneficial than Plaintiff's rights under USERRA, and no reasonable juror could find otherwise. Accordingly, summary judgment is **GRANTED** to Plaintiff on the issue of USERRA waiver. 38 U.S.C. § 4302 precludes Plaintiff's waiver of USERRA rights in the Release.

### B) Summary Judgment is GRANTED to Plaintiff on the Issue of Laches

Defendant argues that "Plaintiff unreasonably delayed in filing his suit" because "[h]is termination occurred in 2015, but he waited five (5) years to file the Complaint." (ECF No. 64-1 at PageID 803.) Defendant raised many of the same arguments in its Motion to Dismiss. (ECF No. 17-1.) The USERRA does not impose a statute of limitations on the Plaintiff. 38 U.S.C. § 4327(b). Accordingly, "[t]o successfully invoke the doctrine of laches, a defendant must show 'an inexcusably long delay in commencing the action which causes prejudice to the other party,' and mere delay will not suffice." Baptist Physician Hosp. Org., Inc. v. Humana Military Healthcare Serv., Inc., 481 F.3d 337, 353 (6th Cir. 2007) (internal citation omitted). "A party asserting the equitable defense of laches must establish both plaintiff's unreasonable lack of diligence under the circumstances in initiating an action, as well as prejudice from such a delay." Veltri v. Bldg. Serv. 32B-J Pension Fund, 393 F.3d 318, 326 (2d Cir. 2004) (internal citation omitted). Laches is an affirmative defense and the burden of proving laches rests with the Defendant. Fed. R. Civ. P. 8(c).

Laches "requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002) (internal citation omitted). Here, Defendant argues that "Plaintiff's over-five-year delay in filing suit was unreasonable, and the County has suffered prejudice as a result of said delay." (ECF No. 64-1 at PageID 804.) To support this contention, Defendant points to "the unfortunate passing of Mr. Mitchell Dunn ("Dunn")[,]" who was "one of the two (2) individuals employed by the SCSO's Bureau of Internal Audit [and] who conducted the 2013 audit of the Jail's leave-time practices." (Id.) Defendant states that it is "prejudiced by not having an employee with first-hand knowledge of the 2013 audit available to speak on its behalf." (Id.) In addition to the passing of Dunn, Defendant points to the "dulled memory of witnesses," including the Plaintiff's memory of crucial details. (Id. at PageID 805.) The Sixth Circuit has held that "there is a strong presumption that a plaintiff's delay in asserting its rights is reasonable as long as an analogous state statute of limitations has not elapsed." Nartron Corp. v STMicroelectronics, Inc., 305 F.3d 397, 408 (6th Cir. 2002).

In its motion, Defendant largely focuses on any alleged prejudice it has suffered, but does not adequately address the first portion of the inquiry—proof of lack of diligence. Defendant asserts that Plaintiff delayed in bringing the case by five years, but does not point to evidence in the record to show that there was a lack of diligence or that the case should be have been brought sooner. (ECF No. 64-1 at PageID 803.) Plaintiff is further correct that he was under no obligation to join in the lawsuit his former co-workers—Stephen Vaughn and Alvin Williams—were bringing against Shelby County for their termination on April 7, 2015. See Alvin Williams, et al. v. Shelby County, et al., 2:18-cv-02531 (W.D. Tenn. Aug. 2, 2018); see also ECF No. 64-1 at PageID 805 (citing Deposition of Ward). Here, Defendant's assertion that Plaintiff's delay in bringing this

case was inexcusable is not sufficiently supported by the evidence and does not overcome the strong presumption that Plaintiff's delay in asserting his USERRA rights was reasonable. See Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc., 270 F.3d 298, 321 (6th Cir. 2001). Here, no corresponding statute of limitations has run. Congress has specifically legislated in this area, noting that "there shall be no limit on the period for filing the complaint or claim." 38 U.S.C. 4327(b). Accordingly, summary judgment is **GRANTED** to Plaintiff on the issue of laches. Defendant has not met its burden of showing that Plaintiff delayed unreasonably in bringing this suit, and no reasonable fact-finder could find otherwise.

**C) Factual Disputes Preclude Summary Judgment on Plaintiff's Discrimination and Retaliation Claim**

USERRA provides, "A person who is a member of . . . a uniformed service shall not be denied . . . retention in employment, . . . or any other benefit of employment by an employer on the basis of that membership, . . . performance of service, . . . or obligation." 38 U.S.C. § 4311(c)(1). To succeed, a plaintiff must demonstrate that he suffered an adverse employment action, and that "the person's obligation for military service 'was a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such . . . obligation for service." Bobo v. United Parcel Service, Inc., 665 F.3d 741, 754 (6th Cir. 2012) (quoting Escher v. BWXT Y–12, LLC., 627 F.3d 1020, 1026 (6th Cir. 2010)). "Discriminatory motivation may be inferred from a variety of considerations, including proximity in time between the employee's military activity and the adverse employment action, inconsistencies between the employer's conduct and the proffered reason for its actions, the employer's expressed hostility toward military members together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses." Id. If the plaintiff makes that initial showing,

then the burden shifts to the defendant to prove that it would have taken the same action against plaintiff even in the absence of the plaintiff's protected military status. Petty v. Metro. Gov't of Nashville-Davidson Cnty., 538 F.3d 431, 446 (6th Cir. 2008).

Thus, to make out a prima facie case of discrimination under USERRA, Plaintiff must first show that he was subjected to an adverse employment action. Petty, 538 F.3d at 446. An adverse employment action in employment discrimination cases is a "materially adverse change in the terms and conditions of [a plaintiff's] employment." Redlin v. Grosse Pointe Public School System, 921 F.3d 599, 607 (6th Cir. 2019) (quoting White v. Burlington N. & Santa Fe Ry. Co., 364 F.3d 789, 795 (6th Cir. 2004)). In determining whether an action is an adverse employment action, the court may consider "whether an action resulted in a plaintiff receiving 'a less than distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation,' along with other markers of prestige and desirability." Id. (quoting Kcosis v. Multi-Care Management, Inc., 97 F.3d 876, 886 (6th Cir. 1996)). Here, Defendant agrees that Plaintiff's termination is "both adverse to Plaintiff and attributable to the County as his employer." Accordingly, Plaintiff has shown that at the very least, his firing was an adverse employment action. And regardless of whether the audit and criminal investigation are adverse employment actions, they are relevant to the second portion of the Petty inquiry—whether Plaintiff's status as a servicemember motivated the adverse employment action.

The parties' arguments in their respective Motions for Summary Judgment and Responses demonstrate that there exists a genuine dispute of material fact as to whether Defendant's actions were motivated at least in part by Plaintiff's protected military status. Celotex Corp. v. Catrett, 477 U.S. 317, 322–326 (1986). Defendant asserts that "Plaintiff cannot point to the 2013 Jail audit to support the claim that the County discriminated against him because of his membership in the

armed services" because the "2013 audit was not an employment action, adverse or otherwise, relative to Plaintiff." (ECF No. 64-1 at PageID 809.) Defendant further argues that "Valentine's criminal investigation into the allegations of paid-leave theft was not an employment action" because "the investigation, in and of itself, was not predicated on Plaintiff's employment with the County[.]" (Id. at PageID 810.) For example, Defendant states that the criminal investigation was instead "premised on Plaintiff's alleged violation of Tenn. Code. Ann. § 39-14-103" and that it was "not into any of alleged SCSO policy violations that ultimately lead to the adverse employment action here, Plaintiff's termination." (Id.) According to Defendant, it simply "investigated Plaintiff as if he was any other Shelby County citizen who had been accused of theft; the fact that Plaintiff was a servicemember employee of the County had no effect on the criminal investigation." (Id. at PageID 810–11.) Additionally, Defendant attempts to dismiss Plaintiff's indictment as "not an employment act on the County's part" and something that "was not [] attributable to the County[.]" (Id. at PageID 811.) It is therefore Defendant's position that "[t]here can be no genuine dispute of material fact as to whether the criminal investigation, prosecution, arrest, and indictment of Plaintiff was an employment act, adverse or otherwise, by the County." (Id. at PageID 811–12.)

Defendant's conclusory statements do not remove the factual disputes at issue. For one, the "issue of intent to discriminate is a pure question of fact." Lynch v. Freeman, 817 F.2d 380, 382–83 (6th Cir. 1987) (internal citations omitted). Plaintiff presents deposition testimony of Eugenia Sumner that demonstrates that the investigation into Plaintiff was, at the very least, tangentially related to his military leave. (ECF No. 80-7 at PageID 1301 ("Q. Okay. Why did you ask for secondary employment files? A. Because the military, they're all reservists."); see also ECF No. 80-6 at PageID 1294 (citing to Sumner's recommendation of action for policy

violations).)  While Defendant couches Plaintiff's termination as related to "policy violations," it is important to note that those policy violations are linked to his indictment and his military service. Together, there is substantial evidence showing investigations relating to or arising out of Plaintiff's military leave and military leave generally, including the January 2014 Audit Report, the Valentine Investigation, the Criminal Charge, and the Administrative Investigation.  Whether or not these investigations—which ultimately led to Plaintiff's termination—were motivated by animus towards military personnel, is a question of fact.

Defendant states that "Plaintiff's violation of SOR 124 'Off Duty Employment' had nothing to do with the fact that his off-duty employment was with the military" and that "Plaintiff was required by SOR 124, like every other SCSO employee at the time, to notify the SCSO that he had other employment."  (ECF No. 64-1 at PageID 813.)  That Defendant asserts this to be the case does not remove the purely factual nature of the inquiry.  The Court makes no determination as to this issue.  It is entirely plausible that Defendant was *not* motivated by Plaintiff's military status.  The fact that Plaintiff was facing criminal charges stemming from alleged theft could lead a reasonable jury to find that Defendant would have terminated Plaintiffs in the absence of any consideration of his protected status as servicemembers.  See Petty, 638 F.3d at 446.  Conversely, it is also reasonable for a fact-finder to determine that the January 2014 Audit Report, the Valentine Investigation, the Criminal Charge, and Administrative Investigation, were all part of a series of events that were intertwined and motivated by an intent to discriminate against service-members, eventually resulted in the adverse employment action—Plaintiff's termination.

Accordingly, summary judgment is **DENIED** on the issues of USERRA discrimination and retaliation.

**D)  Plaintiff Does Not Have Standing to Challenge the 2017 Military Leave Policy**

In its November 19, 2020 Order, the Court noted the following in its finding that Plaintiff had pled sufficient facts to allege USERRA standing:

> Ward has alleged that 'he suffered from a concrete [*sic*] (denial of leave), **traceable to defendants' actions (application of the policy to him)**, and likely to be redressed by a favorable decision (a Judgment that the policy violates USERRA and reinstatement ordered by this Court pursuant to 38 U.S.C. § 4323(e)[.]' (ECF No. 24 at PageID 132) (footnote omitted). At this juncture, even general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] 'presum[es] that general allegations embrace those specific facts are necessary to support the claim.' [Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (citing Lujan v. Nat'l Wildlife Fed., 497 U.S. 871, 889 (1990)). Ward has provided specifics of the alleged injury, and seeks to be reinstated as an employee at Shelby County. (ECF No. 24 at PageID 133.) Thus, it is not so attenuated—as Shelby County argues—to conclude that Ward may be affected by these same policies at the culmination of this lawsuit. This Court finds that Ward has pled sufficient facts to allege USERRA standing.

(ECF No. 46 at PageID 325 (emphasis added).)

Standing is the "threshold question in every federal case[.]" Warth v. Seldin, 422 U.S. 490, 498 (1975). At a minimum, standing requires three elements. Lujan, 504 U.S. at 560. "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is [] concrete and particularized…Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly…trace[able] to the challenged action of the defendant…Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Lujan, 504 U.S. at 560–61. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] 'presum[es] that general allegations embrace those specific facts that are necessary to support the claim.'" Id. at 561 (citing Nat'l Wildlife Fed., 497 U.S. at 889).

The inquiry changes at the summary judgment stage. "In response to a summary judgment motion, [] the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by

affidavit or other evidence 'specific facts,' which for purposes of the summary judgment will be taken to be true." <u>Lujan</u>, 504 U.S. at 561.

Defendant reasserts that "Plaintiff lacks standing to bring the claim for declaratory and injunctive relief as set out in Count Two of his Complaint" because "[t]here is no causal connection between the harm Plaintiff complains of (the 2015 termination) and the relief he seeks in Count Two of the Complaint (an injunction prohibiting the County's use of the 2017 Leave Policy)." (ECF No. 64-1 at PageID 807.)  Defendant adds that "Plaintiff fails to meet the factual threshold for standing because he cannot trace any of his alleged harms to the 2017 Leave Policy."  (<u>Id.</u>) Indeed, the parties seem to agree that the 2017 Leave Policy was put in place *after* Plaintiff was terminated.

At this stage in the proceedings, such generalized allegations do not suffice.  Plaintiff puts forth arguments regarding the following impermissible portions of Defendant's 2017 Leave Policy: 1) requiring the signature of a full-time military officer to verify military service (ECF No. 60-1 at PageID 551–52); 2) requiring servicemembers to provide a copy of drill orders and a military ID (<u>id</u> at PageID 552); 3) filling out of military leave request forms for paid leave (<u>id.</u> at PageID 553); 4) filling out of military event attendance verification forms for paid military leave (<u>id.</u>); 5)  producing a copy of DD 214 for periods of military service of 21 days and greater (<u>id.</u> at PageID 554); 6) utilizing a military liaison officer to implement the Defendant's policies (<u>id.</u> at PageID 554–55); and 7) requiring advance notice of military service (<u>id.</u> at PageID 555).  Notably absent from Plaintiff's contentions or arguments is ***any*** discussion of these policies being applied ***to him***.  Plaintiff points to the following portions of deposition testimony to show that the "old policy" applied to him, but does not provide any details on what provisions or what parts of the new policy were encompassed in the old policy:

Q.    Okay.  Effective date of this policy is August 10th, 2017, isn't it?

A.    Yes.

**Q.    This policy never applied to you, did it?**

**A.    That's because this is a new policy.**

Q.    Right, exactly.  So it never applied to you, did it?

A.    Not at that time, no.

Q.    Not ever, right?  This policy has never applied to you, has it?

**A.    But the old one did.**

(ECF No. 77-1 at PageID 1094 (emphasis added).)

Plaintiff further asserts that

Q.    And I think you said that — the questioning was whether or not that it applied to you, and I think you said something to the effect that the old one did.  Can you please expand upon that just a little bit, please?

A:    Well, the old one got me terminated.  As I said, I had never, ever had to fill out a form for secondary employment, ever, when it pertained to the military.

Q.    Is that in the old — is that in the policy that applied to you?

**A.    If it was in the old policy, it applied to me.**

Q.    Is that — do you know that that's in the new policy that we were just talking about a minute ago?

A.    I don't know. . .

Q.    If you went back to work at Shelby County tomorrow, would that new policy we just talked about apply to you?

A.    Yes.  Because I'm still in the military, yes.

(ECF No. 77-1 at PageID 1096.)

Plaintiff's Statement of Facts similarly points to various provisions of the 2017 and 2019 Military Leave Policies, but does not argue that any of those provisions were applied to Plaintiff or that Plaintiff attempted to comply with such policies and was unable to do so.  (See, e.g., ECF No. 72-2 at PageID 1012–13 ("The Shelby County Sheriff's policy required servicemembers to provide copies of military orders when apply for military leave, complete a Secondary Employment Form listing the military as a secondary employer, and provide proof of military service after attending drill; usually in the form of a DD Form 214.")  Plaintiff similarly articulates

the various problems it sees with Defendant's 2017 and 2019 Leave Policies, but does not articulate how such issues were encountered by Plaintiff, or which provisions, if any, were also present in the policies that existed when Plaintiff was employed by Defendant. In other words, Plaintiff has failed to satisfy his burden with respect to the injury-in-fact requirement, because his allegations of harm are generic and "consist[] largely of speculation and therefore cannot satisfy the injury-in-fact requirement." See Kanuszewski v. Michigan Dept. of Health and Human Srvs., 927 F.3d 396, 410 (6th Cir. 2019).

Defendant asserts that in its view, "[t]he crux of Plaintiff's argument in favor of his standing to seek a declaratory judgment is that the policy **_might_** one day apply to him, assuming he prevails in the current suit and actually decides to return to employment with the County." (ECF No. 83 at PageID 1499.) Defendant adds that "[b]ased on Plaintiff's logic, this potential would give every former or current servicemember in the nation standing to challenge any leave policy anywhere in the country based [on] [*sic*] their status as potential employees." (Id. at PageID 1500.) The Court agrees. At the motion to dismiss stage, Plaintiff's generalized allegations that there were provisions of the 2017 Leave Policy that were applied to him and violated USERRA were tenable. But at this juncture, the Court must assess the record before it. Plaintiff has only discussed generally how various provisions of the 2017 Leave Policy would violate USERRA, not how the application of that policy to him violated his USERRA rights. Even Plaintiff's contention that the new policy would apply to him if he were to go back to work at Shelby County is insufficient for standing. See Clapper v. Amnesty Intern. USA, 568 U.S. 398, 410 (2013) (finding that respondent's theory of standing relied on a "highly attenuated chain of possibilities" and did not satisfy the requirement that "threatened injury must be certainly impending"). Here, as was the case in Clapper, Plaintiff has no actual knowledge of Defendant's current practices, and has

set forth mere conjecture that the 2017 Leave Policy would apply to him in a given manner.  Id. at 412.  Accordingly, summary judgment is **GRANTED** to Defendant on the issue of Plaintiff's standing regarding Defendant's 2017 and current USERRA policies.  The Court does not reach the merits of Plaintiff's arguments regarding the individual provisions of the 2017 and current Military Leave policies.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**, and Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART.**

**SO ORDERED**, this 25th day of June, 2021.

 /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT COURT JUDGE