IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SEDRIC WARD, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) Case No. 2:20-cv-02407-JPM-cgc <br> ) <br> v. ) <br> ) <br> SHELBY COUNTY, ) <br> ) <br> Defendant. ) <br> ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

**ORDER DENYING DEFENDANT'S MOTION FOR REMITTITUR OR NEW TRIAL**

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT, USERRA LIQUIDATED DAMAGES, FUTURE DAMAGES, PREJUDGMENT INTEREST, AND OFFSET FOR NEGATIVE TAX CONSEQUENCES**

Before the Court are Defendant Shelby County's ("Shelby County") Motion for Judgment as a Matter of Law (ECF No. 170) and Motion for Remittitur or New Trial (ECF No. 171), both filed on May 16, 2022. Also before the Court is Plaintiff Sedric Ward's ("Ward") Motion for Entry of Judgment, USERRA Liquidated Damages, Future Damages, Prejudgment Interest, and Offset for Negative Tax Consequences Pursuant to 38 U.S.C. § 4323(e), filed on May 16, 2022. (ECF No. 174.) For the reasons set forth below, Defendant's Motions are **DENIED**, and Plaintiff's Motion is **GRANTED IN PART and DENIED IN PART**.

I.  **BACKGROUND**

A) **Factual Background**

Plaintiff Sedric Ward brought this action against his former employer, Defendant Shelby County, alleging violations of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311 *et seq*. (Complaint, ECF No. 1.)

This Court's Summary Judgment Order lays out the asserted facts, both disputed and undisputed, that were later presented in each Party's case at trial:

> Plaintiff was employed by Shelby County at the Shelby County Jail (the "Jail"). (ECF No. 80-1 ¶ 1.) Plaintiff began working for the Shelby County Jail in 1998 and also served in the U.S. Army Reserve while employed by Shelby County. (ECF No. 72-2 ¶¶ 8–10.) In 2013, then-Shelby County Sheriff Bill Oldham ordered the Bureau of Internal Audit to perform an audit of the Shelby County Sheriff's Office ("SCSO") Jail Division — Jail Human Resources Unit due to performance issues within the Jail's Human Resources Office ("January 2014 Audit Report"). (ECF No. 80-1 ¶ 2.) The January 2014 Audit Report found instances of alleged misuse of sick leave, Family and Medical Leave Act ("FMLA") leave, and paid military leave, as well as instances of inconsistent discipline. (Id. ¶ 4.) In January 2014, the SCSO's General Investigations Bureau ("GIB") had a detective, Jason Valentine ("Valentine"), review the audit report to determine if a criminal investigation into military leave was warranted. (Id. ¶ 5.) As of January 2014, Valentine was employed by Shelby County as a Sergeant with the GIB. (Id. ¶ 7.) Based on the January 2014 Audit Report, Valentine pursued a criminal investigation. (Id. ¶ 8.) Plaintiff was not listed in the January 2014 Audit Report as an individual who allegedly improperly took paid military leave. (ECF No. 80-1 ¶ 9.) Valentine consulted with the Shelby County District Attorney General's Office and determined the criminal investigation should focus only on receipt of military pay between January 10, 2010 through December 31, 2013. (Id. ¶ 12.) The January 2014 Audit Report was insufficient to support charges for any specific crime against any specific individual. (Id. ¶ 14.) Valentine then began his own investigation to determine if any specific individual had a committed a crime with respect to leave-time use, and began by running a payroll report of all Jail personnel during the relevant time period to determine who had received pay for military leave during that time. ("Valentine Investigation," Id. ¶¶ 15–16.) Valentine created a spreadsheet for each Jail employee who received paid military leave, and marked each employee with an "M" for paid military leave and "ZM" for unpaid military

leave. (Id. ¶ 17.) Valentine reached out to the Defense Finance and Accounting Service ("DFAS") of the U.S. Department of Defense to gather documents to confirm each individual's service dates. (Id. ¶ 18.) Valentine compared payroll printouts for Jail service-member employees with their DFAS records. (Id. ¶ 19.) Valentine noted each time an individual had received some pay from Shelby County for time off for military duties, but did not have a corresponding DFAS record for the same day of duty. (Id. ¶ 20.) Valentine identified Plaintiff as an individual who had received over $1,000 in military leave pay for dates when there were no records that he had attended a military function. (Id. ¶ 21.) On May 23, 2014, Valentine interviewed Plaintiff as part of the criminal investigation, reviewed discrepancies in Plaintiff's Jail payroll and DFAS records with him, and showed him a copy of the spreadsheet where Plaintiff had allegedly received military leave pay. (ECF No. 80-1 ¶ 22.)

The charge of felony theft of property of over $1,000 was submitted to the grand jury by Tennessee District Attorney Amy Weirich in September 2014. ("Criminal Investigation," ECF No. 64-4 at PageID 883.) On November 4, 2014, the grand jury returned a true bill indicting Ward for felony theft of property valued at over $1,000. (ECF No. 80-1 ¶ 26.) The charges against Plaintiff were *nolle prosequi* on December 4, 2015. (Id. ¶ 28.)

On or about October 10, 2014, there was an administrative investigation into Plaintiff's alleged violation of SCSO employment policies ("Administrative Investigation") that was conducted by Eugenia Sumner ("Sumner"), a detective with the SCSO's Bureau of Professional Standards and Integrity ("BPSI"). (Id. ¶¶ 33–35.) The Administrative Investigation focused on Plaintiff's alleged violations of SCSO employment policies, including those relating to leave-time requests, personal conduct, and adherence to the law. (Id. ¶ 36.) On October 21, 2014, Sumner conducted an in-person interview with Plaintiff, at which he was told that he would have until noon of Friday, October 24, 2014, to provide documentation to show that he had not improperly taken military leave pay. (Id. ¶¶ 37–38.) Plaintiff did not appear at Sumner's office by October 24, 2014. (Id. ¶ 39.) Sumner compiled a report of facts and evidence that she collected during her administrative investigation, and found that Plaintiff had violated SCSO policies. (Id. ¶ 40.)

On January 27, 2015, the Chief Inspector for SCSO Jail Administration, Kirk Fields ("Fields"), conducted an Administrative Pre-Disciplinary Hearing with Plaintiff regarding the allegations of SCSO policy violations. (ECF No. 80-1 ¶¶ 45–47.) Following the hearing, Plaintiff was sent a Notice of Termination and dismissed from employment with the SCSO on April 7, 2015. (ECF No. 64-5.) On August 3, 2016, Plaintiff executed the "Agreement and General Release" (the "Release"). (ECF No. 80-1 ¶ 65.) According to the Release, Plaintiff was to return to work at the SCSO effective September 16, 2016, and Plaintiff was to be paid the

3

> equivalent of three weeks of back-pay wages. (ECF Nos. 1-1 at PageID 31–33; 80-1 ¶ 66 ) Plaintiff obtained documents regarding his USERRA rights prior to his termination. (ECF No. 80-1 ¶ 70.) The USERRA documents describe the protections afforded to servicemember employees, and Plaintiff was aware of his USERRA rights at the time he provided the USERRA documents to Shelby County. (Id. ¶¶ 71–72.) On September 7, 2016, Plaintiff declined to return to work with the SCSO, stating in an email that "it's been almost two years since I was relieved of duty from the Sheriff's office," and that "things wouldn't feel right if [he] returned." (Id. ¶ 73.)

(ECF No. 87 at PageID 1512–15.)

**B) Procedural Background**

The trial for this matter took place on April 11–14, 2022. (ECF Nos. 148, 152, 153, 156.) On April 13, 2022, Defendant moved for judgment as a matter of law under Rule 50, and the Motion was taken under advisement by the Court. (ECF No. 153.) On April 14, 2022, the jury returned a verdict in favor of Mr. Ward, finding that Plaintiff's USERRA rights were violated and that the violation by Shelby County was willful. (ECF No. 157.) The jury further found that Plaintiff was entitled to $567,183.00 in lost wages and benefits, less $6,183 in unmitigated damages, for a total of $561,000, as well as an advisory verdict as to future damages in the amount of $150,000, or $50,000 per year for three years. (Id.) The Court then set a briefing schedule for the Motion for Judgment as a Matter of Law, as well as the additional post-trial Motions discussed below, on April 15, 2022. (ECF No. 161.)

Defendant filed its Opening Brief in Support of its Motion for Judgment as a Matter of Law, as well as a Motion for Remittitur or New Trial and Supporting Memorandum, on May 12, 2022. (ECF Nos. 170, 171.) Plaintiff filed his Motion for Entry of Judgment, USERRA Liquidated Damages, Future Damages, Prejudgment Interest, and Offset for Negative Tax Consequences Pursuant to 38 U.S.C. § 4323(e) on May 16, 2022. (ECF No. 174.) Plaintiff filed his Responses in Opposition to Defendant's Motions on May 26, 2022. (ECF Nos. 175, 176.) Defendant filed

Replies on June 2, 2022. (ECF Nos. 180, 181.) Defendant filed a Response in Opposition to Plaintiff's Motion on June 16, 2022. (ECF No. 182.) Plaintiff filed a Reply on June 30, 2022. (ECF No. 183.)

## II.     LEGAL STANDARD

### A) Judgment as a Matter of Law

Rule 50 of the Federal Rules of Civil Procedure provides that a court may grant a motion for judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1); Mosby-Meachem v. Memphis Light, Gas & Water Div., 883 F.3d 595, 602 (6th Cir. 2018). "Judgment as a matter of law may only be granted if, when viewing the evidence in a light most favorable to the non-moving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party." Barnes v. City of Cincinnati, 401 F.3d 729, 736 (6th Cir. 2005), cert. denied, 546 U.S. 1003 (2005). The Court cannot substitute its own interpretation of the evidence for the jury's, even if the Court would have reached a different conclusion. Static Control Components, Inc. v. Lexmark Int'l, Inc., 697 F.3d 387, 414 (6th Cir. 2012), aff'd, 572 U.S. 118 (2014).

### B) Altering or Amending the Judgment

To grant a motion to alter or amend a judgment filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, there must be (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." Betts v. Costco Wholesale Corp., 558 F.3d 461, 474 (6th Cir. 2009) (internal citation and quotation marks omitted). "The grant or denial of a Rule 59(e) motion is within the informed discretion of the

district court." Scotts Co. v. Central Garden & Pet Co., 403 F.3d 781, 788 (6th Cir.2005) (citation and internal quotation marks omitted). Similarly, under Rule 59(a) a court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).

### C) Post-Trial Equitable Relief Pursuant to 38 U.S.C. § 4323(e)

"The court shall use, in any case in which the court determines it is appropriate, its full equity powers . . . to vindicate fully the rights or benefits of persons [under USERRA]." 38 U.S.C. § 4323(e).

## III. ANALYSIS

### A) Defendant's Motion for Judgment as a Matter of Law

Shelby County "moves the Court to enter a judgment in the County's favor as a matter of law" pursuant to Rule 50 of the Federal Rules of Civil Procedure. (ECF No. 170 at PageID 2831.)

Shelby County contends that "[t]here is no reasonable basis for the jury to have concluded that the adverse employment action in this case was motivated by Plaintiff's military status." (Id. at PageID 2833.) Defendant contends that, in order to establish a prima facie case under USERRA, Plaintiff must provide proof of the following factors:

> [P]roximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

(Id. at PageID 2834) (quoting Sheehan v. Dep't of Navy, 240 F.3d 1009, 1014 (6th Cir. 2001).)

First, Defendant contends that "[t]he adverse action in this case . . . did not occur close enough in time to any military activity for a reasonable jury to have imputed discriminatory intent

6

to the County for said action." (Id.) Next, Defendant asserts that it terminated Plaintiff for policy violations rather than because of military status, and that its reasons for terminating Mr. Ward have remained consistent throughout the case. (Id. at PageID 2835–37.) Defendant also contends that "the record contradicts any supposed anti-military hostility given that Plaintiff was offered—and initially agreed to—reinstatement of employment with the County." (Id. at PageID 2837–38.) Finally, Defendant asserts that "Plaintiff did not offer the jury any evidence of *any* comparators in this case that the County treated less harshly than he was." (Id. at PageID 2838.) As a result, Defendant contends that Plaintiff failed to meet his burden of establishing a prima facie case. (Id. at PageID 2841.)

Defendant further contends that, "[e]ven if the Court finds that Plaintiff met his prima facie burden, the County proved by preponderance of the evidence that Jail management would have taken the same actions for valid reasons." (Id.) Defendant contends that "the fact that Plaintiff was under a valid and lawful indictment by the State of Tennessee for a felony crime at the time of all of his suspension and termination provides ample justification for the adverse employment actions against him." (Id. at PageID 2842.) Defendant asserts that "[t]he only conclusion that a reasonable jury should have been able to reach . . . is that the County's decision to suspend and terminate Plaintiff in reaction to his felony indictment was valid and would have occurred regardless of Plaintiff's military service." (Id. at PageID 2847.)

Defendant next contends that "[t]here is not enough evidence in the record for a reasonable jury to conclude that any USERRA violation by the County was willful." (Id. at PageID 2847.) Defendant contends that "[t]here is simply no evidence in the record that would support a finding that the County acted with reckless disregard to Plaintiff's military status, or that the County was

7

'indifferent to the consequences of not following the statute, USERRA.'" (Id. at PageID 2848 (quoting Jury Instructions, ECF No. 154 at PageID 2084).)

Finally, Shelby County contends that "[t]here is no evidence in the record to support the jury's finding as to Plaintiff's backpay damages." (Id.) Defendant contends that "[i]t is unclear how the jury could reach their actual unmitigated damages figure of $6,183" and that "[t]here is no basis for a reasonable jury to have accepted the County's argument that Plaintiff failed to mitigate his damages, but *not* accept the argument as to how much he failed to mitigate." (Id. at PageID 2849.)

In response, Plaintiff contends that he "presented ample evidence that Shelby County took his military service into account when Shelby County suspended and terminated his employment." (ECF No. 176 at PageID 2976.) Plaintiff quotes trial testimony from witnesses Detective Valentine, Chief Kirk Fields, and Sergeant Sumner, in which they testify that they considered Plaintiff's use and/or alleged misuse of military leave, rather than just the fact that Plaintiff was under an indictment. (Id. at PageID 2976–81.) Plaintiff further contends that Defendant's assertion that he must put on evidence for certain Sheehan factors is without merit because all he needs to prove is that he suffered "an adverse employment action" and "that his military service was a motivating factor" in Defendant's decision. (Id. at PageID 2981.) (citing Hance v. Norfolk S. Ry. Co., 571 F.3d 511, 518 (6th Cir. 2009); 38 U.S.C. § 4311(c)(1).) Plaintiff further contends that he did put on proof of some of the Sheehan factors, such as "inconsistencies between the proffered reasons for his termination and other actions of the employer" and that Defendant targeted military leave to investigate instead of other leave abuses such as FMLA, vacation, or sick leave. (Id. at PageID 2982.)

8

Plaintiff also contends that Shelby County failed to prove its affirmative defense and that the jury could have instead rejected Defendant's explanations presented. (Id. at PageID 2983–84.) Plaintiff contends that the jury's finding of willfulness should not be overturned because "Mr. Ward presented evidence from each of Shelby County's witnesses that they were specifically aware of Mr. Ward's USERRA rights *and* recklessly disregarded them at the time they were taking their employment actions." (Id. at PageID 2985.) Plaintiff contends that "Shelby County failed to carry its burden regarding reinstatement" because "Mr. Ward testified at trial that the job offer Shelby County made was not comparable in terms of seniority and status because he would not have resumed the same duties he had when he left (transport) and because he was going to be on six months' probation." (Id. at PageID 2986.)

In effect, Plaintiff asserts that Defendant is asking the Court to substitute the jury's weighing of the evidence and credibility of the witnesses with its own. (Id. at PageID 2987.) Plaintiff points to the fact that "Chief Fields and Sergeant Sumner both testified that the allegations against Mr. Ward involved his use of military leave" and that "Mr. Ward clearly illustrated that the [] Defendant's adverse employment actions involved his military service[]." (Id. at PageID 2988.) Plaintiff contends that while Defendant has been consistent in its proffered reason for its decision, "the County also provided conflicting testimony, from which the jury determined that the County's proffered reasons were untrue." (Id. at PageID 2989.)

Finally, Plaintiff contends that the jury's monetary damages award "clearly falls directly within the range supported by the proof presented at trial" because "Mr. Ward's economist, Stan Smith, Ph.D., testified to lost wages and benefits damages totaling $561,184." (Id. at PageID 2990.) Plaintiff contends that "because the Jury issued specific findings regarding mitigation,

9

Defendant's request that this Court impose its own interpretation of what the ultimate number should be[] is wholly outside the prevailing authority in this jurisdiction." (Id. at PageID 2992.)

In reply, Defendant asserts that "Plaintiff incorrectly conflates the administrative investigation with the criminal investigation, and conflates both investigations with the actual adverse employment actions in this case." (ECF No. 181 at PageID 3010.) Defendant contends that "Chief Fields, the County official who made the decisions in this case, was not involved in *any* of the investigations." (Id. at PageID 3011.)

Despite Defendant's contentions, witnesses at trial, including Chief Fields, who made the adverse employment decisions, admitted that the policy violations for which Plaintiff was terminated were based off the reports of these investigations to at least some degree. (See, e.g., Trial Trans. Day 2, ECF No. 168 at PageID 2570–71.) Further, Chief Fields did not testify that Plaintiff was terminated solely for his criminal indictment. (Id. at PageID 2578–86.) As such, the jury could reasonably conclude that Defendant's proffered reasoning in the briefing was in fact a pretext. Further, Plaintiff provided evidence that Defendant knew of Plaintiff's rights under USERRA, and the jury could reasonably conclude that Defendant acted with reckless disregard with respect to those rights. (Id. at PageID 2581.) Similarly, it is inappropriate for the Court to re-assess the jury's award when it was within the range for which evidence and testimony were presented. See Hall v. Consolidated Freightways Corp. of Del., 337 F.3d 669, 672 (6th Cir. 2003) ("[W]hen faced with a Rule 50(a) motion, a district court may not weigh the evidence or make credibility determinations, as these are jury functions.") Thus, Defendant's Motion for Judgment as a Matter of Law is **DENIED**.

### B) Defendant's Motion for Remittitur or New Trial

Defendant contends that "[t]he jury in this case awarded an amount that is beyond the maximum damages it could have reasonably found to be compensatory for Plaintiff's alleged losses." (ECF No. 171 at PageID 2852.) As a result, "Defendant requests that Plaintiff's damages be reduced as set out herein, or that a new trial be ordered in this matter." (Id.) Defendant contends that "Plaintiff's damages should be cut off effective September 16, 2016 due to Plaintiff's failure to mitigate his damages" and that "[t]he jury erred in not making that determination." (Id. at PageID 2857.) Defendant contends that the amount of damages Plaintiff should have been awarded is $67,736.08. (Id. at PageID 2859.) Defendant also contends that "Plaintiff should not be awarded the potential value of his pension benefits, as he chose to cash out pension contributions." (Id.)

In response, Plaintiff contends that "[t]he Jury's award clearly falls directly within the range supported by the proof presented at trial" by Mr. Ward's economist, Stan Smith, Ph.D. (ECF No. 175 at PageID 2961.) Plaintiff also contends that he "testified regarding his anticipated retirement" and that Defendant "offered no evidence (or argument) at trial regarding Ward's future losses or pension losses." (Id. at PageID 2969–70.)

In reply, Defendant reiterates that "Plaintiff's failure to accept reinstatement on September 16, 2016 and his failure to meaningfully seek employment should have cut off all his back pay, front pay, and damages related to benefits and pension." (ECF No. 180 at PageID 3003.)

As discussed above, the jury's award was within the range of what was presented by expert testimony at trial. Further, Defendant's Motion effectively asks the Court to reverse the jury's factual findings and favor its evidence over that which Plaintiff presented. Defendant's evidence of Plaintiff's refusal to return to work did not require the jury to find that Plaintiff failed to mitigate

his damages or that his damages should be cut off from that date, and a reasonable jury could have found that Plaintiff's returning to his workplace was futile or that the reinstatement was not equivalent to his prior position with Defendant. Defendant has not sufficiently shown "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice" as required for a Rule 59(e) Motion. See Betts, 558 F.3d at 474. As a result, Defendant's Motion for Remittitur or New Trial is **DENIED**.

### C) Plaintiff's Motion for Equitable Relief

Mr. Ward seeks "a doubling of his lost wages and benefits for the willful violations of USERRA, future damages as determined by the jury, prejudgment interest, and compensation for negative tax consequences." (ECF No. 174 at PageID 2929–30.)

#### a. USERRA Liquidated Damages

Plaintiff seeks liquidated damages under 38 U.S.C. § 4323, due to the jury's finding that Defendant's conduct in violation of USERRA was willful. (Id. at PageID 2931.) Plaintiff contends that "the Court should enforce the USERRA liquidated damages provision, as there is no proper basis to disregard the jury's finding of willful[ness]." (Id. at PageID 2932.) Plaintiff seeks liquidated damages of $1,047,659.00 (including prejudgment interest) under the Tennessee statutory interest rate or, in the alternative, $827,155.00 (including prejudgment interest) using the federal prime rate.[1] (Id. at PageID 2933.)

In response, Defendant contends that "[t]he plain language of the statute indicates that plaintiffs do not automatically receive liquidated damages upon obtaining a favorable ruling at trial." (ECF No. 182 at PageID 3019.) Defendant contends that "[t]here is nothing in the record

---

[1] These amounts were calculated by providing liquid damages equal to the sum of actual damages ($561,000), future damages ($150,000) and prejudgment interest based on either the variable federal prime rate ($116,155) or maximum Tennessee rate of 10% ($336,659). (ECF No. 174 at PageID 2933, 2938–2940)

12

to indicate that the County had any basis for believing the adverse employment actions violated USERRA." (Id. at PageID 3021.) "The County, therefore, asks the Court to exercise its discretion and find that the adverse employment actions were not willful, and that liquidated damages are not appropriate in this case." (Id. at PageID 3022.)

In reply, Plaintiff contends that "Shelby County's arguments in response to Mr. Ward's liquidated damages request simply rehash the arguments in its pending motions; essentially, that the jury got it wrong." (ECF No. 183 at PageID 3035.)

As discussed above, the jury's verdict in this case is supported by the trial record. Because Defendant's failure to comply with USERRA was willful, Mr. Ward is entitled to $610,635.59 in liquidated damages, not including any associated prejudgment interest. This amount is equal to the sum of Plaintiff's lost wages, benefits, and front pay, which are discussed in more detail below. See 38 U.S.C. §4323(d)(1)(C).

    b. *Front Pay / Future Damages*[2]

Mr. Ward seeks front pay in the amount of $150,000.00 (or $50,000.00 per year for three years) in accordance with the jury's advisory opinion on future damages in its verdict. (ECF No. 174 at PageID 2934–35.) Plaintiff contends that "front pay is properly awarded in a USERRA discrimination case where, as here, reinstatement would be improper or infeasible." (Id. at PageID 2935.) (citing Fryer v. A.S.A.P. Fire & Safety Corp., 658 F.3d 85, 89 (1st Cir. 2011).)

In response, Defendant contends that "[e]quity does not favor the awarding of front pay in this case because Plaintiff was offered reinstatement to his prior position effective September 16, 2016 with the same job title and at the same rate of pay as he held prior to his termination." (ECF No. 182 at PageID 3025.) Defendant contends that Plaintiff is using "evidence that was ruled

---

[2] The parties use the terms "front pay" and "future damages" interchangeably throughout their briefings. For the purposes of the Court's analysis, these terms will be treated as equivalent.

inadmissible at trial to support his argument that reinstatement would be improper." (Id. at PageID 3026.) Defendant contends that in the event Plaintiff is entitled to front pay, "Plaintiff did not present enough data for the Court to accurately calculate front pay, and certainly not to the amount the jury advised." (Id. at PageID 3027.) Defendant contends that, taking into account Plaintiff's income from other employment, the most the jury could award was $6,303.60 per year, as this was "[t]he difference between Plaintiff's earnings away from Defendant's employment and what he would have been making with Defendant in the last time period for which he provided pay information." (Id.) Defendant also contends that the jury's award of future pay went past the time of Plaintiff's likely retirement date presented at trial, which was October 2023. (Id. at PageID 3028.)

In reply, Plaintiff contends that "Shelby County's arguments in response to Mr. Ward's future damages request [are] simply a rehash of the arguments in its pending motions; essentially that the jury got it wrong." (ECF No. 183 at PageID 3036.)

From the record, the jury could conclude that it was futile for Mr. Ward to return to work in this case (as discussed above), even when Plaintiff had previously accepted the reinstatement offered. While there was a rational basis for the Jury's recommendation of front pay, there is not a rational basis as to the exact dollar amount. See Fryer v. A.S.A.P. Fire & Safety Corp., Inc., 680 F. Supp. 2d 317, 327 (D. Mass. 2010)

USERRA provides that the Court "may require the employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter." 38 U.S.C. § 4323(d)(1)(B).  While Plaintiff was able to find employment after his termination, his earnings were less than before, with his most recent available earnings showing that he earned $45,546 in 2018. (Plaintiff's Tax Documents, Trial Ex. 8.) Had

14

he not been terminated, Plaintiff would have earned $51,849.60 per year by the end of December 2018.[3] (ECF No. 67-1 at PageID 950 (submitted as Trial Ex. 16).) The value of Plaintiff's benefits is less clear, but Plaintiff put forth evidence that for back pay damages, Plaintiff's damage from his loss of benefits was equal to roughly 1.62 times his lost wages ($347,377 loss of benefits and $213,807 lost wages). (ECF No. 168 at PageID 2384.) Equity does not favor granting front pay in the full amount of $50,000 per year as recommended by the jury, however, Plaintiff is entitled to the difference between his actual salary and benefits and that which he would have earned absent Defendant's discriminatory actions. This amount is $16,545.20 per year ($6,303.60 lost wages and $10,241.60 loss of benefits) for a total of $49,635.59 across the three-year period from June 15, 2021 to June 15, 2024.[4]

While Defendant argues that the Court should take into account additional money that Plaintiff earned from taking part in more frequent military missions, it would be inequitable to penalize Plaintiff for additional work performed beyond the scope of the job from which Plaintiff was terminated. See Helton v. Mercury Freight Lines, Inc., 444 F.2d 365, 367 (11th Cir. 1971) (holding that when a wrongfully discharged employee made nearly the same amount in a new job as his previous job, but the new job required significantly longer hours and additional overtime to reach this compensation, that this additional overtime compensation should be deducted when determining the difference in pay between the jobs.)

---

[3] While the front pay damages at issue are based on the period of June 15, 2021 to June 15, 2024, the most recent salary information that Plaintiff has provided is from 2018, and thus this will form the basis for comparison for the Court's calculations of front pay.

[4] Defendant argues that this front pay should only be calculated until Plaintiff's planned retirement in October 2023, however Defendant's arguments for this date are not convincing. Defendant argues that Plaintiff testified that he would be retiring within a couple months of October 2023. (ECF No. 182 at PageID 3028.) While Plaintiff testified that he would be eligible for retirement at some point within "a couple of months" of October 2023, he did not say that he was in fact planning to retire as soon as he was eligible, but rather noted that he did not know exactly when he would retire, and that there were others working in similar positions who had worked "thirty or thirty-five years" without retiring. (ECF No. 168 at PageID 2489.)

In order to be awarded front pay, a USERRA plaintiff generally must have attempted to mitigate his/her damages. See Carpenter v. Tyler Indep. Sch. Dist., 429 F. Supp. 2d 848, 852 (E.D. Tex. 2006) ("A District Court must consider employment discrimination plaintiff's failure to mitigate damages in determining the extent to which, if at all, a front pay award is appropriate."), aff'd, 226 F. App'x 400 (5th Cir. 2007). Defendant bears the burden of proving that Plaintiff failed to mitigate his damages, and this can be shown by "establishing (1) that suitable work existed, and (2) that [Plaintiff] did not make reasonable efforts to obtain it." Serricchio v. Wachovia Securities, LLC, 606 F. Supp. 2d 256, 262 (D. Conn. 2009), aff'd, 658 F.3d 169 (2d Cir. 2011). Defendant has not made a showing that Plaintiff failed to mitigate his damages; instead it appears that Plaintiff made reasonable efforts to secure alternate employment following his suspension and subsequent termination.

    c. *Prejudgment Interest*

Plaintiff asserts that he is entitled to prejudgment interest, as it was sought in his Complaint and is necessary to compensate for Defendant's past discrimination. (ECF No. 174 at PageID 2938.) Plaintiff's expert has provided calculations of prejudgment interest under both federal and state law methods. (Id. at PageID 2939.) Because "the evidence presented to the jury shows that the Plaintiff and Defendant calculated Mr. Ward's lost pay on the basis of his bi-monthly pay checks," Plaintiff contends that "[c]ompounding the interest monthly is appropriate, because it is more likely to make the plaintiff whole." (Id.) (citing Cabernoch v. Union Labor Life Ins. Co., No. 06 C 1515, 2009 WL 2497669, at *4 (N.D. Ill. Aug. 14, 2009).) At the federal rate, Dr. Smith calculated the prejudgment interest to be $116,155.00, and at the Tennessee statutory rate, he calculated it to be $336,659.00. (Id. at PageID 2940.)

In response, Defendant disagrees that prejudgment interest should be awarded at all and contends that "even if the Court were to award prejudgment interest on back pay, any award for future damages . . . should not include prejudgment interest for the simple reason that these purported damages have not yet occurred." (ECF No. 182 at PageID 3022–23.) Defendant contends that an award of prejudgment interest for future damages "would go beyond making Plaintiff whole, and would serve only to improperly punish Defendant and provide Plaintiff with a windfall." (Id. at PageID 3023.) As a result, Defendant requests that "prejudgment interest [] be limited at most to any amount awarded for back pay and any amount awarded for front pay that accrues prior to the entry of judgment." (Id.) Defendant further "requests that prejudgment interest not be awarded for the first three years following Plaintiff's termination, or whatever period the Court deems reasonable to account for Plaintiff's lengthy delay in filing his lawsuit." (Id. at PageID 3024.) Defendant also contends that bi-monthly compounding of interest as suggested by Plaintiff's proposed calculations is excessive. (Id.)

In reply, Plaintiff points out that Dr. Smith did not calculate the prejudgment interest as compounded bi-monthly as Defendant contends, but rather compounded monthly. (ECF No. 183 at PageID 3035.)

Defendant is correct that awarding prejudgment interest for future damages that Plaintiff has not yet accrued would be a windfall to Plaintiff. See Hance, 571 F.3d 511 (noting that "back-pay awards [for a USERRA violation] should make a plaintiff whole, not better off"). Otherwise, Defendant has not shown that prejudgment interest compounded monthly would be improper or that Plaintiff is not entitled to prejudgment interest for damages awards already accrued prior to entry of the Judgment. USERRA explicitly contemplates the award of prejudgment interest. 38 U.S.C. § 4323(d)(3). Courts have held that an award of liquidated damages does not preclude an

17

award of prejudgment interest, and that prejudgment interest can be awarded against both back pay and liquidated damages.  Fink v. City of New York, 129 F. Supp. 2d 511 (E.D.N.Y. Mar. 1, 2001);  Serricchio, 606 F. Supp. 2d 256, aff'd, 658 F.3d 169 (2d Cir. 2011).

Thus, Plaintiff will be awarded prejudgment interest compounded monthly at the federal prime rate for all lost wages, lost benefits, and liquidated damages that would have accrued upon the date of the entry of the Judgment.  Counsel for Plaintiff and Defendant should consult in an effort to reach to reach agreement on the appropriate calculation of prejudgment interest that would accrue through October 31, 2022 based on the federal prime rate.  If they are unable to reach agreement, each Party should submit their calculation with a supporting memorandum and supporting documents by October 27, 2022.

      d. *Offset for Negative Tax Consequences*

Plaintiff asserts that "this Court should follow USERRA precedent in making an award for a tax gross-up on the back pay award." (ECF No. 174 at PageID 2941 (citing Wescher v. Chem-Tech Int'l, No. 13-CV-229-PP, 2016 U.S. Dist. LEXIS 178770, at *15–16 (E.D. Wis. Dec. 27, 2016)).)  Plaintiff contends that "the jury awarded $561,000.00 in lost wages and benefits, which would have been paid over the past eight years," so "Mr. Ward will be bumped into a higher tax bracket as a result of the jury award." (Id.)  As a result, Plaintiff's expert calculates that $127,980.00 should be added to Plaintiff's award to offset the negative tax consequences. (Id. at PageID 2942.)

In response, Defendant contends that Plaintiff's expert "appears to rely on information obtained by Dr. Smith that was not turned over to Defendant." (ECF No. 182 at PageID 3017.) Defendant contends that "Plaintiff presented no evidence at trial setting out his projected income for 2022 or 2023," so "[h]e cannot now sneak in this evidence through Dr. Smith's declaration."

18

(Id. at PageID 3018.) Further, Defendant contends that because Plaintiff did not make a tax offset request in his Complaint, he cannot request such relief now and that "there is no admissible evidence in the record as to what tax bracket Plaintiff currently is in, nor is there appropriate evidence to determine what bracket Plaintiff may be in as a result of any award." (Id. at PageID 3019.)

In reply, Plaintiff contends that "there is no prohibition on supporting a motion for equitable relief (left to the sound discretion of a trial judge) with post-trial calculations." (ECF No. 183 at PageID 3033.) Further, Plaintiff contends that "at trial Dr. Smith testified extensively as to how he calculated Mr. Ward's projected income." (Id. at PageID 3034 (citing Trial Trans. Day 2, ECF No. 168 at PageID 2746–56).) Plaintiff contends that "[t]herefore, Dr. Smith's testimony at both trial and his declaration are based solely on his February 9, 2021 report that Shelby County received over a year before trial." (Id.) Plaintiff contends that Dr. Smith used the IRS Employer Tax Guide to calculate Mr. Ward's tax rate, and that "Dr. Smith is eminently qualified to do simple tax calculations." (Id.) Finally, Plaintiff points out that his Complaint requested equitable relief as the "Court deems just and equitable" and that "negative tax consequences are equitable relief that is properly awarded under USERRA." (Id. at PageID 3035.)

"USERRA's remedial scheme . . . aims to make the plaintiff whole," and "[a] tax offset is necessary to make the plaintiff whole" where, as here, there was a considerable jump in the plaintiff's tax liability due to the award for monetary relief that normally would have been paid over the course of several years in the form of wages. Wescher, 2016 U.S. Dist. 178770, at *16. Moreover, Plaintiff's expert used information already disclosed to Defendant to calculate Mr. Ward's projected income and acceptable methods to calculate an average tax rate. (See ECF No. 183 at PageID 3034.) Further, Defendant does not dispute the final number, just whether Plaintiff

properly disclosed the evidence and whether such relief was requested in the Complaint. (See ECF No. 182 at PageID 3017–19.) Because Plaintiff used previously admitted evidence along with the necessary support from his retained expert, and because Plaintiff requested equitable relief in his Complaint, the Court will award a tax offset. Because Plaintiff's expert's calculations were based on the requested sum of $711,000 damages for lost wages, lost benefits, and front pay, Parties are directed to consult and attempt to reach an agreement on the appropriate tax offset amount based on the modified sum of $610,635.59. The timeline and method for submittal should follow the timeline and method for submittal as to prejudgment interest. It is anticipated that the final judgment will be entered effective October 31, 2022 as of the close of business.

Plaintiff's Motion is, as a result, **GRANTED IN PART** and **DENIED IN PART**, with a Judgment reflecting this Order and the Jury Verdict to follow.

### IV.   CONCLUSION

For the foregoing reasons, Defendant's Motions are **DENIED**, and Plaintiff's Motion is **GRANTED IN PART** and **DENIED IN PART**. Parties are **ORDERED** to provide new calculations to the Court no later than October 27, 2022 showing the updated tax offset amounts and prejudgment interest that would accrue through October 31, 2022.

**SO ORDERED**, this 6th day of October, 2022.

    s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT COURT JUDGE